HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SAFETY STAR, LLC, a Missouri limited
liability company,

       Plaintiff,

v.

APTIBYTE, LLC, a Washington limited
liability company,

       Defendant.

Case No. 2:23-cv-01399-BHS

DEFENDANT APTIBYTE, LLC'S MOTION
FOR FEES AND A STAY PURSUANT TO
FED. R. CIV. P. 41(d)

NOTE ON MOTION CALENDAR:
October 20, 2023

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

# TABLE OF CONTENTS

FACTUAL BACKGROUND ................................................................................................. 3

I.      *Safety Star I* – Safety Star's First Two Complaints Against Aptibyte .............................. 3

II.     *Safety Star II* – Safety Star's Third Complaint Against Aptibyte ...................................... 4

DISCUSSION ..................................................................................................................... 4

I.      Rule 41(d) Fees and a Stay for a Previously Dismissed Action ........................................ 4

II.     Safety Star's Dismissal and Re-Filing of the Same Action Warrants a Fee Award .......... 5

III.    This Action Should Be Stayed Until Safety Star Complies With a Rule 41(d)
        Order ................................................................................................................................. 9

IV.     Aptibyte Should Be Awarded $36,195 in Fees Incurred in Defending *Safety Star I* ......... 9

CONCLUSION ................................................................................................................. 11

MOTION FOR FEES AND A STAY
PURSUANT TO FED. R. CIV. P. 41(d)
(Case No. 2:23-cv-01399-BHS) – i

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Amazon.com, Inc. v. Kurth*, No. 2:18-cv-00353-RAJ,
   2019 U.S. Dist. LEXIS 127924 (W.D. Wash. July 31, 2019) ......................................... 10

*Amazon, Inc. v. Wong*, No. C19-0990JLR,
   2022 U.S. Dist. LEXIS 67757 (W.D. Wash. Apr. 12, 2022) ......................................... 10

*Esquivel v. Arau*, 913 F. Supp. 1382 (C.D. Cal. 1996) .......................................................... 6, 9

*Moskowitz v. Am. Sav. Bank, F.S.B.*, 37 F.4th 538 (9th Cir. 2022) ....................................... 5

*Nielson v. Union Bank of Cal., N.A.*, No. CV 02-06942 MMM (CWx),
   2003 U.S. Dist. LEXIS 29145 (C.D. Cal. Apr. 1, 2003) ............................................... 8, 9

*Olson Kundig, Inc. v. 12th Avenue Iron, Inc.*, No. C22-0825JLR,
   2023 U.S. Dist. LEXIS 79055 (W.D. Wash. May 5, 2023) ........................................... 10

*Ortega v. Am. Honda Motor Co.*, No. 2:22-cv-04276-FLA (MRWx),
   2023 U.S. Dist. LEXIS 144679 (C.D. Cal. Mar. 24, 2023) ...................................... 4, 5, 6

*Owen v. Hyundai Motor Am.*, No. 2:22-cv-00882-KJM-CKD,
   2023 U.S. Dist. LEXIS 43633 (E.D. Cal. Mar. 15, 2023) ............................................ 5, 6

*Simmonds v. Credit Suisse Sec. (USA) LLC*, No. C12-1937JLR,
   2013 U.S. Dist. LEXIS 17560 (W.D. Wash. Feb. 7, 2013) ....................................... 4, 5, 6

<u>**Rules and Statutes**</u>

FED. R. CIV. P. 41(a)(1) .......................................................................................................... 4

FED. R. CIV. P. 41(a)(2) .......................................................................................................... 9

FED. R. CIV. P. 41(d) ................................................................................................... *passim*

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

The complaint in this case is the third complaint Plaintiff Safety Star, LLC has filed against Defendant Aptibyte, LLC attempting to hold Aptibyte liable for trademark infringement based on the use of "bsafe" or similar terms by users of Aptibyte's bingo-card generator website. Safety Star has filed three complaints and two separate lawsuits against Aptibyte because it failed to do its basic due diligence in confirming and documenting its ownership of the trademarks on which its claims are based *before* filing a lawsuit.

But, instead of undertaking this basic due diligence, Safety Star simply sued Aptibyte, resulting in the following course of events:

1. Safety Star sues Aptibyte in May 2023 claiming it infringed the B-SAFE and BSAFE BINGO marks Safety Star claims to own. (Declaration of Stacia N. Lay in Support of Defendant's Motion for Fees and a Stay Under FED. R. CIV. P. 41(d) ¶ 2, Ex. 1.)

