1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SAFETY STAR, LLC, a Missouri limited
liability company,

      Plaintiff,

v.

APTIBYTE, LLC, a Washington limited
liability company,

      Defendant.

Case No. 2:23-cv-01399-BHS

DEFENDANT APTIBYTE, LLC'S MOTION
FOR JUDGMENT ON THE PLEADINGS
PURSUANT TO FED. R. CIV. P. 12(c)

NOTE ON MOTION CALENDAR:
April 19, 2024

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

# TABLE OF CONTENTS

FACTUAL BACKGROUND ........................................................................................... 1

I.    Safety Star, the "B-SAFE Trademarks," and the Trademark Assignments ...................... 1

    A.    Safety Star and the "B-SAFE Trademarks" ......................................................... 1

    B.    Safety Star's Three Complaints ........................................................................... 2

    C.    Safety Star and its Post-Litigation Trademark Assignments ................................. 3

II.   Aptibyte and the Bingo Baker Website ......................................................................... 4

III.  Procedural Background ................................................................................................ 5

DISCUSSION .......................................................................................................................... 5

I.    Judgment for Aptibyte Should Be Entered Under FED. R. CIV. P. 12(c) Standards .......... 5

II.   Despite Three Opportunities, Safety Star Fails to Clearly Establish its Standing ............. 6

    A.    The Face of the Complaint Fails to Establish Safety Star's Standing ................... 7

    B.    The Post-Litigation, "Nunc Pro Tunc" Assignments Do Not Remedy
           Safety Star's Lack of Standing ............................................................................. 9

    C.    Safety Star's Alleged Trademark Registration is Junior to Aptibyte's
           Alleged Use and Safety Star Fails to Allege Prior Knowledge .......................... 11

III.  Safety Star Also Does Not and Cannot State a Claim Under the Lanham Act ................ 13

    A.    Safety Star Does Not and Cannot Plausibly Allege Commercial Use of the
           "B-SAFE Trademarks" ....................................................................................... 13

    B.    Safety Star's Contributory Infringement Claim Fails as a Matter of Law ........... 16

    C.    Safety Star's Vicarious Infringement Claim Borders on Frivolous ..................... 19

IV.   After Three Failed Attempts to Plead Claims Against Aptibyte, Safety Star
        Should Not Be Afforded Another Opportunity to Amend its Complaint ........................ 21

CONCLUSION ...................................................................................................................... 22

DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)
(Case No. 2:23-cv-01399-BHS) – i

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## TABLE OF AUTHORITIES

**<u>Cases</u>**

*Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149 (9th Cir. 1989) ............................................ 21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................... 5, 6

*Atari Interactive, Inc. v. Redbubble, Inc.*, No. 21-17062,
    2023 U.S. App. LEXIS 18805 (9th Cir. July 24, 2023) ....................................................... 19

*BMA LLC v. HDR Glob. Trading Ltd.*, No. 20-cv-03345-WHO,
    2021 U.S. Dist. LEXIS 46939 (N.D. Cal. Mar. 12, 2021) ..................................................... 8

*Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672 (9th Cir. 2005) ........................................ 13, 15

*Calderon v. Linebarger Goggan Blair & Sampson LLP*, No. 3:22-cv-05962-DGE,
    2023 U.S. Dist. LEXIS 47844 (W.D. Wash. Mar. 21, 2023) .................................................. 6

*Cave Man Kitchens Inc. v. Caveman Foods LLC*, No. C18-273, TSZ,
    2018 U.S. Dist. LEXIS 146835 (W.D. Wash. Aug. 28, 2018) ............................................... 10

*Cave Man Kitchens Inc. v. Caveman Foods LLC*, No. C18-1274 TSZ,
    2020 U.S. Dist. LEXIS 219328 (W.D. Wash. Nov. 23, 2020) .................................. 10, 11

*Chavez v. United States*, 683 F.3d 1102 (9th Cir. 2012) ...................................................... 5

*Doe v. Holy See*, 557 F.3d 1066 (9th Cir. 2009) ................................................................. 5

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 623 F.3d 61 (2d Cir. 2010) ....... 9, 11

*Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975 (N.D. Cal. 2015) ....................... 16, 18

*Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774 (Fed. Cir. 1996) ..................... 11, 12

*Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*,
    955 F.2d 1143 (7th Cir. 1992) ....................................................................................... 20

*Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971 (9th Cir. 1999) ................................ 6

*Hewitt v. Wells Fargo Bank*, No. 3:22-cv-05729-DGE,
    2022 U.S. Dist. LEXIS 211806 (W.D. Wash. Nov. 22, 2022) .............................................. 6

*Johnson v. Meta Platforms, Inc.*, No. 22-cv-05691-BLF,
    2023 U.S. Dist. LEXIS 136027 (N.D. Cal. Aug. 4, 2023) ............................................ 16, 19

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

*LaCourt v. Specific Media, Inc.*, No. SACV 10-1256-GW(JCGx),

    2011 U.S. Dist. LEXIS 50543 (C.D. Cal. Apr. 28, 2011) .................................................. 9

*Lahoti v. Vericheck, Inc.*, No. C06-1132JLR,

    2007 U.S. Dist. LEXIS 64666 (W.D. Wash. Aug. 30, 2007) ........................................... 13

*Langfitt v. Pierce Cty.*, No. C21-5122 BHS,

    2021 U.S. Dist. LEXIS 165189 (W.D. Wash. Aug. 31, 2021) ................................. 5, 6, 21

*Lodestar Anstalt v. Bacardi & Co.*, 31 F.4th 1228, 1245 (9th Cir. 2022) ..................................... 13

*Lopez v. Bonanza.com, Inc.*, No. 17 Civ. 8493 (LAP),

    2019 U.S. Dist. LEXIS 170715 (S.D.N.Y. Sept. 30, 2019) ........................... 16, 17, 21, 22

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936 (9th Cir. 2011) ............... 17

*Micro/sys, Inc. v. DRS Techs., Inc.*, No. CV 14-3441 DMG (AJWx),

    2015 U.S. Dist. LEXIS 193891 (C.D. Cal. Feb. 13, 2015)................................................ 22

*Mountaineers Found. v. Mountaineers*, No. 2:19-cv-1819-RSL-TLF,

    2022 U.S. Dist. LEXIS 237892 (W.D. Wash. Apr. 8, 2022)............................................... 8

*Nat'l Licensing Ass'n, LLC v. Inland Joseph Fruit Co.*,

    361 F. Supp. 2d 1244 (E.D. Wash. 2004) ................................................................ 6, 7, 8

*Nat'l Prods. Inc. v. Innovative Intelligent Prods. LLC*, No. 2:20-cv-00428-DGE,

    2022 U.S. Dist. LEXIS 33643 (W.D. Wash. Feb. 25, 2022)............................................ 21

*OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, No. CV-14-085-LRS,

    2015 U.S. Dist. LEXIS 179509 (E.D. Wash. Nov. 30, 2015) .......................................... 22

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007) ................................. 17, 20

*Prestonettes, Inc. v. Coty*, 264 U.S. 359 (1924).......................................................................... 14

*Reddy v. Litton Indus., Inc.*, 912 F.2d 291 (9th Cir. 1990) ........................................................ 21

*SafeWorks, LLC v. Teupen Am., LLC*, 717 F. Supp. 2d 1181 (W.D. Wash. 2010) ..................... 13

*Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217 (9th Cir. 1996)......................................... 7

