1

2   Hon. Benjamin H. Settle

3

4

5

6

7

8

9

10

11

12   UNITED STATES DISTRICT COURT

13   WESTERN DISTRICT OF WASHINGTON

   AT TACOMA

14

15

16

17   SAFETY STAR, LLC, a Missouri limited     No. 2:23-cv-01399-BHS
   liability company,

18                          Plaintiff,       PLAINTIFF SAFETY STAR, LLC'S
                                           RESPONSE TO DEFENDANT
19   vs.                                    APTIBYTE, LLC'S MOTION

20                                          FOR JUDGMENT ON THE
21   APTIBYTE, LLC, a Washington limited      PLEADINGS PURSUANT TO FED.
   liability company,                      R. CIV. P. 12(c)

22                          Defendant.       NOTE ON MOTION CALENDAR:

23

24                                          April 26, 2024

25

26

27   PLAINTIFF'S RESPONSE TO
   DEFENDANT'S MOTION FOR
   JUDGMENT ON THE PLEADINGS

   2:23-cv-01399-BHS –  1



TBILLICK
LAW
600 1st Ave
Seattle, WA 98104
206.494.0020
tim@tbillicklaw.com

## TABLE OF CONTENTS

*INTRODUCTION* ........................................................................................................5

*RELEVANT FACTS* ..................................................................................................5

*I.    Plaintiff's Longstanding Use of the Marks* .......................................................5

*II.   Plaintiff's Trademark Applications for B-SAFE and  BSAFE BINGO* .......................7

*III.  Defendant's Use of the Marks and Resultant Harm* .........................................7

*IV.   The Irregular Assignment Documents* .............................................................9

*V.    This Court's Award of Fees* ..........................................................................9

*ARGUMENT* ..........................................................................................................10

*I.    Legal Standards* ...........................................................................................10

  **A.   Leave to Amend** ........................................................................................10

  **B.   Likelihood of Confusion** .............................................................................10

*II.   Section 43(a) of the Lanham Act Permits Licensees to Bring Suit* ....................11

  **A.   Safety Star Has Protectable Interests in the Common Law Marks** ................11

  **B.   Plaintiff Earned Common Law Rights Via Implied  and  Oral Licenses** ...........13

  **C.   The Complaint Pleads Direct Infringement Under the Lanham Act § 43(a)** ......14
    1.   Infringing Use of a Trademark Need Not Strictly Be "Source-Identifying" ......15
    2.   Defendant Has Directly Retained Infringing Bingo Cards on Its Site And Has Utilized Meta tags ..............................................................................................16

  **D.   The Complaint Pleads Contributory Infringement under the Lanham Act § 43(a)** ................................................................................................................17

*III.   Leave to Amend Should Be Granted Freely Because the Errors in the Complaint Are Correctable* ..................................................................................................18

  **A.   The "BSAFE Marks" Can Be Easily Re-Labeled to Improve Clarity** ..................18

  **B.   Safety Star Plans to Remove the Claim of Vicarious Liability** ..........................19

  **C.   Plaintiff Can Demonstrate Standing Under Section 32 of the Trademark Act Because Safety Star Has an Exclusive License and Property Interest in the Marks** .19

  **D.   Safety Star Can Correct the Irregularities of the Assignment Documents** ........20

*CONCLUSION* ......................................................................................................21

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
JUDGMENT ON THE
PLEADINGS

TBILLICK
LAW
600 1ˢᵗ Ave
Seattle, WA 98104
206.494.0020
tim@tbillicklaw.com

2:23-cv-01399-BHS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

### TABLE OF AUTHORITIES

*Cases*

*Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007) ............................................12

*Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1062 (9th Cir. 1999) ...................16

*Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1086 (9th Cir. 2014) ...................................12

*De Forest Radio Tel. Co. v. United States*, 273 U.S. 236, 241 (1927)........................................................15

*Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1130 (9th Cir. 2006) ........................14

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010) .........12

*Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 780 (Fed. Cir. 1996)....................................21

*Glob. Merch. Servs., Ltd. v. Sunfrog, LLC*, No. 17 CIV. 10154 (AKH), 2018 U.S. Dist. LEXIS 135593, 2018 WL 11223365, at *1 (S.D.N.Y. Aug. 9, 2018)....................................................................................13

*Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1148 (7th Cir. 1992) ........................19

*Iconix Brand Grp., Inc. v. Bongo Apparel, Inc.*, 2008 U.S. Dist. LEXIS 51791, at *17-20 (S.D.N.Y. July 8, 2008)13

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ..................................................7

