UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SAFETY STAR LLC, <br><br> Plaintiff, <br><br> v. <br><br> APTIBYTE LLC, <br><br> Defendant. | CASE NO. C23-1399 BHS <br><br> ORDER |

THIS MATTER is before the Court on defendant Aptibyte LLC's motion for judgment on the pleadings, Dkt. 22, and motion for judicial notice, Dkt. 24.

Safety Star sued Aptibyte for trademark infringement, alleging Aptibyte offers bingo cards bearing Safety Star's "B-SAFE" trademarks. Aptibyte asserts Safety Star does not own the trademarks and thus does not have standing, and that the claims are nonetheless meritless.

**I.    BACKGROUND**

Safety Star sells safety awareness products including bingo kits and cards. Dkt. 1. One of its products is its "B-SAFE Bingo Program," comprising bingo cards titled "B-

SAFE" or "BSAFE" above the top row of the bingo grid. *Id.*, Exhibits 1–2. Safety Star's "one and only owner" is Albert "Beau" Culbertson. Dkt. 31, ¶ 6.

In 2003, Culbertson registered the "SAFETY STAR" trademark for "printed instructional and motivational materials concerning employee safety, namely, brochures, catalogs, instruction sheets and posters designed to promote safety on the job." Dkt. 1-1 at 16. In 2005, Culbertson registered the "B-SAFE" trademark for "bingo-type game cards for use in promoting safety." *Id.* at 5. In 2019, Safety Star registered the "BSAFE BINGO" trademark for use in "[b]oard games designed to promote employee safety awareness." *Id.* at 6.

Aptibyte operates a website named Bingo Baker that allows users to generate and download bingo cards. Dkt. 15 at 4. As of 2023, paying members of Bingo Baker could access its bingo cards. Dkt. 1 at 7; *id.*, Exhibits 14–15.

On March 23, 2020, Safety Star sent Aptibyte a cease and desist letter stating Aptibyte was infringing on the BSAFE, B-SAFE, and SAFETY STAR trademarks "on downloadable and printable safety bingo cards" and demanded that Aptibyte cease doing so. Dkt. 1-1 at 14.

In May 2023, Safety Star sued Aptibyte in this District, alleging several Bingo Baker bingo cards infringed on Safety Star's trademarks. *See Safety Star v. Aptibyte*, No. 23-cv-5440-DGE ("*Safety Star I*"). Aptibyte moved to dismiss, arguing that Safety Star did not have standing. *Id.*, Dkt. 14. Safety Star filed an amended complaint, and Aptibyte promptly and properly withdrew its motion to dismiss. *Id.*, Dkts. 15, 17. Ten days later, Aptibyte filed a renewed motion to dismiss. *Id.*, Dkt. 18. It argued that Safety Star had

implausibly created a new, "backdated" trademark assignment in a futile effort to remedy its lack of standing. Instead of responding to the motion, Safety Star filed a notice of voluntary dismissal. *Id.*, Dkt. 19. Chief Judge Estudillo dismissed the case without prejudice and without costs in August 2023. *Id.*, Dkt. 20.

A month later, on September 8, 2023, Safety Star filed this substantially similar case, asserting trademark infringement, false designation of origin, and contributory trademark infringement claims.[1] Dkt. 1. It alleges the Bingo Baker website offers several bingo cards bearing the marks "BSAFE," "B SAFE," "B-SAFE," and "BSAFE BINGO" that are "identical or highly similar" to Safety Star's B-SAFE bingo cards. *Id.* at 5. The complaint includes no reference to the trademark assignment.