2. Aptibyte moves to dismiss the complaint, arguing, in part, that Safety Star lacks standing because, among other issues, the registration certificate for one of the marks attached to Safety Star's own complaint identifies an individual, not Safety Star, as the mark owner. (*Id.* ¶ 4, Ex. 2.)

3. Rather than respond to Aptibyte's motion to dismiss, Safety Star files an amended complaint, now asserting that its ownership of the two marks was based on a trademark assignment agreement dated June 4, 2018, which Safety Star attached, representing that it was a "true and correct copy" of an assignment agreement "that provides [Safety Star] sole title and right to the B-SAFE Trademarks, and thus, standing to bring this Complaint[.]" (*Id.* ¶¶ 5-6.)

4. Because it was impossible for the trademark assignment to have been signed on the June 4, 2018 date and Safety Star made no mention of an assignment as the basis for its purported trademark rights in its original complaint, it was highly likely that the assignment had only been created and signed in response to Aptibyte's motion to dismiss. Therefore, Aptibyte moved to dismiss the amended complaint based in part on Safety Star's lack of standing. (*Id.* ¶ 8, Ex. 5.)

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

5.   Instead of responding to Aptibyte's motion to dismiss the amended complaint, on August 18, 2023, Safety Star files a voluntary dismissal under Rule 41(a)(1), which deprived Aptibyte of an opportunity to recover the attorneys' fees it was forced to incur in connection with two motions to dismiss necessitated by Safety Star's failure to investigate a basic element of its claims (ownership of the marks). (*Id.* ¶ 9, Ex. 6.)

6.   As Aptibyte has since learned, one day before dismissing its first case, Safety Star allegedly signed two entirely new trademark assignment agreements for the same marks that were purportedly assigned by the assignment attached to Safety Star's amended complaint. The new assignments purport to assign rights to the marks to Safety Star, effective as of January 22, 2019. (*Id.* ¶¶ 12-13, Ex. 7.)

7.   Then, less than a month after it dismissed its first case, Safety Star again sues Aptibyte, alleging infringement of the same B-SAFE and BSAFE BINGO marks. The allegations in this action are virtually identical to those in Safety Star's first lawsuit. The only substantive difference in the allegations is that in the complaint in this new action, Safety Star makes no mention of *any* trademark assignment that would support its claim to ownership of the marks. (*Id.* ¶¶ 10-11, Ex. 8.)

This course of conduct by Safety Star is justifiably characterized as vexatious and harassing. Safety Star forced Aptibyte to incur more than $36,000 in attorneys' fees in defending against Safety Star's first lawsuit, only to have Safety Star voluntarily dismiss it in order to avoid a likely adverse ruling on Aptibyte's motion to dismiss the amended complaint. But not content with having forced Aptibyte – a small business run by a single individual – to incur tens of thousands of dollars in fees in identifying basic flaws in Safety Star's claims, Safety Star has now sued Aptibyte again, making the same flawed claims based on the same flawed allegations.

Fed. R. Civ. P. 41(d), however, provides a means to remedy at least some of the harm Safety Star's bad faith conduct has caused Aptibyte by permitting it to recover the attorneys' fees it incurred in Safety Star's first lawsuit. There can be no doubt that the requirements of Rule 41(d) are met, as Safety Star previously voluntarily dismissed an action against Aptibyte

MOTION FOR FEES AND A STAY
PURSUANT TO FED. R. CIV. P. 41(d)
(Case No. 2:23-cv-01399-BHS) – 2

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

that involved many of the same claims as alleged in this case that are based on the same operative allegations. Moreover, although Aptibyte is not required to prove Safety Star's subjective bad faith in order to recover its fees under Rule 41(d), Aptibyte submits that the conduct described herein demonstrates bad faith.

Therefore, Aptibyte respectfully requests that Safety Star be ordered to pay Aptibyte's attorneys' fees incurred in Safety Star's first suit, totaling $36,195. Aptibyte also requests that this action be stayed until Safety Star complies with any award ordered under Rule 41(d).