*Spy Phone Labs LLC v. Google Inc.*, No. 15-cv-03756-PSG,

    2016 U.S. Dist. LEXIS 36444 (N.D. Cal. Mar. 21, 2016).............................................. 18

DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)
(Case No. 2:23-cv-01399-BHS) – iii

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ............................................................................. 5, 20

*Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010) ..................................................... 16, 17

*Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995 (9th Cir. 2023) ..................................... 18, 19, 20

**Rules and Statutes**

15 U.S.C. § 1055 ............................................................................................................................. 8

15 U.S.C. § 1060(a)(1) .................................................................................................................... 9

15 U.S.C. § 1060(a)(3) .................................................................................................................... 9

15 U.S.C. § 1114 ......................................................................................................................... 8, 11

15 U.S.C. § 1114(1)(a) .................................................................................................................. 14

15 U.S.C. § 1125 ............................................................................................................................. 8

15 U.S.C. § 1125(a)(1) .................................................................................................................. 14

15 U.S.C. § 1127 ........................................................................................................................... 11

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 5

Fed. R. Civ. P. 12(c) ....................................................................................................................... 5

Fed. R. Civ. P. 15 .......................................................................................................................... 21

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1   Plaintiff Safety Star, LLC has filed two separate lawsuits and three complaints against

2   Defendant Aptibyte, LLC. None of those complaints have plausibly alleged any claim against

3   Aptibyte based on the alleged infringement of the "B-SAFE Trademarks" that Safety Star claims

4   to own. Safety Star's current Complaint in this second lawsuit suffers from the same flaws as the

5   first two complaints in the first lawsuit. Specifically, Safety Star fails to adequately demonstrate

6   its standing to sue for infringement of the alleged "B-SAFE Trademarks," notwithstanding the

7   three post-litigation trademark assignments it has created. Safety Star also does not and cannot

8   plausibly allege the commercial use of those marks in connection with the sale of goods or

9   services by either Aptibyte or the users of Aptibyte's website that is necessary to state its

10  Lanham Act claims. Finally, Safety Star's contributory and vicarious trademark infringement

11  claims fall far short of plausibly alleging any such claim against Aptibyte. As a result, judgment

12  on the pleadings in favor of Aptibyte is proper.

13  **FACTUAL BACKGROUND**

14  **I.      Safety Star, the "B-SAFE Trademarks," and the Trademark Assignments**

15  **A.      Safety Star and the "B-SAFE Trademarks"**

16  Safety Star allegedly provides a "proprietary safety bingo program" under the alleged

17  marks B-SAFE and BSAFE BINGO, which it refers to collectively as the "B-SAFE

18  Trademarks." (Dkt. 1 at ¶¶ 9, 16.) Safety Star alleges that it has marketed and sold its "safety

19  bingo program" under those marks since 1992. (*Id.* at ¶ 9.)

20  Safety Star claims it "is the owner" of two registrations for the "B-SAFE Trademarks":

21  (1) Registration No. 3,032,329 for B-SAFE for "[b]ingo-type game cards for use in promoting

22  safety," registered on December 20, 2005; and (2) Registration No. 5,660,503 for BSAFE

23  BINGO for "[b]oard games designed to promote employee safety awareness," registered on

24  January 22, 2019. (*Id.* at ¶¶ 16-17.) The registration certificate for B-SAFE attached to the

25  Complaint, however, indicates that Beau Culbertson is the owner of the mark and registration,

26  not Safety Star. (Dkt. 1-1 at 5.) Because the "BINGO" component of the alleged BSAFE BINGO

27  mark is generic, the USPTO required that portion to be disclaimed. (Dkt. 1-1 at 6.) Thus, the "B-

DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)
(Case No. 2:23-cv-01399-BHS) – 1

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

SAFE Trademarks," which Safety Star conflates throughout the Complaint, are essentially identical and are used in connection with the same goods.

### B.   Safety Star's Three Complaints

Safety Star filed its first complaint against Aptibyte on May 15, 2023 ("*Safety Star I*"). All of its claims in *Safety Star I* were based on the alleged infringement of the "B-SAFE Trademarks," which Safety Star claimed to own. (Declaration of Stacia N. Lay in Support of Defendant's Motion for Judgment on the Pleadings ¶¶ 2-3, Ex. 1.)[1] Safety Star made no mention of any trademark assignment by which it obtained ownership of the "B-SAFE Trademarks" in its original complaint in *Safety Star I*. (*See id.* Ex. 1.) Aptibyte moved to dismiss that first complaint on July 10, 2023, arguing in part that Safety Star lacked standing to assert its trademark-based claims. (*Id.* ¶ 4.) Rather than respond to the motion, Safety Star filed an amended complaint. (*Id.*)

For the first time, in its amended complaint in *Safety Star I*, Safety Star relied on a written trademark assignment dated June 4, 2018, that it alleged gave it "sole title and right to the B-SAFE Trademarks, and thus, standing to bring this Complaint." (Lay Decl. Ex. 2 at ¶ 18, Ex. 16.) Aptibyte moved to dismiss the amended complaint, again arguing, in part, that Safety Star lacked standing and that the written trademark assignment – which had to have been created sometime *after* the date identified in the assignment and likely only in response to Aptibyte's first motion to dismiss – did not demonstrate Safety Star's standing at the time it filed the lawsuit. (*Id.* ¶ 6.) In lieu of responding to Aptibyte's motion to dismiss, Safety Star voluntarily dismissed *Safety Star I* without prejudice. (*Id.* ¶ 7.)

Less than a month after that dismissal, Safety Star filed the present action against Aptibyte alleging essentially the same claims, all of which are based on alleged infringement of the "B-SAFE Trademarks" that Safety Star claims to own. (Dkt. 1; Lay Decl. ¶ 8.) In its third Complaint, Safety Star makes no mention of any assignment of the "B-SAFE Trademarks;"

---

[1] Concurrently with this Motion, Aptibyte is filing a request for judicial notice of (1) filings in *Safety Star I* and (2) records of the USPTO relating to the "B-SAFE Trademarks."

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

rather, it simply alleges that it "is the owner" of the two marks and registrations. (*See* Dkt. 1 at ¶ 16.)

### C.      Safety Star and its Post-Litigation Trademark Assignments

In Safety Star's first alleged written assignment agreement dated June 4, 2018, Beau Culbertson, the identified owner, purported to assign the B-SAFE and BSAFE BINGO marks and registrations to Safety Star ("Alleged 2018 Assignment"). (Lay Decl. Ex. 2 at Ex. 16.) Safety Star later claimed that the Alleged 2018 Assignment "memorializ[ed] [Culbertson's] ***verbal*** assignment of the B-SAFE Trademarks to Safety Star." (Dkt. 19 at ¶ 3 (emphasis added).)