*Lodestar Anstalt v. Bacardi & Co.*, 31 F.4th 1228, 1245, 1251-52 (9th Cir. 2022) ...................................16

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.* 658 F.3d 936, 942 (9th Cir. 2011) .............................18

*McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004) .......................................................12

*Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1144-45 (9th Cir. 2011) ...............12, 16, 17

*Nissan Motor Co. v. Nissan Computer Co.*, 378 F.3d 1002, 1018 (9th Cir. 2004).....................................16

*Nutritech Sols., Ltd. v. Matrix Nutrition*, LLC, No. CV 06-461-PHX-MHM, 2007 U.S. Dist. LEXIS 35186, at *17-18 (D. Ariz. May 3, 2007)...........................................................................................................22

*Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924)................................................................................16

*Quabaug Rubber Co. v. Fabiano Shoe* Co., 567 F.2d 154, 160 (1st Cir. 1977).........................................13

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
JUDGMENT ON THE
PLEADINGS

2:23-cv-01399-BHS

3



TBILLICK
LAW
600 1ˢᵗ Ave
Seattle, WA 98104
206.494.0020
tim@tbillicklaw.com

*Shumate v. Dugan*, 934 S.W.2d 589, 592 (Mo. App. S.D. 1996) ...................................................14

*Smith v. Conair Corp.*, No. 18-CV-3317 (CM), 2018 U.S. Dist. LEXIS 86026, *6 (S.D.N.Y. May 18, 2018) .......13

*Spy Optic, Inc. v. Alibaba.com, Inc.*, 163 F. Supp. 3d 755, 765 (C.D. Cal. 2015).............................................18, 19

*Suburban Leisure Ctr. v. AMF Bowling Prods.*, No. 4:06CV188-DJS, 2008 U.S. Dist. LEXIS 139101, at *8 n.2 (E.D. Mo. May 12, 2008) ...............................................................14

*Upper Deck Co. v. Panini Am., Inc.*, 469 F. Supp. 3d 963, 977 (S.D. Cal. 2020) ....................................21

*Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1003 (9th Cir. 2023) ...................................................19

## Statutes

15 U.S.C. § 1114 ....................................................................................10, 12, 13, 20, 22

15 U.S.C. § 1052(e)(1) ...........................................................................................7, 8, 12

37 C.F.R. §2.41(a) ....................................................................................................8, 9, 10

15 U.S.C. § 1125(a) .............................................................................12, 13, 15, 17, 19, 22

## Other Authorities

GILSON ON TRADEMARKS § 6.02 ..............................................................................13

J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION §§ 23:11.50, 25:70:25 (4th ed. 2010) ...................................................15

## Rules

FED. R. CIV. P. 12(C) ................................................................................................1

FED. R. CIV. P. 15(A)(2) ..........................................................................................11

FED. R. EVID. 201(B) ..............................................................................................6

RULE 12(B)(1) ..........................................................................................................13

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
JUDGMENT ON THE
PLEADINGS

2:23-cv-01399-BHS

4

TBILLICK
LAW
600 1st Ave
Seattle, WA 98104
206.494.0020
tim@tbillicklaw.com

**INTRODUCTION**

Safety Star, LLC ("Safety Star") has already been sanctioned for its actions leading up to the filing of the operative complaint (Dkt. No. 1, "Complaint"). (See Order on Motion for Fees, Dkt. No. 21.) Its owner and manager, Mr. Albert "Beau" Culbertson reasonably relied on the opinion of an attorney the company has used for many years. Unfortunately, prior counsel clearly did not have experience in trademark litigation. Though true that Safety Star is ultimately responsible for actions done by its agents, it should not be faulted for relying on its counsel who presented himself on being knowledgeable in the nuances of trademark litigation. Moreover, Safety Star recently made complete payment of the attorney's fee award to Defendant Aptibyte, LLC ("Aptibyte"), and it should not be punished *twice* for the negligence of prior counsel. False starts notwithstanding, Safety Star has meritorious claims. If this Court deems the current Complaint deficient, Safety Star respectfully requests leave to amend or refile as needed.