Aptibyte moved for attorneys' fees incurred in *Safety Star I*. Dkt. 16. It argued Safety Star's conduct had been vexatious and harassing, and in support, filed two *nunc pro tunc* trademark assignments recorded with the United States Patent and Trademark Office (USPTO) that differ from the assignment Safety Star had submitted in *Safety Star I*. Dkt. 16 at 5; Dkt. 17 at 3; Dkt. 17-7, Ex. 7. Executed on August 17, 2023, the agreements recorded with the USPTO assign the "entire right, title, and interest in and to" the B-SAFE and BSAFE BINGO trademarks to Safety Star. *Id.* at 4, 6. Both agreements state an effective date of January 22, 2019. *Id.* Culbertson testifies he has "no idea why the effective date of January 22, 2019 was chosen." Dkt. 31, ¶ 11.

---

[1] The complaint originally alleged vicarious trademark infringement as well, but Safety Star has since dropped that claim. Dkt. 30 at 22 n.3.

ORDER - 3

1    Aptibyte now moves for judgment on the pleadings, primarily arguing that Safety
2    Star lacks standing. Dkt. 22. Aptibyte also moves for judicial notice of prior filings in
3    *Safety Star I* and USPTO records relating to the B-SAFE trademarks. Dkt. 24.

## II.  DISCUSSION

The standard applicable to a 12(c) motion for judgment on the pleadings mirrors that of a 12(b)(6) motion to dismiss. *See Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989); *Cafasso, U.S. ex. Rel. v. Gen. Dynamics C4 Sys. Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Aschcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the Court must accept as true the complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat a Rule 12(c) motion. *Vazquez v. L. A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*).

**A.  Safety Star has standing because it was assigned the B-SAFE trademark rights before it filed this suit.**

Aptibyte argues that Safety Star does not have standing. Dkt. 22 at 12. The 2023 assignments, Aptibyte asserts, reflect an invalid 2019 oral agreement to assign the trademark rights to Safety Star that "did not comply with the Lanham Act's requirement that assignments of a registered mark be in writing." *Id.* at 12–15 (citing *Cave Man Kitchens, Inc. v. Caveman Foods LLC*, No. 18-1274 TSZ, 2020 WL 6874238 (W.D. Wash. 2020)).

Safety Star responds that it has standing because it has an implied exclusive license to use the trademarks and seeks to amend its complaint accordingly. Dkt. 30 at 21. It concedes the 2023 *nunc pro tunc* assignments "cannot confer standing retroactively after a complaint is filed." *Id.* at 20 (emphasis omitted) (citing *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 780 (Fed. Cir. 1996)).

The Lanham Act allows a trademark's "registrant," or their "legal representatives, predecessors, successors, and assigns," to bring a civil action against an infringer. 15 U.S.C. §§ 1114(1), 1127. The Act requires that assignments be executed in writing. 15 U.S.C. § 1060(a)(3); *Gaia Techs.*, 93 F.3d at 779–80.

To establish standing as an assignee of the trademark, a plaintiff must establish that "an assignment, in writing, of the Intellectual Property took place before the lawsuit

ORDER - 5

was filed." *Id.* at 780. Otherwise, "[p]arties could justify the premature initiation of an action by averring to the court that their standing through assignment is imminent," misusing judicial resources. *Id.*

In *Gaia*, the Federal Circuit applied this rule to a *nunc pro tunc* assignment executed after the plaintiff, Gaia Technologies, filed suit. *Id.* at 779–80. Gaia filed its complaint in October 1993, and nearly one year later, executed a *nunc pro tunc* assignment agreement that transferred the patent and trademark rights from their previous owner to Gaia. *Id.* at 778–79. The agreement declared an effective date of August 1991 based on a past oral agreement between the previous patent and trademark owner and Gaia. *Id.* at 779. The court held that because the relevant statutes, including the Lanham Act, required that assignments be in writing, the oral assignment and August 1991 effective date was invalid. *Id.* at 779–80. Gaia lacked standing because it lacked "legal title of the Intellectual Property" when the claims were filed. *Id.* at 780.