## FACTUAL BACKGROUND

### I.    *Safety Star I* – Safety Star's First Two Complaints Against Aptibyte

On May 15, 2023, Safety Star filed a complaint against Aptibyte alleging claims for trademark infringement and false designation of origin under the Lanham Act and related claims under Washington law ("*Safety Star I*"). All the claims were based on the alleged infringement of trademarks that Safety Star purports to own – B-SAFE and BSAFE BINGO (which Safety Star refers to collectively as the "B-SAFE Trademarks"). (Lay Decl. ¶ 2, Ex. 1.)

On July 10, 2023, Aptibyte moved to dismiss the complaint. Aptibyte argued that Safety Star lacked standing to assert any of its trademark-based claims, that Section 230 of the Communications Decency Act barred its state law claims, and that it failed to state any claim for relief based on alleged trademark infringement. (Lay Decl. ¶ 4, Ex. 2.) On July 28, one judicial day before its response to Aptibyte's motion to dismiss was due, Safety Star filed an amended complaint. (*Id.* ¶ 5, Ex. 3.)

In the amended complaint, for the first time, Safety Star offered a trademark assignment dated June 4, 2018, as the basis for its alleged rights to the "B-SAFE Trademarks." (*Id.* ¶ 6, Ex. 4.) It also abandoned its state law claims. (*Id.* ¶ 7.) On August 10, 2023, Aptibyte moved to dismiss the amended complaint. Aptibyte again argued that Safety Star lacked standing and that the trademark assignment – created sometime after the date identified in the assignment and likely only in response to Aptibyte's first motion to dismiss – did not demonstrate Safety Star's standing at the time it filed the lawsuit. (*Id.* ¶ 8, Ex. 5 at 11-14.) Aptibyte also demonstrated that

MOTION FOR FEES AND A STAY
PURSUANT TO FED. R. CIV. P. 41(d)
(Case No. 2:23-cv-01399-BHS) – 3

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

Safety Star's claims lacked substantive merit. (*Id.* Ex. 5 at 19-27.)

On August 18, 2023, roughly a week before its response to Aptibyte's motion to dismiss the amended complaint was due, Safety Star voluntarily dismissed *Safety Star I* without prejudice under Rule 41(a)(1). (*Id.* ¶ 9, Ex. 6.)

## II.    *Safety Star II* – Safety Star's Third Complaint Against Aptibyte

Less than a month after dismissing *Safety Star I*, Safety Star filed this action against Aptibyte alleging essentially the same claims, all of which are based on alleged infringement of the B-SAFE and BSAFE BINGO marks that Safety Star purports to own. (Dkt. 1.)

Despite relying on an alleged trademark assignment agreement in its amended complaint in *Safety Star I* for its claimed ownership of the "B-SAFE Trademarks" (Lay Decl. ¶¶ 6, 11, Ex. 4), Safety Star makes no mention of *any* assignment in its complaint in this action (*see* Dkt. 1). However, USPTO records for the marks reveal that on September 4, 2023, Safety Star recorded two new "Nunc Pro Tunc Trademark Assignment Agreements" for the marks that are dated August 17, 2023 and that purport to be effective as of January 22, 2019. (Lay Decl. ¶¶ 12-13, Ex. 7.) These alleged assignments differ from the alleged trademark assignment that Safety Star attached to its amended complaint in *Safety Star I* as the basis for its alleged ownership of the "B-SAFE Trademarks." (*Compare* Lay Decl. Ex. 4 *with* Lay Decl. Ex. 7.)

## DISCUSSION

## I.    Rule 41(d) Fees and a Stay for a Previously Dismissed Action

Under Fed. R. Civ. P. 41(d), "[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied." Rule 41(d) "conveys broad discretion on federal courts to order stays and payment of costs." *Ortega v. Am. Honda Motor Co.*, No. 2:22-cv-04276-FLA (MRWx), 2023 U.S. Dist. LEXIS 144679, *4 (C.D. Cal. Mar. 24, 2023). The rule is "intended to prevent attempts to gain any tactical advantage by dismissing and refiling th[e] suit." *Simmonds v. Credit Suisse Sec. (USA) LLC*, No. C12-1937JLR, 2013 U.S. Dist. LEXIS

MOTION FOR FEES AND A STAY
PURSUANT TO FED. R. CIV. P. 41(d)
(Case No. 2:23-cv-01399-BHS) – 4

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

17560, *3 (W.D. Wash. Feb. 7, 2013) (internal quotation marks omitted). Rule 41(d) is also intended "to protect defendants from the harassment of repeated lawsuits by the same plaintiff on the same claims" and "to serve as a deterrent to . . . vexatious litigation." *Ortega*, 2023 U.S. Dist. LEXIS 144679 at *4 (internal quotation marks omitted). Rule 41(d) does not require a defendant to prove the plaintiff's subjective bad faith. Rather, the Court "should simply assess whether a plaintiff's conduct satisfies the requirements of Rule 41(d), and whether the circumstances of the case warrant an award of costs to prevent prejudice to the defendant." *Id.* at *4-5 (internal quotation marks omitted).