However, as Aptibyte demonstrated in its motion to dismiss the amended complaint in *Safety Star I*, the Alleged 2018 Assignment was suspect, in that it appeared to only have been created in response to Aptibyte's motion. For instance, it purported to assign the BSAFE BINGO mark *and* the corresponding registration. (Lay Decl. Ex. 2 at Ex. 16.) But the application to register the BSAFE BINGO mark was filed on June 4, 2018, the date of the Alleged 2018 Assignment, and the registration for that mark did not issue until January 22, 2019. (*Id.* ¶¶ 12-13, Exs. 6-7.) It therefore would have been impossible for the parties to the Alleged 2018 Assignment – Culbertson and Safety Star – to know on June 4, 2018 whether the BSAFE BINGO application would mature into a registration, much less the specific registration number. Moreover, after the Alleged 2018 Assignment – which purported to assign both the B-SAFE and BSAFE BINGO marks and registrations – the owner, Culbertson, continued to file documents with the USPTO as the owner of the B-SAFE registration. (*See, e.g.*, *id.* ¶ 11, Ex. 5 (submission dated June 29, 2018).) Safety Star now admits that it created the Alleged 2018 Assignment in response to Aptibyte's motion to dismiss the original complaint in *Safety Star I*. (*See* Dkt. 19 at ¶ 3 (stating that counsel prepared the "first *nunc pro tunc* assignment" after reviewing Aptibyte's first motion to dismiss).)

Despite claiming to own the "B-SAFE Trademarks" based on an assignment of those marks from Culbertson, when Safety Star filed its third complaint against Aptibyte – alleging essentially the same trademark-based claims – it made no mention of any trademark assignment;

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

rather, it simply claimed to be "the owner" of the marks. (*See* Dkt. 1 at ¶ 16.) However, upon reviewing the USPTO records for the "B-SAFE Trademarks" after Safety Star filed this second lawsuit, Aptibyte discovered two newly created "Nunc Pro Tunc Trademark Assignment Agreements" for the B-SAFE and BSAFE BINGO marks and registrations ("Alleged 2023 Assignments"). (Lay Decl. ¶ 9, Ex. 3.) In the Alleged 2023 Assignments – which indicate they were executed on August 17, 2023 – Culbertson, as "the owner" of the "B-SAFE Trademarks," purports to assign all rights to the marks and registrations "*nunc pro tunc* **effective as of January 22, 2019**" to Safety Star. (*Id.* Ex. 3 (bold emphasis added).) Safety Star claims it prepared the Alleged 2023 Assignments because the Alleged 2018 Assignment "improperly listed the effective date as the 'execution' date of June 4, 2018" and to "confirm and perfect" Safety Star's alleged ownership of the "B-SAFE Trademarks." (Dkt. 19 at ¶¶ 4, 6.) Safety Star has not explained why the alleged effective date of the assignment changed between the Alleged 2018 Assignment and the Alleged 2023 Assignments (*i.e.*, from June 4, 2018 to January 22, 2019), which further highlights the questionable validity of any of the written assignments Safety Star has proffered so far. Safety Star recorded the Alleged 2023 Assignments with the USPTO on September 4, 2023 (*see* Lay Decl. ¶ 9, Ex. 3) and filed this second lawsuit on September 8, 2023 (*see* Dkt. 1).

## II.    Aptibyte and the Bingo Baker Website

Aptibyte operates a website, bingobaker.com, that offers a "bingo card generator" which allows users to create their own bingo cards. (Dkt. 1-1 at 7-10 (using the slogan "Whip up a batch of bingo cards!").) The bingo card generator is based on content provided by the user; users enter a "bingo card title, choose a size, and type [their] words into the squares." (*Id.* at 8.) Users can also "drag-and-drop images into the squares and customize the color scheme" of the bingo cards they create. (*Id.* at 8-9.)

Although Safety Star at times attempts to suggest that Aptibyte is the creator of the bingo cards, Safety Star itself repeatedly admits that the bingo cards are *user generated*. For example, Safety Star alleges that Aptibyte: "hosts . . . bingo cards generated by customers" (Dkt. 1 at

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

¶ 29); "allows consumers to generate" bingo cards (*id.* at ¶ 30); and "could have implemented a . . . software mechanism to prevent consumers from generating bingo cards that incorporate the B-SAFE Trademarks" (*id.* at ¶ 37).

### III.   Procedural Background

Safety Star filed its Complaint in this case on September 8, 2023. (Dkt. 1.) Aptibyte filed its Answer and Affirmative Defenses on October 5, 2023. (Dkt. 15.) Therefore, the pleadings have closed for purposes of Fed. R. Civ. P. 12(c).

### DISCUSSION

### I.   Judgment for Aptibyte Should Be Entered Under Fed. Civ. P. 12(c) Standards

"After the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The analysis for a motion for judgment on the pleadings is "substantially identical" to the analysis of a Rule 12(b)(6) motion to dismiss as, under both rules, "a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks omitted); *see also Langfitt v. Pierce Cty.*, No. C21-5122 BHS, 2021 U.S. Dist. LEXIS 165189, *7 (W.D. Wash. Aug. 31, 2021) ("A Rule 12(c) motion is functionally identical to a motion to dismiss under Rule 12(b)(6).") (internal quotation marks omitted).

Dismissal under Rule 12(b)(6), and therefore Rule 12(c), "may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Langfitt*, 2021 U.S. Dist. LEXIS 165189 at *7. Safety Star's "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). *See also Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (on facial attacks on subject matter jurisdiction the court also assumes factual allegations in the complaint are true and draws reasonable inferences in plaintiff's favor). A claim has facial plausibility only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Starr v. Baca*, 652 F.3d 1202,

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1216 (9th Cir. 2011) (the allegations "must plausibly suggest an entitlement to relief, such that it is not unfair to require the [defendant] to be subjected to the expense of discovery and continued litigation"). This plausibility standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation" or "naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted); *see also Calderon v. Linebarger Goggan Blair & Sampson LLP*, No. 3:22-cv-05962-DGE, 2023 U.S. Dist. LEXIS 47844, *2 (W.D. Wash. Mar. 21, 2023) (plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action") (internal quotation marks omitted). On a motion for judgment on the pleadings, the Court also "may consider facts that are contained in materials of which the court may take judicial notice." *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (internal quotation marks omitted).

"Although the court must accept as true the Complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper 12(b)(6) motion to dismiss." *Langfitt*, 2021 U.S. Dist. LEXIS 165189 at *7. Nor must the Court "accept as true . . . allegations that contradict facts that may be judicially noticed by the court." *Hewitt v. Wells Fargo Bank*, No. 3:22-cv-05729-DGE, 2022 U.S. Dist. LEXIS 211806, *8 (W.D. Wash. Nov. 22, 2022) (internal quotation marks omitted).

Additionally, standing is "an indispensable part of the plaintiff's case, and accordingly must be supported at each stage of litigation[.]" *Nat'l Licensing Ass'n, LLC v. Inland Joseph Fruit Co.*, 361 F. Supp. 2d 1244, 1248 (E.D. Wash. 2004) (internal quotation marks omitted). And the "burden of establishing standing remains at all times with the party invoking federal jurisdiction." *Id.* Moreover, it is "well settled that standing cannot be inferred argumentatively from averments in the pleadings, . . . but rather must affirmatively appear in the record." *Id.* (internal quotation marks omitted).

## II.   Despite Three Opportunities, Safety Star Fails to Clearly Establish its Standing

Safety Star (1) has now filed three complaints against Aptibyte in which it asserts claims based on its alleged ownership of the "B-SAFE Trademarks" and (2) has created three post-

DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)
(Case No. 2:23-cv-01399-BHS) – 6

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1  litigation trademark assignment agreements. Nonetheless, Safety Star's standing to assert those

2  claims continues to be, at best, murky.