**RELEVANT FACTS**

I.    **PLAINTIFF'S LONGSTANDING USE OF THE MARKS**

To further his passion for workplace safety, Mr. Culbertson began soliciting Missouri businesses to purchase B-SAFE bingo cards in March 1992. (See Mr. Culbertson's Declaration ("Culbertson"), attached herewith, at ¶ 2.)) Culbertson

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
JUDGMENT ON THE
PLEADINGS

2:23-cv-01399-BHS

5

TBILLICK
LAW
600 1ˢᵗ Ave
Seattle, WA 98104
206.494.0020
tim@tbillicklaw.com

ordered thousands of B-SAFE bingo cards to be printed on January 31, 1992 to sell his workplace safety bingo game cards to as many companies as possible. (Culbertson ¶ 3 and Ex. A [Receipt of Print Order].) Throughout 1992, Mr. Culbertson sent out brochures to companies advertising his safety bingo game. (Id. ¶ 4 and Ex. B.) Mr. Culbertson sold the B-SAFE Bingo cards under the d/b/a "Safety Concepts," from 1992 to 2002. (Id ¶ 5 and Ex. C [Missouri SOS Records Summary][1]).

Mr. Culbertson has always been the one and only owner of Safety Star, LLC since the company's incorporation on February 28, 2002. (See, Culbertson ¶ 6 and Ex. D [Safety Star Articles of Incorporation].) Safety Star's website can be found at https://safetystar.com/ where it advertises its Safety Bingo kits, along with other workplace safety materials. (Culbertson ¶ 7 and Ex. E.) Safety Star, and Safety Star

---

[1] Plaintiff respectfully makes a request for judicial notice under Fed. R. Evid. 201(b) of the Missouri corporate filings Safety Concepts and Safety Star, LLC, available online at the Missouri Secretary of State's website, https://www.sos.mo.gov/. *See, e.g., Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 999 (9th Cir. 2018) ("[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.").

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
JUDGMENT ON THE
PLEADINGS

6



TBILLICK
LAW
600 1ˢᵗ Ave
Seattle, WA 98104
206.494.0020
tim@tbillicklaw.com

2:23-cv-01399-BHS

alone, has been using both the B-SAFE and BSAFE BINGO marks under permission from Mr. Culbertson since February 28, 2002. (Id. ¶¶ 6-8.)

## II.   PLAINTIFF'S TRADEMARK APPLICATIONS FOR B-SAFE AND BSAFE BINGO

Mr. Culbertson filed for B-SAFE on or about January 8, 2005. (Complaint ¶ 16; Culbertson ¶ 9 and Ex. F [Summary of B-SAFE trademark application documents].) Notably, the trademark examiner in this application did *not* issue a rejection on the basis that the application was merely descriptive pursuant to 15 U.S.C. § 1052(e)(1) for "[b]ingo-type game cards for use in promoting safety." Thus, B-SAFE at least by the time of filing, had acquired distinctiveness in the marketplace under 37 C.F.R. §2.41(a). B-SAFE registered on December 20, 2005. (Id.)

Mr. Culbertson filed for BSAFE BINGO on June 4, 2018. (Culbertson ¶ 10 and Ex. G [Application for BSAFE BINGO and TM summary].) Likewise, the trademark examiner in this application did *not* issue a rejection on the basis that the application was merely descriptive pursuant to 15 U.S.C. § 1052(e)(1) for "[b]oard games designed to promote employee safety awareness." BSAFE BINGO therefore had also acquired distinctiveness in the marketplace at the time of filing under 37 C.F.R. §2.41(a). BSAFE BINGO registered on January 22, 2019. (Id.)

## III.   DEFENDANT'S USE OF THE MARKS AND RESULTANT HARM

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
JUDGMENT ON THE
PLEADINGS

2:23-cv-01399-BHS

7



TBILLICK
LAW
600 1ˢᵗ Ave
Seattle, WA 98104
206.494.0020
tim@tbillicklaw.com

The Complaint alleges "Defendant is engaged in the creation and distribution of bingo cards bearing [BSAFE BINGO and B-SAFE] to consumers in this district." (Complaint ¶ 22.) The Complaint further alleges that Defendant offers bingo cards bearing both marks, and those confusingly similar to them, since at least 2017. (Id. ¶¶ 25-27; see also Complaint Ex. 6, Dkt. No. 1-1 pp. 11-12; Ex. 7, Dkt. No. 1-1 pp. 20-21; Exs. 8 – 10 pp. 24 – 31.) The Complaint also alleges that the Defendant's cards are highly similar to Plaintiff's cards; and that Defendant directly hosts the infringing bingo cards generated by users. (Complaint ¶¶ 28-30.) Moreover, the Complaint alleges upon information and belief, Defendant has "tagged," or embedded, the infringing term B-SAFE for search-engine optimization purposes. (Id. ¶ 35.)