This District addressed this issue more recently in *Cave Man Kitchens*, No. 18-1274-TSZ, 2020 WL 6874238. Like this case, *Cave Man* involved two consecutive infringement suits brought by the same plaintiff. The plaintiff first filed suit in February 2018, No. 18-273-TSZ, and executed a *nunc pro tunc* trademark assignment in May 2018 alleging a retroactive assignment date based on an earlier oral agreement. *Id.* at *2–4. The court dismissed the case for lack of standing because the plaintiff had failed to show it had "legal title to the mark at the time it initiated the action" in February 2018. *Id.* at *2; *see* No. 18-273-TSZ, Dkt. 23. The plaintiff immediately filed a new complaint, asserting the same claims again. 2020 WL 6874238 at *3. Citing *Gaia*, the court ruled the

assignment was effective on its execution date, not any earlier. *Id.* at *4. However, the assignment was invalid because the plaintiff, a corporation, "had been administratively dissolved for more than seven years" when the assignment was executed. *Id.* The plaintiff thus lacked standing. *Id.* at *5.

The record includes two *nunc pro tunc* assignments for the B-SAFE and BSAFE BINGO trademarks, from Culbertson to Safety Star, executed in August 2023. Dkt. 17-7 at 4–7. The assignments state an effective date of January 22, 2019. *Id.* Culbertson testifies he has "no idea why." Dkt. 31, ¶ 11. The rest of the record similarly does not elucidate why. Without evidence of a written assignment on or before January 22, 2019, as Safety Star concedes, the agreements do not retroactively assign the trademark rights to Safety Star. *Gaia*, 93 F.3d at 779–80. The assignments became effective on August 17, 2023.

Aptibyte's reliance on *Cave Man* to invalidate the *nunc pro tunc* assignments is misplaced. The *Cave Man* court ruled the *retroactive assignment* was ineffective because the alleged oral agreement was not supported by writing. No. 18-1274 TSZ, 2020 WL 6874238, at *4. The assignment agreement there was invalid because the assignee was administratively dissolved, not because the agreement's claimed effective date was based on an oral agreement. *Id.* at *4–5.

Because Culbertson assigned Safety Star the trademark rights on August 17, 2023—before Safety Star commenced this case on September 8, 2023—Safety Star has standing to pursue trademark infringement claims.

Even if the assignment agreements were invalid, Safety Star has standing as Culberton's successor. 15 U.S.C. § 1127. Culbertson founded Safety Star and has "always been [its] one and only owner." Dkt. 31, ¶ 6; Dkt. 1 at 3. He testifies that Safety Star is the "exclusive user and recipient of revenues from all uses of the marks." Dkt. 31, ¶ 9. *See Ultrapure Sys., Inc. v. Ham-Let Grp.*, 921 F.Supp. 659, 666 (N.D. Cal. 1996) ("as an exclusive licensee" of the trademark, plaintiff has "a property interest in the trademark and qualifies as an assignee or successor of the registrant."). Based on Culbertson's declaration, Safety Star is Culbertson's successor. Safety Star may amend its complaint to sufficiently plead these facts and include Culbertson as a named plaintiff. *See Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (A "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

**B.    Safety Star has sufficiently pled that Aptibyte commercially used the B-SAFE trademarks.**

Aptibyte argues Safety Star's infringement claims do not survive because it cannot prove Aptibyte commercially used the B-SAFE trademarks and that "Aptibyte failed to address any specific instances of purportedly infringing cards in response to notices from Safety Star." Dkt 22 at 20–22.

Successful claims for trademark infringement and false designation of origin under 15 U.S.C. §§ 1114, 1125 require the plaintiff to show it holds a "protectable mark, and that the alleged infringer's imitating mark is similar enough to 'cause confusion, or to

cause mistake, or to deceive.'" *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005) (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118 (2004)). "Likelihood of confusion" exists when a "'reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks.'" *Id.* (quoting *Dremwerks Prod. Grp, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998)). The infringer must use the trademark in commerce, "in connection with a sale of goods or services," in a way that competes with the plaintiff. *Bosely Med. Inst. v. Kremer*, 403 F.3d 672, 677, 679 (9th Cir. 2005); 15 U.S.C. § 1114(1)(a).