Although the Ninth Circuit recently held that Rule 41(d) "costs" do not include attorneys' fees as a matter of right, it explicitly did not decide if fees are available "if the underlying statute so provides" or if there is evidence of bad faith. *Moskowitz v. Am. Sav. Bank, F.S.B.*, 37 F.4th 538, 546 (9th Cir. 2022). Both before and since the *Moskowitz* decision, courts in the Ninth Circuit have awarded fees under Rule 41(d) in appropriate cases. *See, e.g.*, *Owen v. Hyundai Motor Am.*, No. 2:22-cv-00882-KJM-CKD, 2023 U.S. Dist. LEXIS 43633, *5-8 (E.D. Cal. Mar. 15, 2023) (discussing *Moskowitz* and awarding fees under Rule 41(d) where timing of plaintiff's dismissal – just a few days before a motion hearing – "implie[d] she wanted to avoid an adverse outcome"); *Simmonds*, 2013 U.S. Dist. LEXIS 17560 at *4-7 (awarding fees under Rule 41(d) where plaintiff's dismissal appeared "to be largely for tactical advantage and to avoid certain adverse rulings" and "her case was vulnerable at the time of dismissal").

## II.   Safety Star's Dismissal and Re-Filing of the Same Action Warrants a Fee Award

Here, the requirements of Rule 41(d) are satisfied.

First, it cannot be disputed that Safety Star voluntarily dismissed *Safety Star I*. (Lay Decl. ¶ 9, Ex. 6.) Second, it cannot be disputed that both *Safety Star I* and this action are based on virtually identical allegations that Aptibyte allegedly infringed the "B-SAFE Trademarks" that Safety Star claims to own. (*Id.* ¶ 14, Ex. 8.) Third, it cannot be disputed that both *Safety Star I* and this action allege the same claims for trademark infringement and false designation of origin. (*Id.*) That Safety Star has added new claims for contributory and vicarious trademark

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

infringement in this action does not alter that conclusion as those claims are based on the same operative allegations. *See, e.g.*, *Esquivel v. Arau*, 913 F. Supp. 1382, 1387 (C.D. Cal. 1996) (finding Rule 41(d) applied where plaintiff's new action incorporated all the claims brought in the previously dismissed action, regardless of the addition of new claims). Indeed, the two "new" claims do not materially distinguish *Safety Star I* from the present action as Safety Star makes no new allegations to support those claims. Fourth, it cannot be disputed that both *Safety Star I* and the present action allege the same claims against the same defendant, namely, Aptibyte.

Moreover, although no more need be shown to support a fees award, additional circumstances justify ordering Safety Star to pay the fees Aptibyte incurred in defending against *Safety Star I*. For example, courts have made awards under Rule 41(d) where a plaintiff "attempts to gain any tactical advantage by dismissing and refiling th[e] suit." *Simmonds*, 2013 U.S. Dist. LEXIS 17560 at *3 (internal quotation marks omitted). Similarly, bad faith or "vexatiousness" supports an award of fees. *Ortega*, 2023 U.S. Dist. LEXIS 144679 at *8. Here, whether described as bad faith, vexatiousness, or an attempt to gain a tactical advantage, Safety Star's conduct further supports an award of Aptibyte's fees from *Safety Star I*.

For example, Safety Star's filing of two complaints in *Safety Star I* and its voluntary dismissal of that case before it had to respond to Aptibyte's motion to dismiss the amended complaint (and therefore before a potentially adverse ruling issued on Aptibyte's motion), suggest an attempt to gain a tactical advantage. *See, e.g.*, *Owen*, 2023 U.S. Dist. LEXIS 43633 at *6 (timing of plaintiff's dismissal "implie[d] she wanted to avoid an adverse outcome").