3      First, on the face of the Complaint, Safety Star lacks standing because, based on the

4  registration for the senior B-SAFE mark attached to its Complaint, Culbertson, not Safety Star, is

5  the owner of the mark. And any rights in the highly similar BSAFE BINGO mark would inure to

6  Culbertson's benefit. Second, even if Safety Star were to rely on its post-litigation written

7  assignments, those assignments – executed in 2023 – are ineffective because they reflect, at

8  most, an oral agreement to transfer the marks and registrations that allegedly took place in

9  January 2019. However, any alleged oral assignment of the "B-SAFE Trademarks" and

10  registrations that took place in January 2019 was ineffective as it did not comply with the

11  Lanham Act's requirement that assignments of a registered mark be in writing. Third, Safety

12  Star's alleged registration for the BSAFE BINGO mark is junior to Aptibyte's alleged use and

13  Safety Star does not plausibly allege that Aptibyte had prior knowledge of Safety Star's use of its

14  alleged mark. For any or all of these reasons, Safety Star has failed to carry its burden of

15  establishing its standing. *See Nat'l Licensing*, 361 F. Supp. 2d at 1248.

16      **A.    The Face of the Complaint Fails to Establish Safety Star's Standing**

17      Looking first at the face of the Complaint, Safety Star fails to plausibly allege its standing

18  to assert claims for alleged infringement of the "B-SAFE Trademarks." Safety Star alleges that

19  "[s]ince at least January 1992, Plaintiff has continuously manufactured, marketed, and sold the

20  B-SAFE Bingo Program in commerce[.]" (Dkt. 1 at ¶ 10.) But it is the registration for the B-

21  SAFE mark – which identifies Culbertson as the mark owner – that has a first use date of 1992.

22  (*See* Dkt. 1-1 at 5.) Safety Star's first use date for its alleged BSAFE BINGO mark was not until

23  2001. (*See* Dkt. 1-1 at 6.) Although Safety Star's Complaint relies on Culbertson's alleged

24  trademark rights as a basis for its claims, Safety Star does not allege that Culbertson ever

25  assigned or licensed his trademark rights to Safety Star that would give Safety Star either a right

26  to (1) register the junior BSAFE BINGO mark or (2) sue for infringement of the "B-SAFE

27  Trademarks." *See, e.g.*, *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir.

DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)
(Case No. 2:23-cv-01399-BHS) – 7

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1996) ("To acquire ownership of a trademark . . . the party claiming ownership must have been the first to actually use the mark in the sale of goods or services."). *See also Nat'l Licensing*, 361 F. Supp. 2d at 1253-57 (discussing requirements to have standing to pursue claims under Sections 1114 and 1125 of the Lanham Act).

As a result, looking only at Safety Star's Complaint, all goodwill in the "B-SAFE Trademarks" as used in connection with the "B-SAFE Bingo Program" would appear to belong to Culbertson, not Safety Star. The Lanham Act provides that "[w]here a registered mark . . . is or may be used legitimately by related companies, such use shall inure to the benefit of the registrant[.]" 15 U.S.C. § 1055. *See also Mountaineers Found. v. Mountaineers*, No. 2:19-cv-1819-RSL-TLF, 2022 U.S. Dist. LEXIS 237892, *11 (W.D. Wash. Apr. 8, 2022) ("A licensee's properly licensed use of a trademark increases the legal and commercial strength of the licensed mark – without providing ownership rights in the mark itself to the licensee."), *adopted in relevant part by*, 2023 U.S. Dist. LEXIS 21474 (W.D. Wash. Feb. 8, 2023). Thus, even assuming that Safety Star claims to be a "related company" of Culbertson (which is not alleged in the Complaint), Safety Star's use of a mark virtually identical to Culbertson's senior B-SAFE mark in connection with identical goods should inure to Culbertson's benefit, not Safety Star's.

Moreover, the murkiness of Safety Star's purported standing is compounded by its failure to differentiate between the "B-SAFE Trademarks." Each of Safety Star's claims rely on the alleged infringement of those alleged marks without differentiating between them. (*See, e.g.*, Dkt. 1 at ¶ 44 ("Defendant's use of the B-SAFE Trademarks constitutes an infringement"), ¶¶ 50, 52 (alleging rights in the "B-SAFE Trademarks" and "Defendant's use of the B-SAFE Trademarks"), ¶ 58 (alleging "infringement of the B-SAFE Trademarks").)

Thus, even assuming that Safety Star owned some rights in one of the "B-SAFE Trademarks," it is impossible to tell from the Complaint (1) which mark Aptibyte allegedly infringed for purposes of each of Safety Star's claims and (2) therefore which claims it may have sufficiently alleged its standing to assert. Courts regularly dismiss claims that are similarly unclear. *See, e.g.*, *BMA LLC v. HDR Glob. Trading Ltd.*, No. 20-cv-03345-WHO, 2021 U.S.

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

Dist. LEXIS 46939, *40 (N.D. Cal. Mar. 12, 2021) ("Plaintiffs have not adequately pleaded BMA's standing as it is unclear whether it is seeking to vindicate its own rights as opposed to the rights of its members."); *LaCourt v. Specific Media, Inc.*, No. SACV 10-1256-GW(JCGx), 2011 U.S. Dist. LEXIS 50543, *9-10 (C.D. Cal. Apr. 28, 2011) (dismissing claim when "it is not clear that Plaintiffs have even alleged [the 'injury in fact' requirement of standing]").

### B.   The Post-Litigation, "Nunc Pro Tunc" Assignments Do Not Remedy Safety Star's Lack of Standing

Even if Safety Star were to rely on any of the various written assignments created only after it first sued Aptibyte, those assignments only further muddy the standing waters.

Under the Lanham Act, registered marks are assignable with the goodwill of the business in which the mark is used. 15 U.S.C. § 1060(a)(1). However, such trademark "[a]ssignments shall be by instruments in writing duly executed." 15 U.S.C. § 1060(a)(3). A written assignment recorded in the USPTO shall be prima facie evidence of execution. *Id.* But, "[p]rima facie evidence of execution is not the same as conclusive evidence of the validity of an assignment." *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 623 F.3d 61, 68 (2d Cir. 2010). "The mere act of recording [an assignment] document is a ministerial act, and [t]he Assignment Branch [of the USPTO] does not examine the substance of the transaction; rather, it records any assignment that appears on its face to be an assignment." *Id.* (internal quotation marks omitted).

Safety Star presumably has abandoned the Alleged 2018 Assignment that it created while *Safety Star I* was pending – which appeared to allege that an assignment occurred in June 2018 – in favor of the Alleged 2023 Assignments and their purported January 2019 effective date.

As to those Alleged 2023 Assignments, they also have significant issues. For example, the assignment for each of the B-SAFE and BSAFE BINGO marks purport to be effective "as of January 22, 2019," the registration date of the BSAFE BINGO mark. (Lay Decl. Exs. 3, 6.) But the application to register the BSAFE BINGO mark was filed some seven months earlier on June 4, 2018 by Safety Star, who represented to the USPTO that it was the owner of the mark. (*See* Lay Decl. ¶ 13, Ex. 7.) Safety Star fails to explain how it could represent to the USPTO that

DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)
(Case No. 2:23-cv-01399-BHS) – 9

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

it was the owner of the BSAFE BINGO mark in 2018, when it now appears to claim that the oral assignment giving it ownership was not effective until 2019.