Defendant did not stop its actions, despite being notified on or about March 23, 2020 of the alleged infringement. (Id. ¶ 31.) As a result of Defendant's online retention of the infringing bingo cards on its website, Aptibyte's BSAFE bingo cards have begun to appear alongside Safety Star's cards. (Complaint ¶¶ 33-35, *see also* Exs. 11 and 12, Dkt. No. 1-1 pp. 32-33.) The Complaint further alleges that Defendant charges a subscription for monthly access to its platform and its repository of infringing bingo cards. (Complaint ¶¶ 38-39.) As a result of Defendant's accused actions, Plaintiff's profits and reputation have been irreparably harmed. (See, e.g., Complaint ¶¶ 40, 41, 42, 45, 47, 51, 52, 55, 62, 63.)

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
JUDGMENT ON THE
PLEADINGS

8



TBILLICK
LAW
600 1ˢᵗ Ave
Seattle, WA 98104
206.494.0020
tim@tbillicklaw.com

2:23-cv-01399-BHS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

### IV.   THE IRREGULAR ASSIGNMENT DOCUMENTS

A *nunc pro tunc* ("now for then") assignment is a retroactive assignment document that is used to reduce an assignment to writing now which has previously happened. Plaintiff Defendant correctly points out that the two *nunc-pro-tunc* assignments of the trademarks prior counsel filed in this case have "significant issues." (Motion, Dkt. No. 22, ECF pp. 8-9.)  Mr. Culbertson has no idea why the effective date of January 22, 2019 was chosen for either of the assignments. (Culbertson ¶ 11.) The best guess we have is that this date aligns with the date of registration for BSAFE BINGO.

### V.   THIS COURT'S AWARD OF FEES

Mr. Culbertson is not a trademark attorney, nor does he have legal training. (Culbertson ¶ 11.) Prior counsel served Mr. Culbertson's business endeavors for roughly six years, and so Mr. Culbertson trusted him to handle this trademark dispute properly, including the requisite "housekeeping" issues of assignment. (Id.) However, many mistakes were made by prior counsel in *Safety Star I, Safety Star II,* and in the U.S.P.T.O. Plaintiff's prior counsel's work was far from exemplar.

As a result of Safety Star's prior counsel's actions, this Court awarded attorney's fees to Defendant on or about March 18, 2024. (Dkt. No. 21.) Mr. Culbertson has already paid that award. (Culbertson ¶¶ 12.) As such, Defendant has already won its arguments as to why all of the actions leading up to March 18, 2024 were punishable. At this point

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
JUDGMENT ON THE
PLEADINGS

2:23-cv-01399-BHS

9



TBILLICK
LAW
600 1ˢᵗ Ave
Seattle, WA 98104
206.494.0020
tim@tbillicklaw.com

in the case, the inquiry should ***not*** be whether Safety Star should be punished again for the actions of its prior counsel.  Rather, the correct inquiry should be whether Safety Star should be granted leave to amend the current Complaint to fix its deficiencies left in the wake of prior counsel's negligent acts. Because Safety Star has strong arguments of direct and contributory infringement; and can correct the irregularities in the chain of title of the trademark registrations, it should be granted leave to amend its claims under § 32 of the Lanham Act.

## ARGUMENT

### I.    LEGAL STANDARDS

#### A.  Leave to Amend

"A complaint should not be dismissed without leave to amend unless amendment would be futile." *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1086 (9th Cir. 2014) (citing *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004)). The court should "freely give leave" to amend a complaint when justice so requires. Fed. R. Civ. P. 15(a)(2).

#### B.  Likelihood of Confusion

To prevail on a claim of direct trademark infringement, a party must establish that "it has a valid, protectable mark" and that the other party's 'rise of the mark is likely to cause consumer confusion." *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966,

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
JUDGMENT ON THE
PLEADINGS

2:23-cv-01399-BHS

10



TBILLICK
LAW
600 1ˢᵗ Ave
Seattle, WA 98104
206.494.0020
tim@tbillicklaw.com

969 (9th Cir. 2007). Courts consider the following factors to determine the likelihood of causing consumer confusion: (1) strength of the mark; (2) proximity of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) intent; and (8) likelihood of expansion. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011). These factors are "illustrative rather than exhaustive, and best understood as simply providing helpful guideposts." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010).