Safety Star alleges Bingo Baker sells memberships that allow users to generate and access its bingo cards, including those with the B-SAFE trademarks. Dkt. 1, ¶ 45; Dkt. 1-1 at 36. The Bingo Baker bingo cards referenced in the complaint appear similar to Safety Star's bingo cards. Dkt. 1-1 at 25. Several have "B SAFE" written above the top row of their grids, and some grids include safety related jargon, such as "Trauma Sheers" and "Toxic Chemicals." *Id.* Bingo Baker allegedly even offers a bingo card titled "Safety Star BINGO." Dkt. 1-1 at 21. A reasonably prudent consumer could confuse the Bingo Baker bingo cards attached to the complaint for Safety Star's B-SAFE Bingo Program. The complaint sufficiently pleads that Aptibyte used the trademarks in connection with the sale of its memberships and in competition with Safety Star. Safety Star has sufficiently pled trademark infringement and false designation of origin under 15 U.S.C. §§ 1114 and 1125.

ORDER - 9

**C. Safety Star has not sufficiently pled contributory trademark infringement because it does not allege Aptibyte induced its users to infringe on the B-SAFE trademarks.**

Aptibyte also seeks judgment on the pleadings because it claims Safety Star cannot show that "Aptibyte had contemporary knowledge of and failed to address" the trademark infringement. Dkt. 22 at 24.

Contributory trademark infringement occurs when the defendant "intentionally induces another to infringe a trademark, or if it continues to supply its [infringing] product to one whom it knows or has reason to know is engaging in trademark infringement." *Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 855 (1982)). The defendant meets the "knows or has reason to know" standard if they are "willfully blind to infringement," meaning they have "knowledge of specific infringers or instances of infringement" but "ignored that fact." *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1002–003 (9th Cir. 2023) (internal quotation marks omitted). When the infringer sells services, rather than a good, the infringer must also have "'[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark.'" *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (quoting *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 984 (9th Cir. 1999)).

Safety Star sent Aptibyte a cease and desist letter, and still, several days later, internet searches showed results for Bingo Baker's BSAFE Bingo. On its face, the complaint alleges Aptibyte had specific knowledge of the alleged infringement, but ignored that fact. However, to the extent Bingo Baker's membership offers a service by allowing its users to create bingo cards, Safety Star's complaint shows no facts that

Aptibyte intentionally induced users to access and download the bingo cards with the B-SAFE trademarks. Safety Star may amend its complaint to sufficiently plead these facts.

**D.     The Court takes judicial notice of the existence of USPTO records and filings in *Safety Star I*, but not the facts within them.**

Aptibyte asks the Court to take judicial notice of Safety Star's two complaints in *Safety Star I* and USPTO records relating to the B-SAFE trademarks. Dkt. 24. The USPTO records include the trademark assignments executed in 2023. Dkt. 23, Exhibit 3.

Under the Rules of Evidence, a court may take judicial notice of "matters of public record." *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). A judicially noticed fact must be one "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *abrogated on other grounds*, *Galbraith v. Cnty of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (A court may not take judicial notice of "disputed factual matters," though it may take judicial notice of the fact that prior court proceedings occurred.).

The Court takes judicial notice of the existence of the complaints in *Safety Star I* and the USPTO records because they are in the public record. It does not take judicial notice of facts within those documents because they are subject to reasonable dispute. Aptibyte's motion for judicial notice is **GRANTED**.

### III.  ORDER

Safety Star has standing to pursue its trademark infringement claims. It has also sufficiently pled trademark infringement and false designation of origin under the

Lanham Act. Aptibyte's motion for judgment on the pleadings on these claims is **DENIED**.

Safety Star has not sufficiently pled contributory infringement. This claim is **dismissed without prejudice and with leave to amend.** Any amended complaint must be submitted within 21 days of this order.

**IT IS SO ORDERED**.

Dated this 8th day of April, 2025.

BENJAMIN H. SETTLE
United States District Judge