Clear ownership of the trademarks on which Safety Star's claims are based is a basic element of those claims that should have been resolved **before** Safety Star filed **any** complaint against Aptibyte. The facts relevant to Safety Star's purported ownership of the marks were and are uniquely within Safety Star's control. Nonetheless, both of Aptibyte's motions to dismiss in *Safety Star I* raised, among other arguments, Safety Star's lack of standing to assert its claims, all of which were (and are) based on its alleged ownership of the "B-SAFE Trademarks." As argued in Aptibyte's motion to dismiss the original complaint in *Safety Star I*, the registration certificate

MOTION FOR FEES AND A STAY
PURSUANT TO FED. R. CIV. P. 41(d)
(Case No. 2:23-cv-01399-BHS) – 6

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

for the B-SAFE mark indicated that an individual, Beau Culbertson, owns the mark. And, although Safety Star was identified as the owner of the BSAFE BINGO mark, it was not (and is not) clear that Safety Star could have rights in that mark given Culbertson's senior, and virtually identical, B-SAFE mark. (Lay Decl. ¶ 4, Ex. 2 at 10-15.)

Apparently recognizing the merits of Aptibyte's arguments on standing, Safety Star elected to file an amended complaint in lieu of responding to Aptibyte's motion to dismiss. (*Id.* ¶ 5, Ex. 3.) In that amended complaint, Safety Star alleged for the first time that its rights in the "B-SAFE Trademarks" arose from a trademark assignment dated June 4, 2018, which it attached to its amended complaint. (*Id.* Ex. 3 at ¶ 18; *id.* at Ex. 4.) However, as Aptibyte demonstrated in its motion to dismiss, it was highly likely that the assignment had been created in response to Aptibyte's first motion.

Although the assignment agreement was dated June 4, 2018, it was impossible for it to have been signed on that date as the agreement purported to assign the BSAFE BINGO mark and its corresponding registration, Registration No. 5660503. (*Id.* Ex. 4.) As the *application* for that mark was only filed on June 4, 2018, it would have been impossible for either party to that agreement to know that the application would mature into a registration, much less the specific registration number that would be assigned. The assignment was therefore a *nunc pro tunc* assignment that appeared to be created after the filing of the lawsuit and was insufficient to give Safety Star standing. (*Id.* ¶ 8, Ex. 5 at 11-14.) Apparently recognizing this fatal flaw in its amended complaint, Safety Star voluntarily dismissed *Safety Star I* in lieu of responding to Aptibyte's second motion to dismiss. (*Id.* ¶ 9.)

Ignoring the trademark assignment which Safety Star claimed in *Safety Star I* gave it rights in the "B-SAFE Trademarks," for this second action against Aptibyte, Safety Star created two new "Nunc Pro Tunc Trademark Assignment Agreements" dated August 17, 2023 (one day before its voluntary dismissal in *Safety Star I*). (*Id.* ¶¶ 6, 11-12, Exs. 4, 7.) In these new assignment agreements – which make no mention of the trademark assignment from *Safety Star I* – Beau Culbertson purports to assign all rights to the "B-SAFE Trademarks" to Safety Star

effective as of January 22, 2019. (*Id.* Ex. 7.)

The timing of Safety Star's creation of new trademark assignments shortly before voluntarily dismissing *Safety Star I* and then re-filing the same claims against Aptibyte, suggests that Safety Star sought to gain a tactical advantage through these actions. Specifically, because standing must exist at the time the lawsuit is filed, Safety Star created new assignments that it thought gave it rights in the "B-SAFE Trademarks,"[1] dismissed *Safety Star I*, and then almost immediately re-filed its complaint against Aptibyte. This conduct of Safety Star can also be described as bad faith or vexatious. Thus, Rule 41(d) supports awarding the fees Aptibyte incurred in *Safety Star I* because it should not have been forced to defend against two essentially identical lawsuits due to Safety Star's failure to conduct basic due diligence into its claims *before* filing any suit. *See Nielson v. Union Bank of Cal., N.A.*, No. CV 02-06942 MMM (CWx), 2003 U.S. Dist. LEXIS 29145, *10 (C.D. Cal. Apr. 1, 2003) (Rule 41(d) "is an expression of the court's inherent power to protect defendants from the harassment of multiple lawsuits brought by the same plaintiff and raising the same claims.").