But even ignoring that issue, the Alleged 2023 Assignments are ineffective because they purport to reflect an oral agreement to assign the "B-SAFE Trademarks" that was made at some earlier time – presumably January 22, 2019, the identified "effective" date of the written documents executed in August 2023.[2] As there is no evidence of a written assignment executed at the time of the alleged oral assignment – January 22, 2019 – the later created written assignments are ineffective to transfer any rights as of that date. The court's decisions in the *Cave Man Kitchens* cases are particularly instructive here.

In *Cave Man Kitchens Inc. v. Caveman Foods LLC*, after defendant moved to dismiss plaintiff's trademark claims based in part on a lack of standing, the plaintiff obtained an "Assignment Nunc Pro Tunc" for the mark in question on May 30, 2018. No. C18-273 TSZ, 2018 U.S. Dist. LEXIS 146835, *2-3 (W.D. Wash. Aug. 28, 2018). However, because the alleged assignment did not establish that plaintiff "had legal title to" the mark at issue at the time the lawsuit was filed, the court dismissed plaintiff's complaint for lack of subject matter jurisdiction. *Id.* at *3-4.

The same day of the court's dismissal, the plaintiff filed a new action that alleged the same trademark-based claims. *Cave Man Kitchens Inc. v. Caveman Foods LLC*, No. C18-1274 TSZ, 2020 U.S. Dist. LEXIS 219328, *6-7 (W.D. Wash. Nov. 23, 2020). Plaintiff again relied on the May 30, 2018 "Assignment Nunc Pro Tunc" – which plaintiff obtained during the first lawsuit and purported to make the assignment effective as of June 6, 2011 – for its standing to assert its trademark infringement claim. *Id.* at *4, 6, 8-9. However, the court concluded that the "Assignment Nunc Pro Tunc" did not retroactively assign rights in the mark at issue based on an

---

[2] It is not even clear when any oral assignment allegedly took place. The Alleged 2018 Assignment appears to identify June 4, 2018 as the date of the alleged oral assignment. (*See* Lay Decl. Ex. 2 at Ex. 16; *see also* Dkt. 19 at ¶ 4.) But the Alleged 2023 Assignments now suggest that Safety Star claims it took place on January 22, 2019. (*See* Lay Decl. Ex. 3.)

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

earlier oral assignment. The court emphasized that when it "is 'called upon to inquire whether a valid assignment had actually taken place,' as here, an 'inquiry [is] required because only after a *valid* assignment of trademarks does the assignee succeed to the rights of the assignor.'" *Id.* at \*9 (quoting *Fed. Treas.*, 623 F.3d at 68). Because the Lanham Act requires that trademark assignments be in writing, plaintiff's "retroactive assignment [was] ineffective because the document merely reflects that an alleged *oral* agreement was made on June 6, 2011, not that any type of writing was executed on that date." *Id.* at \*10. Thus, the court concluded that, "[a]s a matter of law, any alleged oral agreement in 2011 could not transfer to Plaintiff any ownership rights in the registered mark." *Id.* at \*11 (stating that the evidence "merely shows that a written assignment was executed on May 30, 2018, and not any earlier").

Similarly, here, the Alleged 2023 Assignments are ineffective because they purport to merely reflect an *oral* agreement to transfer the "B-SAFE Trademarks" to Safety Star that was allegedly made on January 22, 2019. Safety Star does not allege that there was any written agreement executed on January 22, 2019 that would satisfy the Lanham Act's requirement for a written assignment. Indeed, Safety Star's creation of the Alleged 2023 Assignments in August 2023 establishes the *absence* of any written assignment agreement in January 2019. Therefore, in the absence of a valid assignment, Safety Star fails to demonstrate its standing to assert claims for infringement of the "B-SAFE Trademarks."

### C.  Safety Star's Alleged Trademark Registration is Junior to Aptibyte's Alleged Use and Safety Star Fails to Allege Prior Knowledge

Safety Star's first claim for trademark infringement is based on its alleged rights in a registered trademark, the "B-SAFE Trademarks," that are senior to Aptibyte's alleged rights in the mark. But the Complaint fails to demonstrate Safety Star's standing to assert the claim.

An action for trademark infringement may be brought by the "registrant" of the mark. 15 U.S.C. § 1114. *See also* 15 U.S.C. § 1127 (defining "registrant"). A party lacks standing to sue for trademark infringement if it does not own the trademark at issue. *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 777 (Fed. Cir. 1996). There must be ownership at the

DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)
(Case No. 2:23-cv-01399-BHS) – 11

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

time the suit was filed; a subsequent assignment conferring ownership, even if purported to be retroactive, cannot cure a defect in standing. *Id.* at 777, 779-80. As discussed above, Culbertson owns all rights to the "B-SAFE Trademarks" and has not assigned the senior B-SAFE mark (or the BSAFE BINGO mark) to Safety Star in a valid, written assignment.

Additionally, even assuming *arguendo* that Aptibyte is using a "B-SAFE Trademark,"[3] Safety Star is not the senior registrant of a mark that is confusingly similar to Aptibyte's. In the first claim for trademark infringement, Safety Star alleges that "Defendant's use of the B-SAFE Trademarks constitutes an infringement of Plaintiff's trademarks." (Dkt. 1 at ¶ 44.) But as shown in the Complaint, the application to register the mark allegedly owned by Safety Star – BSAFE BINGO – was filed in June 2018 and only registered in January 2019. (Dkt. 1-1 at 6.) Safety Star, however, alleges that Aptibyte has been "offer[ing] bingo cards bearing the B-SAFE Trademarks since at least 2017." (Dkt. 1 at ¶ 27.) Since Safety Star did not apply to register the BSAFE BINGO mark until 2018 and the mark was not registered until 2019 – both occurring after Aptibyte's alleged first use of the "B-SAFE Trademarks" – the registration cannot serve as a basis for Safety Star's first claim. Safety Star also does not allege that Aptibyte knew of its alleged BSAFE BINGO mark before March 2020, when it sent Aptibyte a cease-and-desist letter. (*Id.* at ¶ 31.) Safety Star has thus failed to state allegations sufficient to support a claim of federal trademark infringement.

The other "B-SAFE Trademark" Safety Star claims to own, B-SAFE, was registered on December 20, 2005. But Culbertson, not Safety Star, is the identified owner of that mark and registration (*see* Dkt. 1-1 at 5), and Safety Star has not proffered a valid, written assignment of that mark. Safety Star's allegations emphasize its reliance on the senior B-SAFE trademark registration as a basis for relief: "Plaintiff's [sic] [registration] for B-SAFE was filed for before and registered before Defendant's infringing use commenced." (Dkt. 1 at ¶ 19.) And Safety

---

[3] As discussed below, Safety Star does not and cannot plausibly allege that Aptibyte has made any commercial use of Safety Star's alleged "B-SAFE Trademarks" in connection with the sale of goods or services, a necessary element of each of its claims.

DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)
(Case No. 2:23-cv-01399-BHS) – 12

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

Star's 2019 BSAFE BINGO registration is junior to Aptibyte's alleged use of the "B-SAFE Trademarks" "since at least 2017." (*Id.* at ¶ 27, Ex. 4.) Thus, Safety Star cannot rely on the B-SAFE registration as a basis for its first cause of action and it does not allege that Aptibyte knew of the alleged BSAFE BINGO mark before its 2019 registration date.