II.   SECTION 43(A) OF THE LANHAM ACT PERMITS LICENSEES TO BRING SUIT

A.  Safety Star Has Protectable Interests in the Common Law Marks

Unlike Section 32 of the Lanham Act, Section 43(a) does not limit infringement actions to "registrants" or require a federal trademark registration.  *See Glob. Merch. Servs., Ltd. v. Sunfrog, LLC*, No. 17 CIV. 10154 (AKH), 2018 U.S. Dist. LEXIS 135593, 2018 WL 11223365, at *1 (S.D.N.Y. Aug. 9, 2018) (citing id.) (explaining that Section 43(a) permits suits "'by any person who believes that he or she is or is likely to be damaged' by the defendant's actions"); *see also Quabaug Rubber Co. v. Fabiano Shoe* Co., 567 F.2d 154, 160 (1st Cir. 1977) ("[O]ne who may suffer adverse consequences from a violation of [Section 43] has standing to sue regardless of whether he is the registrant of a

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
JUDGMENT ON THE
PLEADINGS
2:23-cv-01399-BHS

11

TBILLICK
LAW
600 1ˢᵗ Ave
Seattle, WA 98104
206.494.0020
tim@tbillicklaw.com

trademark"). To establish standing under Section 43(a), a plaintiff must "demonstrate a 'reasonable interest to be protected' against the advertiser's false or misleading claims, and a 'reasonable basis' for believing that this interest is likely to be damaged by the false or misleading advertising." *Havana Club Holding, S.A. v. Galleon S.A.*, 203 F.3d 116, 130 (2d Cir. 2000) (*citations omitted*); *Smith v. Conair Corp.*, No. 18-CV-3317 (CM), 2018 U.S. Dist. LEXIS 86026, *6 (S.D.N.Y. May 18, 2018); *Iconix Brand Grp., Inc. v. Bongo Apparel, Inc.*, 2008 U.S. Dist. LEXIS 51791, at *17-20 (S.D.N.Y. July 8, 2008) (dismissing parent company's Section 32 claims for lack of standing because it was neither the registrant nor owner of the mark, but upholding Section 43 claims due to its general commercial interest and pecuniary interest in the mark).

Here, Plaintiff alleged its economic interest in protecting both marks and alleged the economic harm resulting from Defendant's actions. (See, e.g., Complaint ¶¶ 10, 11, 13, (economic interest); ¶ 40, 41, 42, 44, 45, 47, 51, 52, 55, 56, 62 (harm).) Defendant's Motion to Dismiss Plaintiff's Lanham Act § 43(a) claim (Count II) should therefore be denied. *See, e.g., Thursday, supra,* at *9 (denying motion to dismiss under Rule 12(b)(1) because plaintiff alleged that "DNVB's continued sales of goods bearing the infringing marks will cause damage to these interests and is likely to cause confusion as to the origin of their goods, and to cause them to mistakenly believe that Defendant's goods are Plaintiff's goods.").

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
JUDGMENT ON THE
PLEADINGS

2:23-cv-01399-BHS

12


TBILLICK
LAW
600 1ˢᵗ Ave
Seattle, WA 98104
206.494.0020
tim@tbillicklaw.com

**B.  Plaintiff Earned Common Law Rights Via Implied and Oral Licenses**

"Licenses are contracts 'governed by ordinary principles of state contract law.'"
*Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1130 (9th Cir. 2006). In
Missouri, where Plaintiff is based, "[a]n oral contract is valid and enforceable,
irrespective of the statute of frauds when there is proof of partial performance in
furtherance of the agreement." *Shumate v. Dugan*, 934 S.W.2d 589, 592 (Mo. App. S.D.
1996). Therefore, "a license to use a trademark can be orally granted." *Suburban Leisure
Ctr. v. AMF Bowling Prods.*, No. 4:06CV188-DJS, 2008 U.S. Dist. LEXIS 139101, at *8 n.2
(E.D. Mo. May 12, 2008). Similarly, as the Supreme Court declared long ago in the
patent context: "Any language used by the owner of the patent or any conduct on his
part exhibited to another from which that other may properly infer that the owner
consents to his use of the patent in making or using it, or selling it, upon which the
other acts, constitutes a license…"*De Forest Radio Tel. Co. v. United States*, 273 U.S. 236,
241 (1927); *see also* 2 GILSON ON TRADEMARKS § 6.02 (collecting cases and citing *De
Forest*).

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
JUDGMENT ON THE
PLEADINGS

2:23-cv-01399-BHS

13

TBILLICK
LAW
600 1st Ave
Seattle, WA 98104
206.494.0020
tim@tbillicklaw.com

The Complaint alleges that Safety Star was founded by Albert Culbertson and since its founding,[2] Plaintiff "has sold a variety of safety awareness programs and products to consumers throughout the United States and across the world." (Complaint, ¶ 8.) The Complaint further alleges:

> Plaintiff has manufactured, marketed, and sold a proprietary safety bingo program under the trademarks B-SAFE and BSAFE BINGO (the "B-SAFE Bingo Program") since January 1992, long before Defendant's acts described herein." Since at least January 1992, Plaintiff has continuously manufactured, marketed, and sold the B-SAFE Bingo Program in commerce throughout the United States.