Additionally, in *Safety Star I*, Safety Star asserted several state law claims based on Aptibyte's alleged infringement of the "B-SAFE Trademarks." However, any alleged use of the trademarks was (and is) in connection with user-generated bingo cards. Therefore, the state law claims based on such user-generated content were barred by Section 230 of the Communications Decency Act. (Lay Decl. ¶ 4, Ex. 2 at 15-19.) By omitting the state law claims in its amended complaint (which Safety Star filed in lieu of responding to Aptibyte's first motion to dismiss) and omitting those claims from its complaint in the present action, Safety Star appears to concede Aptibyte's argument that Section 230 bars those claims. Nonetheless, by including those

---

[1] Aptibyte does not concede that these newly created assignment agreements give Safety Star standing. The point is that Safety Star presumably believes they do, despite the fact that it makes no mention of *any* assignment in the complaint in the present action. Safety Star's omission of any mention of an assignment also further demonstrates that even in this third complaint, it fails to establish the most basic element of its claims, namely, its standing. And that is just one flaw among many in Safety Star's complaint in this action.

MOTION FOR FEES AND A STAY
PURSUANT TO FED. R. CIV. P. 41(d)
(Case No. 2:23-cv-01399-BHS) – 8

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1   claims in its original complaint in *Safety Star I*, Safety Star forced Aptibyte to file a motion to

2   dismiss those claims, which in turn forced Aptibyte to incur fees for work that has no

3   applicability to the complaint in the present action.

4        Safety Star's failure to adequately vet its claims before filing any lawsuit against

5   Aptibyte necessitated the filing of two motions to dismiss in *Safety Star I*. But Safety Star was

6   able to avoid any potential adverse ruling by voluntarily dismissing that case without having to

7   respond to Aptibyte's two motions. In such a situation, "the court hearing the first action does

8   not have an opportunity to prevent possible prejudice to the defendant by conditioning dismissal

9   on payment of costs and fees under Rule 41(a)(2)." *Esquivel*, 913 F. Supp. at 1391-92.

10   Therefore, Rule 41(d) "permits the court hearing the second action to step in and assume that

11   role by preventing the second litigation from proceeding until payment of costs and fees is

12   made." *Esquivel*, 913 F. Supp. at 1392. *See also Nielson*, 2003 U.S. Dist. LEXIS 29145 at *14

13   (Rule 41(d) "represents the only means by which defendants can obtain redress for unnecessary

14   expenditures incurred in defending the same claims" in a prior-filed and dismissed action).

15        Therefore, because the requirements of Rule 41(d) are indisputably met, Aptibyte should

16   be awarded its fees incurred in *Safety Star I*.

17   **III.   This Action Should Be Stayed Until Safety Star Complies With a Rule 41(d) Order**

18        "The Court has discretion to order a stay of the instant action pending plaintiff's payment

19   of the costs and fees imposed under Rule 41(d)." *Esquivel*, 913 F. Supp. at 1393.

20        Here, a stay pending Safety Star's payment of Aptibyte's attorneys' fees is appropriate.

21   Given that Safety Star elected to wait more than three years after first contacting Aptibyte about

22   the alleged infringement (Dkt. 1 at ¶ 31) to file its original complaint in *Safety Star I*, a stay

23   pending payment of fees will not prejudice Safety Star. In contrast, there is prejudice to Aptibyte

24   if it is required to defend this second, identical (and flawed) action before payment has been

25   made in an amount determined proper by the Court.

26   **IV.   Aptibyte Should Be Awarded $36,195 in Fees Incurred in Defending *Safety Star I***

27        In determining the reasonableness of the fees requested, the Court applies the "lodestar"

MOTION FOR FEES AND A STAY
PURSUANT TO FED. R. CIV. P. 41(d)
(Case No. 2:23-cv-01399-BHS) – 9

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

method. The Court finds the "lodestar" by multiplying the number of hours reasonably expended by the reasonable hourly rate. *Olson Kundig, Inc. v. 12th Avenue Iron, Inc.*, No. C22-0825JLR, 2023 U.S. Dist. LEXIS 79055, *29 (W.D. Wash. May 5, 2023). "[T]he resulting figure is presumptively reasonable," although "the court may, if circumstances warrant, adjust the lodestar figure up or down based on a number of additional factors that have not been subsumed in the initial lodestar calculation." *Id.* In assessing the reasonableness of the hourly rates, the Court looks "to the rate prevailing in the Western District of Washington for similar work performed by attorneys of comparable skill, experience, and reputation." *Amazon.com, Inc. v. Wong*, No. C19-0990JLR, 2022 U.S. Dist. LEXIS 67757, *4 (W.D. Wash. Apr. 12, 2022) (internal quotation marks omitted). Finally, "to determine a reasonable number of hours to be compensated, the court must consider whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Olson Kundig*, 2023 U.S. Dist. LEXIS 79055 at *31 (internal quotation marks omitted).