## III.     Safety Star Also Does Not and Cannot State a Claim Under the Lanham Act

Even assuming Safety Star had established its standing to assert Lanham Act claims based on alleged ownership of the "B-SAFE Trademarks," those claims fail as a matter of substantive law. First, Safety Star does not and cannot plausibly allege commercial use of the "B-SAFE Trademarks" – whether by Aptibyte or the Bingo Baker website users – an essential element of its claims. Second, Safety Star does not and cannot plausibly allege its contributory or vicarious trademark infringement claims. As a result, Safety Star does not and cannot plausibly allege any claim for relief and Aptibyte is entitled to judgment as a matter of law.

### A.     Safety Star Does Not and Cannot Plausibly Allege Commercial Use of the "B-SAFE Trademarks"

Each of Safety Star's Lanham Act claims purport to allege either trademark infringement or false designation of origin based on the "B-SAFE Trademarks." (Dkt. 1 at 8-11.) The elements of those claims are the same. *SafeWorks, LLC v. Teupen Am., LLC*, 717 F. Supp. 2d 1181, 1189 (W.D. Wash. 2010). Therefore, for all of its claims, Safety Star must plausibly allege (1) that it owns a valid, protectable trademark, *i.e.*, the "B-SAFE Trademarks," and (2) that Aptibyte, or, in the case of its contributory and vicarious infringement claims that third parties, used those marks in commerce in connection with goods or services in a manner that is likely to cause confusion. *Lodestar Anstalt v. Bacardi & Co.*, 31 F.4th 1228, 1245, 1251-52 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 428 (2022).

As to the second element, "[i]nfringement claims are subject to a commercial use requirement." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005); *Lahoti v. Vericheck, Inc.*, No. C06-1132JLR, 2007 U.S. Dist. LEXIS 64666, *25 (W.D. Wash. Aug. 30, 2007) (plaintiff must show that defendant "made commercial use of a mark that is similar

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

enough to cause confusion in the minds of consumers about the origin of the goods or services”); *see also* 15 U.S.C. § 1114(1)(a) (referencing a defendant’s “use [of a mark] in commerce . . . in connection with the sale, offering for sale, distribution, or advertising of any goods or services” that is likely to cause confusion); 15 U.S.C. § 1125(a)(1) (referencing a defendant’s “use[] [of a mark] in commerce” in connection with goods or services that is likely to cause confusion). But Safety Star does not and cannot plausibly allege that Aptibyte, or the third parties implicated by its contributory and vicarious infringement claims, made commercial use of the alleged “B-SAFE Trademarks” in connection with the sale of goods or services.

Safety Star at best alleges that users of the Bingo Baker website have used “bsafe” as the letters on user-generated bingo cards or as a description of the theme of those cards. (*See, e.g.*, Dkt. 1-1 at 11-12, 24-31.) Safety Star fails to even plausibly allege that such use constitutes trademark use (*e.g.*, use to identify the source of goods or services) rather than a common play on the words “be safe” (recognizing that bingo cards traditionally have only five columns, thus “bsafe”). Instead, Safety Star makes a conclusory allegation that these user-generated bingo cards “[bore] the mark BSAFE.” (Dkt. 1 at ¶ 27.) But, of course, the *use of a word* on such user-generated content does nothing to demonstrate *commercial use of a mark* to identify the source of goods or services by either Aptibyte or the website users. *See, e.g.*, *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924) (a trademark “does not confer a right to prohibit the use of the word”).

Realizing this fundamental flaw in its trademark claims, Safety Star offers non-sequiturs, alleging that Aptibyte is “engaged in the business of operating an online bingo card system at its website www.bingobaker.com.” (Dkt. 1 at ¶ 23.) But even if that accurately characterized Aptibyte’s website, Safety Star does not and cannot allege that Aptibyte is using the “B-SAFE Trademarks” to offer for sale an alleged “online bingo card system.” To the contrary, to the extent Aptibyte can be said to offer such a system, it does so under the “Bingo Baker” mark.

Nor does Safety Star’s conclusory allegation that Aptibyte is engaged in “the creation and distribution” of bingo cards purportedly bearing the “B-SAFE Trademarks” assist its claims. (Dkt. 1 at ¶ 22.) Absent from that allegation are any actual *facts* demonstrating Aptibyte’s

DEFENDANT’S MOTION FOR JUDGMENT ON THE
PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)
(Case No. 2:23-cv-01399-BHS) – 14

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

"creation" of bingo cards that bear the "B-SAFE Trademarks." Rather, as Safety Star's own Complaint demonstrates, it is users of the Bingo Baker website – not Aptibyte – who create bingo cards that allegedly use some form of the term "bsafe." (*See, e.g.*, *id.* at ¶ 29 (alleging Aptibyte hosts "bingo cards generated by customers"), ¶ 30 (alleging Aptibyte "allows consumers to generate . . . bingo cards bearing the B-SAFE Trademarks"), ¶ 37 (alleging Aptibyte could implement a software mechanism "to prevent consumers from generating bingo cards that incorporate the B-SAFE Trademarks").)

Safety Star's allegation that Aptibyte offers paid memberships to its Bingo Baker website also fails to plausibly allege Aptibyte's commercial use of the "B-SAFE Trademarks" in connection with the sale of goods or services. (Dkt. 1 at ¶¶ 38-39, Exs. 14-15.) At most, this allegation may demonstrate commercial use of the "Bingo Baker" mark in connection with the sale of goods or services (*e.g.*, memberships to the "Bingo Baker" website). But it does not demonstrate commercial use of any "B-SAFE" mark in the sale of website memberships, and Safety Star does not and cannot allege otherwise. Indeed, the exhibits that Safety Star attaches to its complaint in purported support of this allegation do not include any reference to any "B-SAFE" mark, let alone any such mark that Safety Star may claim to own. (*Id.* Exs. 14, 15.)

"The Supreme Court has made it clear that trademark infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers." *Bosley*, 403 F.3d at 676. Here, Safety Star simply does not and cannot allege that Aptibyte is making unauthorized use of the "B-SAFE Trademarks" in connection with the sale of any goods or services, let alone such a use that is likely to cause consumer confusion.

Even if there were commercial use of Safety Star's alleged marks (which Safety Star has not alleged), any such use was **by the users** who created the bingo cards that allegedly included the marks, not Aptibyte. Safety Star's assertion that Aptibyte purportedly could have "implemented a . . . software mechanism to prevent consumers from generating bingo cards that [allegedly] incorporate the B-SAFE Trademarks" (Dkt. 1 at ¶ 37) conclusively demonstrates that

DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)
(Case No. 2:23-cv-01399-BHS) – 15

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

its claims are based on the users' alleged use of Safety Star's marks. (*See also id.* at ¶¶ 29, 30.) *See, e.g.*, *Johnson v. Meta Platforms, Inc.*, No. 22-cv-05691-BLF, 2023 U.S. Dist. LEXIS 136027, *14 (N.D. Cal. Aug. 4, 2023) ("[a]llegations that third parties used [plaintiff's] trademark is insufficient to allege liability against Meta"); *Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 979-80, 982 (N.D. Cal. 2015) (no direct infringement claims where no allegation that Amazon and Google "themselves used the [plaintiff's] mark in commerce" as it was the third-party app developers who allegedly infringed plaintiff's mark). *See also Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 103 (2d Cir. 2010) (concluding that eBay's alleged knowledge about counterfeit Tiffany products offered on its auction website was "not a basis for a claim of direct trademark infringement against eBay").