(Id. ¶¶ 9-10.) As shown in the Trademark Office's records, Mr. Culbertson was the original applicant. (See, e.g., Culbertson ¶¶ 9-10 and Exs. F and G.)

These allegations support the fact that although Mr. Culbertson was the applicant and initial owner of the registrations, Safety Star nonetheless had a license to use both the B-SAFE and BSAFE BINGO common law marks.

### C.  The Complaint Pleads Direct Infringement Under the Lanham Act § 43(a)

Defendant correctly notes Safety Star must allege that Aptibyte used the marks in commerce in connection with goods or services in a manner that is likely to cause confusion. *Lodestar Anstalt v. Bacardi & Co.*, 31 F.4th 1228, 1245, 1251-52 (9th Cir. 2022),

---

[2] The Complaint incorrectly stated the founding date of Safety Star was 1989.

TBILLICK
LAW
600 1st Ave
Seattle, WA 98104
206.494.0020
tim@tbillicklaw.com

*cert. denied*, 143 S. Ct. 428 (2022). Defendant does not seem to refute that a likelihood of confusion exists between the marks, rather, Defendant questions whether Plaintiff has alleged infringing commercial activity.  (Dkt. No. 22 at ECF pp. 18-19.)

### 1.  *Infringing Use of a Trademark Need Not Strictly Be "Source-Identifying"*

Defendant relies on a hundred-year-old case to support its argument that that ***only*** "source-identifying" use on the internet constitutes trademark infringement. (See Dkt. No. 22 at ECF p. 19 (citing *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924).) This suggestion is incorrect because "initial interest confusion" — as opposed to traditional "source confusion" is also actionable under §43(a). *Nissan Motor Co. v. Nissan Computer Co.*, 378 F.3d 1002, 1018 (9th Cir. 2004) (describing initial interest confusion). Moreover, the mere use of a trademark as a search engine keyword that triggers the display of a competitor's advertisement is "use in commerce" under the Lanham Act. *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1144-45 (9th Cir. 2011) (citations omitted); *Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1062 (9th Cir. 1999)("Nevertheless, West Coast's use of 'moviebuff.com' in metatags will still result in what is known as initial interest confusion"); *see also* J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition §§ 23:11.50, 25:70:25 (4th ed. 2010) (suggesting that cases taking a more restrictive view of "use" in this context are based on an erroneous interpretation of the Lanham Act)). Thus, Defendant's restrictive view of "use in commerce" misaligns with the Ninth Circuit's view that trademark

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
JUDGMENT ON THE
PLEADINGS

2:23-cv-01399-BHS



TBILLICK
LAW
600 1ˢᵗ Ave
Seattle, WA 98104
206.494.0020
tim@tbillicklaw.com

infringement can occur in a number of commercial settings that do not mis-identify a source.

### 2. *Defendant Has Directly Retained Infringing Bingo Cards on Its Site And Has Utilized Meta tags*

As noted above, the Complaint alleges that Defendant **directly** bingo cards bearing both marks, and those confusingly similar to them, since at least 2017. (Id. ¶¶ 25-30; see also Complaint Ex. 6, Dkt. No. 1-1 pp. 11-12; Ex. 7, Dkt. No. 1-1 pp. 20-21; Exs. 8 – 10 pp. 24 – 31.) Yes, users of Bingobaker.com can make bingo cards in a variety of ways. But the Complaint's exhibits show specific examples of Defendant's usage of marks confusingly similar to B-SAFE and BSAFE BINGO directly on its site. (Dkt. No. 1-1 ECF pp. 11-12, 20, 24-31.)

Also, when a trademark is used as a search keyword, the "likelihood of confusion will ultimately turn on what the consumer saw on the screen and reasonably believed, given the context." *Network Automation, Inc.*, 638 F.3d at 1153. As noted above, the Complaint alleges upon information and belief, Defendant has **directly** "tagged," or embedded, the infringing term B-SAFE for search-engine optimization purposes. (Complaint ¶ 35.) Search results showing the specific examples of such meta-tagging was also included in the Complaint. (Dkt. No. 1-1 ECF pp. 32-33.) Indeed, such

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
JUDGMENT ON THE
PLEADINGS

16



TBILLICK
LAW
600 1ˢᵗ Ave
Seattle, WA 98104
206.494.0020
tim@tbillicklaw.com

2:23-cv-01399-BHS

infringing meta-tagging continues to this day, as well as direct retention of infringing

bingo cards. (Culbertson ¶ 13 and Ex. H.)