Here, the $500 hourly rate for the two attorneys who defended Aptibyte in *Safety Star I* - each of whom have practiced for more than 20 years (Lay Decl. ¶¶ 18, 20-21, Ex. 10) – is well within the hourly rates that have been found to be reasonable in this District. Similarly, the $175 hourly rate for the paralegal who worked on Aptibyte's defense, with more than 10 years' experience (*id.* ¶¶ 18, 22, Ex. 10), is within the hourly rates found to be reasonable in other cases. *See, e.g.*, *Olson Kundig*, 2023 U.S. Dist. LEXIS 79055 at *30 (hourly rates in patent/trademark infringement case ranging from $780 to $450 for partners and $260 for paralegals were reasonable "in the Seattle legal community"); *Amazon*, 2022 U.S. Dist. LEXIS 67757 at *3-5 (hourly rates in trademark infringement case of $785, $635, and $535 for attorneys and $215 for paralegals were reasonable and comparable to the rates in this District); *Amazon.com, Inc. v. Kurth*, No. 2:18-cv-00353-RAJ, 2019 U.S. Dist. LEXIS 127924, *17-18 (W.D. Wash. July 31, 2019) (hourly rates in trademark infringement case of $550 and $330 for attorneys with 30 and six years' experience respectively were reasonable in the Seattle market).

The work performed in connection with Aptibyte's defense in *Safety Star I* was also

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

reasonable and necessary, and Aptibyte's counsel has supported the work performed with detailed billing records. (Lay Decl. ¶¶ 15-17, 19, Ex. 9.) Aptibyte seeks an award of $36,195 in fees, which represents a total of 74.7 hours spent on Aptibyte's defense. (*Id.* ¶¶ 15-16.) Those hours include time devoted to: assessing Safety Star's original complaint, which included five federal and state law claims, and filing a motion to dismiss that complaint based in part on Safety Star's lack of standing; assessing Safety Star's amended complaint, which first introduced the trademark assignment upon which Safety Star's alleged rights to the "B-SAFE Trademarks" were based, and filing a motion to dismiss the amended complaint based in part on the assignment's failure to establish standing; and reviewing Safety Star's voluntary dismissal and assessing Aptibyte's options in light of it. (*Id.* ¶ 16 and Ex. 9.) And given that Safety Star abandoned its state law claims and apparently intends to rely on two newly created trademark assignments for its purported rights in the "B-SAFE Trademarks," the fees incurred in connection with much of this work would otherwise be unrecoverable in light of Safety Star's amendment of its original complaint and then its dismissal before the Court could rule on Aptibyte's motions to dismiss.

As a result, Aptibyte respectfully submits that its request for an award of $36,195 in attorneys' fees incurred in *Safety Star I* is reasonable.

## CONCLUSION

There can be no dispute that the requirements of Rule 41(d) have been satisfied by Safety Star's voluntary dismissal of *Safety Star I* and its re-filing of a virtually identical case against Aptibyte. Moreover, although proof of bad faith is not required for an award, Safety Star's course of conduct described herein provides such proof. Therefore, Aptibyte respectfully requests that it be awarded its fees incurred in *Safety Star I* totaling $36,195, and that the present action be stayed until Safety Star complies with the Court's order requiring payment.

//

//

//

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

Dated this 5th day of October, 2023.

Respectfully submitted,

FOCAL PLLC

By: *s/ Stacia N. Lay*
　　*s/ Randall H. Moeller*
Stacia N. Lay, WSBA #30594
Randall H. Moeller, WSBA #21094
900 1st Avenue S., Suite 201
Seattle, Washington 98134
Tel: (206) 529-4827
Fax: (206) 260-3966
Email: stacia@focallaw.com
Email: randall@focallaw.com

Attorneys for Defendant Aptibyte, LLC

## **WORD LIMIT CERTIFICATION**

I certify that this memorandum contains 4,191 words, in compliance with the Local Civil Rules.

By: *s/ Stacia N. Lay*
Stacia N. Lay, WSBA #30594

MOTION FOR FEES AND A STAY
PURSUANT TO FED. R. CIV. P. 41(d)
(Case No. 2:23-cv-01399-BHS) – 12

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966