Thus, all of Safety Star's claims necessarily fail because there was no commercial use of Safety Star's marks, whether by Aptibyte or website users. *See, e.g.*, *Free Kick Master*, 140 F. Supp. 3d at 979-80, 982 (dismissing direct trademark infringement and false designation of origin claims with respect to allegedly infringing apps on the Google and Amazon app stores because plaintiff "allege[d] no facts showing that Amazon or Google in fact 'used' the mark or that that 'use' created a likelihood of confusion"). Moreover, even if Safety Star had plausibly alleged commercial use by website users (which it has not), its first two claims for direct infringement against Aptibyte would fail as a result of its failure to demonstrate commercial use by Aptibyte.[4] *See, e.g.*, *Lopez v. Bonanza.com, Inc.*, No. 17 Civ. 8493 (LAP), 2019 U.S. Dist. LEXIS 170715, *19-21 (S.D.N.Y. Sept. 30, 2019) (dismissing plaintiff's claim for direct trademark infringement against online platforms, finding that it was the platforms' users who allegedly used plaintiff's marks in connection with the sale of goods, not the platforms).

## B.    Safety Star's Contributory Infringement Claim Fails as a Matter of Law

Even ignoring Safety Star's inability to plausibly allege the necessary element of

---

[4] As discussed below, even if Safety Star had made this showing as to website users, Safety Star's claims for contributory and vicarious trademark infringement would also fail on grounds independent of the commercial use issue.

DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)
(Case No. 2:23-cv-01399-BHS) – 16

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1  commercial use of any mark that it claims to own, Safety Star does not and cannot state a claim

2  for contributory trademark infringement against Aptibyte.

3      To state a contributory trademark infringement claim, Safety Star must, but cannot,

4  plausibly allege that Aptibyte: "(1) intentionally induced the primary infringer [the website user]

5  to infringe; or (2) continued to supply an infringing product to an infringer with knowledge that

6  the infringer is mislabeling the particular product supplied." *Perfect 10, Inc. v. Visa Int'l Serv.*

7  *Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007). Additionally, where the defendant provides a service,

8  the plaintiff must establish that the service provider "continued to supply its services to one who

9  it knew or had reason to know was engaging in trademark infringement" and "the court must

10  consider the extent of control exercised by the defendant over the third party's means of

11  infringement." *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 942 (9th

12  Cir. 2011) (internal quotation marks omitted); *see also Tiffany*, 600 F.3d at 103-06.

13      The Second Circuit's decision in *Tiffany* demonstrates the fatal flaws in Safety Star's

14  contributory infringement claim. The court held that eBay could not be liable for website users'

15  use of Tiffany's marks in connection with counterfeit goods sold on the auction website because:

16  > [f]or contributory trademark infringement liability to lie, a service provider must
17  > have more than a general knowledge or reason to know that its service is being
18  > used to sell counterfeit goods. Some contemporary knowledge of which particular
> listings are infringing or will infringe in the future is necessary.

19  600 F.3d at 107. Tiffany's generalized allegations regarding counterfeiting occurring on eBay

20  failed to give eBay the particularized knowledge required for a contributory infringement claim.

21  *Id.* at 109. And, although eBay did receive complaints about certain sellers selling counterfeits,

22  "those sellers' listings were removed and repeat offenders were suspended from the eBay site."

23  *Id.* Thus, the court concluded that "Tiffany failed to demonstrate that eBay was supplying its

24  service to individuals who it knew or had reason to know were selling counterfeit Tiffany

25  goods." *Id. See also Lopez*, 2019 U.S. Dist. LEXIS 170715 at *31-39 (rejecting contributory

26  trademark infringement claim against online platforms in part because the platforms did not have

27  the requisite knowledge of specific infringing conduct that they did not address).

The Ninth Circuit recently agreed with the Second Circuit, and other circuits, and adopted the same standard requiring knowledge of specific instances of infringement to state a contributory trademark infringement claim. *See Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1001-1002 (9th Cir. 2023) (discussing *Tiffany* and other cases and concluding that "willful blindness for contributory trademark liability requires the defendant to have specific knowledge of infringers or instances of infringement"), *cert. denied*, 218 L. Ed. 2d 32 (2024). In doing so, the court also looked to the contributory copyright infringement standard which requires "knowledge of specific infringers or instances of infringement." *Id.* at 1001. Noting that "because trademark infringement liability is more narrowly circumscribed than copyright infringement, the standard for contributory trademark infringement would be at least as demanding." *Id.* (internal quotation marks omitted).

Here, Safety Star does not and cannot satisfy the "narrowly circumscribed" standard for its contributory trademark infringement claim. Safety Star does not and cannot plausibly allege the necessary "contemporary knowledge of which particular [user content] are infringing or will infringe" that Aptibyte did not address in response to Safety Star's communications. *Spy Phone Labs LLC v. Google Inc.*, No. 15-cv-03756-PSG, 2016 U.S. Dist. LEXIS 36444, *9-10 (N.D. Cal. Mar. 21, 2016) ("Absent specific notice of trademark infringement, Google cannot be liable for contributory infringement merely for failing to remove infringing apps preemptively."); *Free Kick Master*, 140 F. Supp. 3d at 982-83 (rejecting contributory trademark infringement claim as plaintiff alleged no facts "showing that Amazon or Google intentionally induced the third-party developers to infringe plaintiff's mark, or that they knew that the third-party developers' apps/games were infringing plaintiff's mark but continued to allow the infringing apps/games to remain available"). Safety Star makes general allegations about allegedly "infringing bingo cards" being hosted on Aptibyte's website but does not (and cannot) allege that Aptibyte failed to address any specific instances of purportedly infringing cards in response to notices from Safety Star. *See Spy Phone*, 2016 U.S. Dist. LEXIS 36444 at *9 ("Notice of certain acts of infringements does not imply generalized knowledge of – and liability for – others.").

DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)
(Case No. 2:23-cv-01399-BHS) – 18

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

Safety Star makes a conclusory allegation that Aptibyte was "willfully blind" to the purported infringing use of the "B-SAFE Trademarks" on user-generated bingo cards (Dkt. 1 at ¶ 61), but offers no actual *facts* to support such an allegation. The law is clear, "willful blindness requires the defendant to be aware of specific instances of infringement or specific infringers" that it ignored. *Y.Y.G.M.*, 75 F.4th at 1002. "General knowledge of infringement on the defendant's platform – even of the plaintiff's trademarks – is not enough to show willful blindness." *Id.* Moreover, even if a defendant has that necessary specific knowledge, any duty that arises "only covers specific instances of infringement the defendant knows or has reason to know about." *Id.* at 1003. As discussed above, Safety Star cannot even establish that use of the term "bsafe" on user-generated bingo cards is infringing in every or even any instance, such that any purported contemporary knowledge of Aptibyte about the use of that term (which Safety Star has not alleged) equates with knowledge of trademark infringement.

As a result, Safety Star does not and cannot plausibly allege a claim for contributory trademark infringement against Aptibyte because it cannot make the necessary showing that specific infringing activity was occurring that Aptibyte had contemporary knowledge of and failed to address (*e.g.*, by removing the allegedly infringing user-generated content in response to specific notices from Safety Star). *See, e.g.*, *Atari Interactive, Inc. v. Redbubble, Inc.*, No. 21-17062, 2023 U.S. App. LEXIS 18805, *3 (9th Cir. July 24, 2023) (finding Redbubble's removal of "specific infringing listings" upon Atari's notification "was reasonable" and therefore affirming district court's conclusion that Redbubble was not willfully blind for purposes of contributory infringement claim); *Johnson*, 2023 U.S. Dist. LEXIS 136027 at *14-15 (dismissing contributory infringement claim where plaintiff failed to "allege any factual basis for her conclusory allegation regarding Meta's knowledge" about alleged third-party infringement).