Because the Complaint shows infringing uses of confusingly similar marks on

the website, and alleges meta-tagging, Plaintiff has sufficiently plead direct

infringement. *See Spy Optic, Inc. v. Alibaba.com, Inc.*, 163 F. Supp. 3d 755, 765 (C.D. Cal.

2015) (holding Plaintiff plead direct infringement by citing defendant's use of meta-tags

on its own website).

### D.  The Complaint Pleads Contributory Infringement under the Lanham Act § 43(a)

"To state a claim for contributory trademark infringement under the Lanham Act

against a service provider, a plaintiff must sufficiently plead that defendant: (1)

continued to supply its services to one who it knew or had reason to know was

engaging in trademark infringement, and (2) had direct control and monitoring of the

instrumentality used by a third party to infringe." *Louis Vuitton Malletier, S.A. v. Akanoc

Sols., Inc.* 658 F.3d 936, 942 (9th Cir. 2011). The first element is satisfied when the entity

either (a) suspects wrongdoing and deliberately failed to investigate, or (b) the entity

had received notice about the infringement but failed to take steps to remedy the

situation. *See Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1148

(7th Cir. 1992); *see also Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1003 (9th Cir.



TBILLICK
LAW
600 1st Ave
Seattle, WA 98104
206.494.0020
tim@tbillicklaw.com

2023)("The duty to stop (or root out) infringement does not kick in, however, until the defendant has that specific knowledge."). In *Spy Optic, supra,* the court held that allowing a company to continue to use Alibaba's e-commerce platform even after Alibaba received notice that the company was infringing on Spy Optic's marks, was sufficient to establish that Alibaba knew or had reason to know of the infringement. *Spy Optic,* 163 F.Supp.3d at 766 (denying motion to dismiss contributory infringement claim).

Here, the Complaint alleges that Plaintiff sent Defendant a cease-and-desist letter on March 23, 2020 – outlining the specific instances of infringement, which included copies of the accused bingo cards and trademark registrations as appendices. (Complaint ¶ 31; see also Ex. 7, Dkt. No. 1-1 ECF pp. 13-23.) Thus, at least from March 23, 2020 onward, Defendant has been on actual knowledge of specific instances of infringement. Defendant's motion to dismiss claims of contributory trademark infringement should therefore be denied. *See, e.g., Spy Optic,* 163 F.Supp.3d at 768 (denying motion to dismiss § 43(a) claims based on analysis of

**III.   LEAVE TO AMEND SHOULD BE GRANTED FREELY BECAUSE THE ERRORS IN THE COMPLAINT ARE CORRECTABLE**

**A.  The "BSAFE Marks" Can Be Easily Re-Labeled to Improve Clarity**

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

2:23-cv-01399-BHS

18



TBILLICK
LAW
600 1st Ave
Seattle, WA 98104
206.494.0020
tim@tbillicklaw.com

Though not a model of clarity, Safety Star referring to both of its Marks interchangeably throughout the Complaint was a harmless attempt at brevity that can be corrected. Indeed, before getting the benefit of discovery, Safety Star's prior counsel reasonably alleged that Defendant's wrongful actions applied equally to both registered marks. If permitted to amend, Safety Star

### B.  Safety Star Plans to Remove the Claim of Vicarious Liability

Taking advise from prior counsel, Safety Star approved claims of vicarious liability to be brought in this case. However, based on currently known facts, Safety Star will not pursue those claims.

### C.  Plaintiff Can Demonstrate Standing Under Section 32 of the Trademark Act Because Safety Star Has an Exclusive License and Property Interest in the Marks

The Ninth Circuit has not addressed whether an exclusive licensee has standing to sue for trademark infringement under § 1114; "yet the prevailing approach by district courts in this Circuit has been to hold 'that standing may exist where the licensing agreement *both* grants an exclusive license *and* grants to the exclusive licensee a property interest in the trademark, or rights that amount to those of an assignee.'" *Upper Deck Co. v. Panini Am., Inc.*, 469 F. Supp. 3d 963, 977 (S.D. Cal. 2020) (emphases added) (collecting cases). To be clear, the *Upper Deck* court noted that in such a case, "a complaint must allege that a licensing agreement gave the licensee the exclusive use of