### C.   Safety Star's Vicarious Infringement Claim Borders on Frivolous

Safety Star's vicarious trademark infringement claim similarly fails due to Safety Star's failure, and inability, to plausibly allege any facts to support that claim's necessary elements.

To state a vicarious trademark infringement claim, Safety Star must plausibly allege

DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)
(Case No. 2:23-cv-01399-BHS) – 19

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

"'that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product.'" *Perfect 10*, 494 F.3d at 807 (quoting *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992)). Courts have heeded the Supreme Court's instruction that "secondary liability for trademark infringement should . . . be more narrowly drawn than secondary liability for copyright infringement," and have therefore rejected copyright's more expansive standard for vicarious liability. *Hard Rock Cafe*, 955 F.2d at 1150. *See also Y.Y.G.M.*, 75 F.4th at 1001.

Here, Safety Star falls woefully short of this standard. Indeed, its only allegation as to vicarious trademark infringement simply regurgitates the standard: "Defendant and third-parties who design the infringing bingo cards on Defendant's website are in an apparent or actual partnership and/or exercise joint ownership or control over the infringing bingo cards generated by Defendant." (Dkt. 1 at ¶ 65.) But nowhere does Safety Star offer any plausible *factual* allegations as to any "apparent or actual partnership" or "joint ownership or control" between Aptibyte and the unidentified "third-parties" (presumably, the Bingo Baker website users). *See Starr*, 652 F.3d at 1216 ("[T]o be entitled to the presumption of truth, allegations . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable [defendant] to defend itself effectively."). Nor could Safety Star make any such allegations as the relationship between a website and its users simply cannot rise to the level of an "apparent or actual partnership and/or exercise [of] joint ownership or control." To conclude otherwise would expand the vicarious trademark infringement standard far beyond any meaningful limit in contravention of the Supreme Court's direction that secondary liability for trademark infringement is to be narrowly drawn. Additionally, Safety Star only references third parties "who *design* the infringing bingo cards." (Dkt. 1 at ¶ 65 (emphasis added).) But even assuming Safety Star had any rights in the "design" of bingo cards, which it does not allege, any such rights would more likely sound in copyright than trademark.

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

Safety Star's vicarious trademark infringement claim so lacks any plausible factual allegations as to flirt with, if not cross, the line between good faith and frivolous claims. *See Lopez*, 2019 U.S. Dist. LEXIS 170715 at *29-31, 45-46 (granting motions to dismiss and for judgment on the pleadings on vicarious trademark infringement claim where plaintiff's allegations were "nothing more than a restatement of the legal standard" and were "plainly insufficient to survive a motion to dismiss").

## IV.   After Three Failed Attempts to Plead Claims Against Aptibyte, Safety Star Should Not Be Afforded Another Opportunity to Amend its Complaint

Safety Star should not be permitted to file a fourth complaint. Despite three complaints and two lawsuits, Safety Star has not been able to plead a plausible claim against Aptibyte for the simple reason that it has no such claim.

Rule 15 generally embodies the principle that leave to amend pleadings should be freely granted. Nonetheless, that principle is not unlimited and it does not require the Court to permit endless or futile amendments. *See, e.g.*, *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990) (finding that denial of leave to amend was not an abuse of discretion "when any proposed amendment would be futile"); *Nat'l Prods. Inc. v. Innovative Intelligent Prods. LLC*, No. 2:20-cv-00428-DGE, 2022 U.S. Dist. LEXIS 33643, *8 (W.D. Wash. Feb. 25, 2022) ("When an amendment is futile, there [is] no need to prolong litigation by permitting further amendment.") (internal quotation marks omitted). Given that Safety Star has already filed three complaints against Aptibyte, the Court's "discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). Additionally, "where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend." *Langfitt*, 2021 U.S. Dist. LEXIS 165189 at *8.

Futility supports denying Safety Star the opportunity to file a fourth complaint. The fundamental flaws discussed herein are substantially identical to the flaws in Safety Star's first two complaints. But, despite having the benefit of Aptibyte's discussion of these flaws in its two

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

motions to dismiss the complaints in *Safety Star I*, Safety Star failed to remedy those defects in its third complaint in this second lawsuit. There is nothing to suggest that Safety Star will be able to offer any new allegations – consistent with Rule 11 – to remedy the flaws in its claims that it could not have raised in its prior three complaints.

Moreover, standing to pursue its claims is a fundamental element of Safety Star's case and is based on facts wholly and uniquely within Safety Star's possession. But Safety Star has failed – in three complaints – to sufficiently establish its standing to pursue its claims. Allowing Safety Star a fourth opportunity to plead a basic element of its claims would only "prolong litigation" to Aptibyte's detriment. *See, e.g.*, *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, No. CV-14-085-LRS, 2015 U.S. Dist. LEXIS 179509, *6-8 (E.D. Wash. Nov. 30, 2015) (dismissing with prejudice trademark infringement and counterfeiting claims in first amended complaint due to lack of standing).

As discussed above, Safety Star also cannot establish commercial use of any mark it claims to own by Aptibyte or the users of Aptibyte's website, and therefore cannot allege any plausible trademark-based claim against Aptibyte. No amendment can remedy that fatal flaw in Safety Star's claims, all of which are grounded in alleged trademark infringement. *See, e.g.*, *Lopez*, 2019 U.S. Dist. LEXIS 170715 at *19-21, 61 (dismissing first amended complaint with prejudice where court concluded in part that plaintiff failed to allege online platform defendants' commercial use of plaintiff's marks); *Micro/sys, Inc. v. DRS Techs., Inc.*, No. CV 14-3441 DMG (AJWx), 2015 U.S. Dist. LEXIS 193891, *13-18 (C.D. Cal. Feb. 13, 2015) (dismissing Lanham Act claims without leave to amend where plaintiff "failed to plead a commercial use . . . as a matter of law" and amendment would be futile).

As a result, any request by Safety Star to file a fourth complaint should be denied.

## CONCLUSION

For any or all of the foregoing reasons, Safety Star's claims against Aptibyte should finally be dismissed with prejudice and judgment should be entered in Aptibyte's favor.

//

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1  Dated this 28th day of March, 2024.          Respectfully submitted,

2                                               FOCAL PLLC

3                                          By:  *s/ Stacia N. Lay*
                                                *s/ Randall H. Moeller*
4                                               Stacia N. Lay, WSBA #30594
                                                Randall H. Moeller, WSBA #21094
5                                               900 1st Avenue S., Suite 201
                                                Seattle, Washington 98134
6                                               Tel: (206) 529-4827
                                                Fax: (206) 260-3966
7                                               Email: stacia@focallaw.com
                                                Email: randall@focallaw.com
8
                                                Attorneys for Defendant Aptibyte, LLC
9

10                      **WORD LIMIT CERTIFICATION**

11          I certify that this memorandum contains 8,332 words, in compliance with the Local Civil

12  Rules.

13                                         By:  *s/ Stacia N. Lay*
                                                Stacia N. Lay, WSBA #30594
14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)
(Case No. 2:23-cv-01399-BHS) – 23

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966