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
JUDGMENT ON THE
PLEADINGS

19

2:23-cv-01399-BHS

TBILLICK
LAW
600 1ˢᵗ Ave
Seattle, WA 98104
206.494.0020
tim@tbillicklaw.com

the trademark and a property interest in the trademark or rights that are akin to those of

an assignee." *Id.* at 978.  Here, the Complaint indicates Mr. Culbertson did not permit

anyone besides Plaintiff to use or otherwise commercialize the asserted marks B-SAFE

and BSAFE BINGO. (Complaint ¶¶ 14, 18.) The Complaint also alleged Plaintiff's

property interest in both marks. (Complaint ¶¶ 10, 11, 13.) However, the Complaint

does not expressly state that that a license did in fact occur. If permitted to amend, this

alternative theory for standing that closely aligns with the facts will be more clearly

outlined.

### D.  Safety Star Can Correct the Irregularities of the Assignment Documents

Plaintiff agrees that, even though a *nunc-pro-tunc* assignment can confer

***trademark rights*** retroactively, it cannot confer ***standing*** retroactively after a complaint

is filed. *See Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 780 (Fed. Cir. 1996).

Mr. Culbertson ***should have*** been counseled to execute a *nunc-pro-tunc* assignment with

an effective date of, for example, February 28, 2002: the incorporation date of Safety

Star. Instead, he relied on bad advice from counsel without fully understanding the

legal implications. (Culbertson ¶ 11.) If Plaintiff is permitted to refile its claims for

infringement on its registered trademarks, these errors (and others) will be corrected

before filing.



TBILLICK
LAW
600 1ˢᵗ Ave
Seattle, WA 98104
206.494.0020
tim@tbillicklaw.com

If permitted to amend or refile, Safety Star will demonstrate its longstanding use of both B-SAFE and BSAFE BINGO under an implied exclusive license from Mr. Culbertson that was formalized via nunc-pro-tunc assignment. District courts in this Circuit have arrived at the same conclusion when permitting amendment. *See, e.g., Nutritech Sols., Ltd. v. Matrix Nutrition,* LLC, No. CV 06-461-PHX-MHM, 2007 U.S. Dist. LEXIS 35186, at *17-18 (D. Ariz. May 3, 2007) ("Allowing such amendment [of factual details regarding the assignment] would not prejudice the Defendants…") Like the plaintiff in *Nutritech* who made inadvertent errors in the complaint, and has been directly harmed by the infringement, Plaintiff also "argues for leave to amend in an effort to adjudicate the claims on the merits rather than summarily disposing of them on a technicality." *Id.*

**CONCLUSION**

Though far from a model of clarity, Plaintiff's Lanham Act § 43(a) claims on both trademarks can proceed as filed because Safety Star has plead property interest in the marks and resulting damage from Defendant's acts of direct and contributory

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
JUDGMENT ON THE
PLEADINGS

2:23-cv-01399-BHS



TBILLICK
LAW
600 1ˢᵗ Ave
Seattle, WA 98104
206.494.0020
tim@tbillicklaw.com

infringement.[3] The Lanham Act § 32 claims may be properly dismissed because they currently suffer from errors in the *nunc-pro-tunc* assignments. However, if Plaintiff is permitted to refile or amend the § 32 claims, those assignments will be corrected to reflect the actual longstanding relationship between Mr. Culbertson and Safety Star. Accordingly, Safety Star respectfully requests denial of Defendant's Motion with respect to the § 43(a) claims and leave to amend or refile the § 32 claims.

Dated this 22nd day of April, 2024.

Respectfully submitted,

TBILLICK LAW PLLC

By_____

Tim J. Billick, WSBA No. 46690
tim@tbillicklaw.com
600 First Ave
Seattle, WA  98101
206.494.0020

_____

[3] Plaintiff will not pursue claims of vicarious trademark liability based on presently known facts.

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
JUDGMENT ON THE
PLEADINGS
2:23-cv-01399-BHS

22

TBILLICK
LAW
600 1ˢᵗ Ave
Seattle, WA 98104
206.494.0020
tim@tbillicklaw.com

*Attorney for Plaintiff*

**WORD COUNT CERTIFICATION**

I certify that this memorandum contains 3,898 words, not including the tables or case caption, in compliance with the Local Civil Rules.

By: <u>*s/ Timothy J. Billick*</u>

Timothy J. Billick, WSBA No. 46690

Dated April 22, 2024

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
JUDGMENT ON THE
PLEADINGS

23

2:23-cv-01399-BHS

TBILLICK
LAW
600 1ˢᵗ Ave
Seattle, WA 98104
206.494.0020
tim@tbillicklaw.com