Hon. David W. Christel

1

2

3

4

5

6

7

8

9          UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON

10

11

12

13                                        Case No. 2:23-CV-01399-DWC

14

15   SAFETY STAR, LLC., a Missouri limited
     liability company,
16
                              Plaintiff,
17                                        SAFETY    STAR,    LLC   MOTION    FOR
     vs.
18                                        SUMMARY JUDGMENT

19   APTIBYTE, LLC, a Washington limited liability
     company,
20                                        NOTED: May 5, 2026
                              Defendant.
21

22

23
         Plaintiff Safety Star, LLC ("Plaintiff" or "Safety Star"), by and through its attorneys, files
24
     this Motion for Summary Judgment against Defendant Aptibyte LLC, ("Defendant" or
25
     "Aptibyte").  Plaintiff Safety Star respectfully requests this Court find (1) that Defendant Aptibyte
26

27   PLAINTIFF'S MOTION
     FOR SUMMARY JUDGMENT                                    Practus LLP
                                                             11300 Tomahawk Creek
                                             1               Pkwy, Ste. 310
     Case No. 2:23-CV-01399                                  Leawood, KS 66211
                                                             Ph. (240) 206-60627
                                                             Fax. (626)-466-9014

1    has directly and contributorily infringed Safety Star's B-SAFE and BSAFE BINGO Trademarks;

2    and (2) that Safety Star has been harmed as a result. If this Motion is successful, Safety Star

3    respectfully requests an opportunity to brief the court on injunctive relief and attorney's fees.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

2

Case No. 2:23-CV-01399

Practus LLP
11300 Tomahawk Creek
Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

# I.  TABLE OF CONTENTS

*I.*    *TABLE OF CONTENTS* ................................................................ **3**

*II.*    *TABLE OF AUTHORITIES* ......................................................... **4**

*III.*    *BACKGROUND* ............................................................................ **6**

   **A.**    **Albert Culbertson and the BSAFE and B-SAFE BINGO Trademarks** ......... **6**

   **B.**    **Safety Star's Trademark Applications for B-SAFE and BSAFE BINGO** ...... **7**

   **C.**    **Aptibyte's Hosting and Sale of BSAFE BINGO Cards** ................................... **7**

*IV.*    *SUMMARY JUDGMENT STANDARD* ................................... **8**

*V.*    *DIRECT INFRINGEMENT* ......................................................... **9**

   **A.**    **Aptibyte's Commercial Use Is Apparent** ................................................... **10**

   **B.**    **Aptibyte Is More Than a Passive Intermediary** ........................................ **11**

   **C.**    **Likelihood of Confusion Factors** ................................................................ **12**

     1.    The BSAFE Marks Are Strong and the Parties' Uses Are Identical ................ 12

     2.    The Products Are Identical ............................................................................... 16

     3.    Both Products Appear Near Each Other in Online Searches ........................... 16

     4.    The Degree of Consumer Care is Low ............................................................ 17

     5.    Aptibyte Has Been Intentionally Encouraging the Use of the BSAFE Marks Since 2020  17

*VI.*    *CONTRIBUTORY INFRINGEMENT* ................................... **18**

   **A.**    **Aptibyte Encourages The Creation Infringing Bingo Cards** .......................... **19**

   **B.**    **Users of The Bingo Baker Site Infringe The BSAFE Marks** ......................... **20**

*VII.*    *PLAINTIFF SEEKS ACTUAL DAMAGES* ......................... **20**

*VIII.*    *REQUEST FOR SUPPLEMENTAL BRIEFING* ................. **22**

*IX.*    *CONCLUSION* ........................................................................... **23**

Practus LLP
11300 Tomahawk Creek
Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

1

2

## II.   TABLE OF AUTHORITIES

3

### CASES

*AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348-349 (9th Cir. 1979) ............................ 12, 15, 16

*Beer-Nuts v. Clover Club Foods Co.,* 805 F.2d 920, 928 (10th Cir. 1986) ................................. 16

*Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999) 12, 15

*Canvasfish.com, LLC v. Pixels.com, LLC,* No. 1:23-cv-611, 2024 U.S. Dist. LEXIS 35999, at *9

    (W.D. Mich. Mar. 1, 2024) ...................................................................................... 9

*Cisco Sys. v. Wuhan Wolon Commun. Tech. Co.,* No. 5:21-cv-04272-EJD, 2021 U.S. Dist.

    LEXIS 137845, at *16-17 (N.D. Cal. July 23, 2021) ............................................. 22

*Coach, Inc. v. Pegasus Theater Shops*, No. C12-1631-MJP, 2013 U.S. Dist. LEXIS 138840, at

    *7 (W.D. Wash. Sep. 25, 2013) ............................................................................ 8

*El Greco Leather Prods. Co., Inc. v. Shoe World, Inc.*, 806 F.2d 392, 396 (2d Cir. 1986)............ 9

*Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A.*, 778 F.3d 1059, 1070-71 (9th Cir. 2015) ........... 16

*Gianni Versace SPA v. Awada, No.* CV 03-3254 GPS (RNBX), 2008 WL 11339656, at *3 (C.D.

    Cal. Mar. 25, 2008) ............................................................................................... 12

*Hakkasan LV, LLC v. VIP, UNLTD, LLC,* 63 F. Supp. 3d 1259, 1265 (D. Nev. 2014) ............... 10

*H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1029-30 (E.D. Wis. 2018)..... 9, 11, 17

*Int'l Med. Devices, Inc. v. Cornell*, No. 2:20-cv-03503-CBM-RAOx, 2022 U.S. Dist. LEXIS

    212170, at *24 (C.D. Cal. Sep. 26, 2022) .............................................................. 10

*Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 855 (1982)............................................. 17

*Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 999 (9th Cir. 2018) ................................... 6

26

27

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

Case No. 2:23-CV-01399

Practus LLP
11300 Tomahawk Creek
Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

*La Terra Fina USA, LLC v. TerraFina, LLC*, 2017 WL 4284167, at *3 (N.D. Cal. 2017).......... 15

*Lindy Pen Co., Inc. v. BIC Pen Corp.,* 982 F.2d 1400, 1407 (9th Cir. 1993).............................. 20

*Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 984 (9th Cir. 1999)..................... 18

*Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 381 (6th Cir. 2006) ........ 11

*Nissan Motor Co. v. Nissan Computer Corp.,* 378 F.3d 1002, 1018 (9th Cir. 2004) .................. 10

*Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 447 (6th Cir. 2021)........................................ 9

*Ohio State,* 989 F.3d at 448 ........................................................................................................... 9

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 205 (1985)................................... 12

*Perfect 10, Inc. v. Visa Intern. Service Ass'n,* 494 F.3d 788, 807 (9th Cir. 2007) ...................... 18

*Philip Morris USA Inc. v. Liu,* 489 F. Supp. 2d 1119, 1122 (C.D. Cal. 2007)............................. 9

*Playboy Enters. v. Baccarat Clothing Co.,* 692 F.2d 1272, 1275 (9th Cir. 1982)....................... 20

*Polo Fashions, Inc. v. Dick Bruhn, Inc.,* 793 F.2d 1132, 1135 (9th Cir. 1986).......................... 20

*Skydive Ariz., Inc. v. Quattrocchi,* 673 F.3d 1105 (2012)....................................................... 20, 21

*Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1002-003 (9th Cir. 2023) ................................... 17

## STATUTES

15 U.S.C. § 1052 ............................................................................................................................ 7

15 U.S.C. § 1114(a) .................................................................................................................. 8, 18

15 U.S.C. § 1127 .......................................................................................................................... 17

15 U.S.C. § 1117 .......................................................................................................................... 20

## OTHER AUTHORITIES

Pub. L. 116-260.............................................................................................................................. 22

Practus LLP
11300 Tomahawk Creek
Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

**RULES**

Fed. R. Evid. 201(b)..................................................................................................... 6

**REGULATIONS**

37 C.F.R. §2.41 ............................................................................................................ 7

### III.   BACKGROUND

#### A.  Albert Culbertson and the BSAFE and B-SAFE BINGO Trademarks

Mr. Culbertson began soliciting Missouri businesses to purchase B-SAFE bingo cards in March 1992. (See Mr. Culbertson's Declaration Submitted in Opposition to Defendant's Motion for Judgment on the Pleadings, ("Dkt. 31") at ¶ 2)) Culbertson ordered thousands of B-SAFE bingo cards to be printed on January 31, 1992 to sell his workplace safety bingo game cards to as many companies as possible. (Dkt. 31 ¶ 3 and Dkt. 31-1 [Receipt of Print Order]). Throughout 1992, Mr. Culbertson sent out brochures to companies advertising his safety bingo game. (Id. ¶ 4 and Dkt. 31-2.) Mr. Culbertson sold the B-SAFE Bingo cards under the d/b/a "Safety Concepts," from 1992 to 2002. (Id ¶ 5 and Dkt. 31-3 [Missouri SOS Records Summary][1]).

Mr. Culbertson has always been the one and only owner of Safety Star, LLC since the company's incorporation on February 28, 2002. (See, Dkt. 31 ¶ 6 and Dkt. 31-4 [Safety Star Articles of Incorporation].) Safety Star's website can be found at https://safetystar.com/ where it advertises its Safety Bingo kits, along with other workplace safety materials. (Dkt. 31 ¶ 7 and Dkt.

---

[1] Plaintiff respectfully makes a request for judicial notice under Fed. R. Evid. 201(b) of the Missouri corporate filings Safety Concepts and Safety Star, LLC, available online at the Missouri Secretary of State's website, https://www.sos.mo.gov/. *See, e.g., Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 999 (9th Cir. 2018) ("[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.").

Practus LLP
11300 Tomahawk Creek
Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

31-5). Safety Star, and Safety Star alone, has been continuously using both the B-SAFE and BSAFE BINGO marks under permission from Mr. Culbertson since February 28, 2002. (Id. ¶¶ 6-8).

## B.  Safety Star's Trademark Applications for B-SAFE and BSAFE BINGO

Mr. Culbertson filed for B-SAFE on or about January 8, 2005. (Dkt. 34 ¶ 17; Culbertson ¶ 9 and Dkt. 31-6 [B-SAFE trademark application documents].) Notably, the trademark examiner in this application did ***not*** issue a rejection on the basis that the application was merely descriptive pursuant to 15 U.S.C. § 1052(e)(1) for "[b]ingo-type game cards for use in promoting safety." Thus, B-SAFE at least by the time of filing, had acquired distinctiveness in the marketplace under 37 C.F.R. §2.41(a). B-SAFE registered on December 20, 2005. (Id.)

Mr. Culbertson filed for BSAFE BINGO on June 4, 2018. (Dkt. 31¶ 10 and Dkt. 31-7 [Application for BSAFE BINGO and TM summary].) Likewise, the trademark examiner in this application did ***not*** issue a rejection on the basis that the application was merely descriptive pursuant to 15 U.S.C. § 1052(e)(1) for "[b]oard games designed to promote employee safety awareness." BSAFE BINGO therefore had also acquired distinctiveness in the marketplace at the time of filing under 37 C.F.R. §2.41(a). BSAFE BINGO registered on January 22, 2019. (Id.)

## C.  Aptibyte's Hosting and Sale of BSAFE BINGO Cards

Aptibyte, LLC owns and operates a bingo card designing website called "Bingo Baker" (https://bingobaker.com/). (See Billick Declaration included herewith at Exhibit A [Bingo Baker website pages]). Mr. Matt Johnson is the sole creator and is solely responsible for the Bingo Baker site. (See Billick Decl. Ex. B [Responses to Safety Star's Interrogatories at Response Nos. 9 and 10]). The Bingo Baker site assists users in creating bingo cards by providing various editing, arranging, and exporting tools; storing the bingo cards; and providing a searchable index of those

Practus LLP
11300 Tomahawk Creek
Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

cards. (See Aptibyte Rule 30(b)(6) Deposition Transcript attached to Billick Declaration as Ex. C ["Johnson Dep. Tr."] at page 10 line 6 to page 13 line 23). This site is usable for free or by paying a subscription fee, but a paid account permits a user to keep certain cards free from being searched. (Id.) A user does not need a paid account to search for bingo cards – including cards displaying the BSAFE Marks. (Id.) The Bingo Baker site includes tools for editing bingo cards, such as adding pictures, changing the background colors, and editing text. (Id. at p. 47:6 – p. 49:21 and Johnson Dep. Ex. 18). The Bingo Baker site is thus much more than a passive repository for user-generated content. (See also Ex. B at Response No. 5 [briefly describing how the Bingo Baker site assists users]).

Mr. Johnson confirmed that bingo cards bearing the BSAFE Marks appeared on the Bingo Baker Site as early as 2012 and produced documentation proving the same. (Johnson Dep. Tr. p. 29:17-20; see also, Johnson Dep. Tr. Ex. 9 attached as Billick Decl. Ex. D [APTIBYTE015032]). Aptibyte was placed on actual notice that Bingo Baker was a venue for infringing the BSAFE Marks on or about March 24, 2020 when Safety Star's prior counsel sent it a cease-and-desist letter. (See Ex. B at Response No. 11).

This case involves both direct and contributory infringement by Aptibyte. Aptibyte has infringed the Marks by displaying infringing cards, even if they were made with another user's assistance. As for contributory infringement, Aptibyte has at least been willfully blind to the direct infringement by others since 2020 and has been encouraging such infringement.

## IV. SUMMARY JUDGMENT STANDARD

"The Court may grant summary judgment on Defendants' liability for trademark infringement" if Safety Star "establishes no genuine issue of fact exists regarding likelihood of

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

8

Case No. 2:23-CV-01399

Practus LLP
11300 Tomahawk Creek
Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

confusion." *Coach, Inc. v. Pegasus Theater Shops*, No. C12-1631-MJP, 2013 U.S. Dist. LEXIS 138840, at *7 (W.D. Wash. Sep. 25, 2013)(citations omitted).

## V.  DIRECT INFRINGEMENT

Direct infringement occurs when a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services." 15 U.S.C. § 1114(a).  "Violation of the Lanham Act is generally based on strict liability, but not all sellers of trademark infringing products use those marks in commerce. Courts determine the degree to which a seller is a user by placing alleged infringers on a 'spectrum.'" *Canvasfish.com, LLC v. Pixels.com, LLC*, No. 1:23-cv-611, 2024 U.S. Dist. LEXIS 35999, at *9 (W.D. Mich. Mar. 1, 2024) (*citing Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 447 (6th Cir. 2021); "On one end are companies like eBay and Amazon which facilitate sales for independent vendors and are typically not considered 'users.' On the other end are brick and mortar stores that sell trademark-infringing items directly to consumers, regardless of whether the stores design or manufacture those items." *Id.* (citations omitted); *see also Philip Morris USA Inc. v. Liu,* 489 F. Supp. 2d 1119, 1122 (C.D. Cal. 2007)("[O]ffenses under the Lanham Act are strict liability offenses").

Among other scenarios, courts have found liability for a retailer that inadvertently sold counterfeit goods, *El Greco Leather Prods. Co., Inc. v. Shoe World, Inc.*, 806 F.2d 392, 396 (2d Cir. 1986); and a print-on-demand business that made goods based on customer-uploaded designs, *H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1029-30 (E.D. Wis. 2018) ("*SunFrog*"). Courts addressing this issue focus on "the degree of control and involvement exercised… over the manufacturing, quality control, and delivery of goods." *Ohio State,* 989 F.3d at 448.

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

9

Case No. 2:23-CV-01399

Practus LLP
11300 Tomahawk Creek
Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

The *SunFrog* case is frequently cited and is instructive:

> True, the website users actually craft the designs that incorporate the marks. But this does not matter, as SunFrog's involvement standing alone constitutes use of the marks. Using a mark involves placing it "in any manner" on the goods in question or displays associated with them, 15 U.S.C. § 1127, and undoubtedly Harley-Davidson's marks were not maintained in the All Art database without SunFrog's effort, did not get onto SunFrog's goods without the use of SunFrog's own printers, nor did they make it to purchasers without being shipped by SunFrog.

*SunFrog*, 311 F. Supp. 3d at 1030.

### A. Aptibyte's Commercial Use Is Apparent

As noted above, there is no dispute that bingo cards showing the BSAFE Marks have been displayed on the Bingo Baker site since 2012. Such use alone would constitute commercial use. *Nissan Motor Co. v. Nissan Computer Corp.,* 378 F.3d 1002, 1018 (9th Cir. 2004) ("Initial interest confusion occurs when the defendant uses the plaintiff's trademark in a manner calculated to capture initial consumer attention, even though no actual sale is finally completed as a result of the confusion." (quotation marks omitted)); *Hakkasan LV, LLC v. VIP, UNLTD, LLC,* 63 F. Supp. 3d 1259, 1265 (D. Nev. 2014) (finding for plaintiff on summary judgment because defendant used trademark on its website to advertise competing goods and services); *Int'l Med. Devices, Inc. v. Cornell*, No. 2:20-cv-03503-CBM-RAOx, 2022 U.S. Dist. LEXIS 212170, at *24 (C.D. Cal. Sep. 26, 2022) ("The Court thus finds that Drs. Cornell and Clavell's use of the Penuma mark on their websites constituted use in commerce.").

A person does not need a paid account to create a bingo card. (Johnson Dep. Tr. p. 10:23 – p. 11:8). A one-time subscription fee of $24.99 grants a user additional premium features, including the ability to make cards free from being searched – a feature not available to non-paying users. (Id. p. 12:9 – p. 13:23). Mr. Johnson could make money from his site in other ways, but

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

Case No. 2:23-CV-01399

10

Practus LLP
11300 Tomahawk Creek
Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

1   decided not to do so. (Id.). Mr. Johnson admitted in his deposition that public bingo cards are

2   searchable on the Bingo Baker site by anyone – including someone without an account, thus

3   serving a de facto role of advertising infringing bingo cards. (Id.; see also Johnson Dep. Tr. p.

4   20:19 – p. 21:5). As noted, Aptibyte also collects subscription fees from its paid users – including

5   those who made bingo cards with the BSAFE Marks. This, too is another instance of commercial

6   use.

### B. Aptibyte Is More Than a Passive Intermediary

8       Like the defendant in *SunFrog,* Aptibyte is more than a mere intermediary. Aptibyte's

9   Bingo Baker site provides tools to users to create their own bingo cards, which includes the ability

10  to upload their own designs. (Johnson Dep. Tr. p. 10:6 – p. 13:23). Mr. Johnson also has the ability

11  to rewrite bingo card content and indeed has done so in this case. (Id. at p.15:11 – p.17:9 ("…I

12  could see where the term 'BSAFE' was being used, and then I could change it to 'Safety' or

13  'Bingo' as appropriate.")). Indeed, Mr. Johnson was able to make such changes in one fell-swoop

14  to all cards bearing "BSAFE." (Id.) The process takes just about an hour or so. (Id. at p. 18:1-4).

15      Also, "[p]ublic cards are generally indexed and searchable" on the Bingo Baker website.

16  (Id. p. 20:19 to 21:22). However, if a bingo card has what Mr. Johnson deems to be "a bad word,"

17  his program will prevent that card from showing up in a user search query. (Id.) Mr. Johnson

18  admitted he has the capability to include the BSAFE Marks in his "list of bad words," but he

19  refuses to do so because he believes he is under no obligation to do so. (Id.) Mr. Johnson's belief

20  is not in accord with the Lanham Act because his site still harbors bingo cards with the BSAFE

21  Marks, and "sellers bear strict liability for violations of the Lanham Act." *Lorillard Tobacco Co.*

22  *v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 381 (6th Cir. 2006) (*citations omitted*). Mr. Johnson

23  could implement other ways to monetize his site, and he could remove BSAFE bingo cards from

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

11

Case No. 2:23-CV-01399

Practus LLP
11300 Tomahawk Creek
Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

1   search results,  but he instead chose to charge a subscription fee to earn revenue. (Johnson Dep.

2   Tr. p. 12:11 – p. 13:23). Therefore, unless a user pays a fee and selects the correct menu option, or

3   uses a "bad word," Bingo Baker publicly displays bingo cards containing the BSAFE Marks, and

4   this subjects Aptibyte to the strict liability demanded by the Lanham Act. The "commercial use"

5   requirement for direct infringement under the Lanham Act is satisfied.

6       ### C.  Likelihood of Confusion Factors

7           Among the relevant factors to consider in assessing likelihood of confusion are the strength

8   of a mark, the proximity of the goods, similarity of the marks, evidence of actual confusion,

9   marketing channels, the nature of the goods, the degree of care to be exercised by a purchaser, the

10  defendant's intent, and the likelihood of expansion of the product lines. *AMF, Inc. v. Sleekcraft*

11  *Boats,* 599 F.2d 341, 348-349 (9th Cir. 1979). "Some factors are much more important than others,

12  and the relative importance of each individual factor will be case-specific." *Brookfield Communs.,*

13  *Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999). But similarity of the marks

14  and whether the companies compete will "always" be important. *Id.*

15      #### 1.  The BSAFE Marks Are Strong and the Parties' Uses Are Identical

16          Mr. Culbertson has been consistently using BSAFE BINGO since at least October 31, 2001

17  and B-SAFE since at least March 1, 1992; and has been using both marks in connection with

18  selling safety-themed bingo cards. He has licensed both marks to different corporate forms over

19  the years as his business evolved, but this consumer-facing use has remained consistent. Both

20  marks are considered "incontestable" under trademark law. Thus, defendants cannot prevail under

21  any argument that these marks are merely descriptive. *Park 'N Fly, Inc. v. Dollar Park and Fly,*

22  *Inc.*, 469 U.S. 189, 205 (1985) ("We conclude that the holder of a registered mark may rely on

23  incontestability to enjoin infringement and that such an action may not be defended on the grounds

---

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

12

Case No. 2:23-CV-01399

Practus LLP
11300 Tomahawk Creek
Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

that the mark is merely descriptive."); *see also Gianni Versace SPA v. Awada, No*. CV 03-3254 GPS (RNBX), 2008 WL 11339656, at *3 (C.D. Cal. Mar. 25, 2008) (holding that the Versace mark is a "personal name that has acquired secondary meaning" and is therefore a "strong" mark). This weighs in favor of a finding of a likelihood of confusion.

Both Parties display the BSAFE Marks on their respective websites on their respective bingo cards. Safety Star uses the BSAFE Marks on printed bingo cards, as excerpted from Exhibit E and shown below:



Similarly, Aptibyte has published well over *a thousand* bingo cards that use the BSAFE Marks, as shown in Exhibit D, a list Aptibyte produced showing all instances the BSAFE Marks have appeared on Bingo Baker and was referred to as "Exhibit 9" in Aptibyte's deposition. (See also Johnson Dep. Tr. p. 27:23 – p. 29:20 [explaining Exhibit 9]). Some of those bingo cards are included herein as Exhibits F and G and excerpted below on the next page:

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

13

Case No. 2:23-CV-01399

Practus LLP
11300 Tomahawk Creek
Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

14

Case No. 2:23-CV-01399

Practus LLP
11300 Tomahawk Creek
Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014



APTIBYE014744

BSAFE0000181

BSAFE0000191



APTIBYTE014736

Practus LLP
11300 Tomahawk Creek
Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

### 2. *The Products Are Identical*

Related goods (or services) are those "which would be reasonably thought by the buying public to come from the same source if sold under the same mark." *Sleekcraft*, 599 F.2d at 348, n.10. "A court may consider the parties to be competitors if they sell goods in the same industry or if their goods are complementary." *La Terra Fina USA, LLC v. TerraFina, LLC*, 2017 WL 4284167, at *3 (N.D. Cal. 2017). Safety Star primarily sells physical bingo cards and related kits, and Aptibyte sells digital bingo cards online for users to print. No reasonable juror could find the products between Safety Star and Aptibyte distinct; and any reasonable person would consider the parties to be competitors. They both offer bingo cards bearing the term(s) BSAFE, B-SAFE, or BSAFE BINGO, as shown above. Given the similarity between the products, the competitive relationship the parties have, this factor tilts for Safety Star.

### 3. *Both Products Appear Near Each Other in Online Searches*

"Convergent marketing channels increase the likelihood of confusion." *Sleekcraft*, 599 F.2d at 353. Courts have consistently recognized convergence in search results is a factor that increases the likelihood of confusion. *See, e.g., Brookfield*, 174 F.3d at 1057. "The Web, as a marketing channel, is particularly susceptible to a likelihood of confusion since . . . it allows for competing marks to be encountered at the same time, on the same screen." *GoTo.com, Inc.*, 202 F.3d 1199, 1207 (9th Cir. 2000). Several search phrases result in both parties being shown near each other, including "safety bingo," "bsafe bingo," and "safety bingo cards." (See Billick Decl. Ex. H [Search Results]). Consumers may be savvy with online browsing, but for low-price items, consumers exercise less care and will likely click on whatever bingo card shows up in search results. Given the close proximity the Parties' products are with one another on Google search results, this factor weighs in favor of Safety Star.

Practus LLP
11300 Tomahawk Creek
Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

### 4.    The Degree of Consumer Care is Low

Aptibyte charges $24/month for a paid subscription, but users may browse and search the site at no cost once they see Aptibyte's bingo cards appear on a Google search. (See Johnson Dep. Tr. at p. 13:8-23).  Safety Star's bingo cards range from $.09 to $.12 depending on the labeling and customization. (See Billick Decl. Ex. E]). This weighs in favor of a finding of a likelihood of confusion. *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A.*, 778 F.3d 1059, 1070-71 (9th Cir. 2015)( "[L]ow prices imply correspondingly low consumer care."); *Beer-Nuts v. Clover Club Foods Co.,* 805 F.2d 920, 928 (10th Cir. 1986))("[P]urchasers are unlikely to bother to inform the trademark owner when they are confused about [the source of] an inexpensive product."). This low price weighs in favor of Safety Star.

### 5.    Aptibyte Has Been Intentionally Encouraging the Use of the BSAFE Marks Since 2020

"When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Sleekcraft*, 599 F.2d at 354. For the sake of argument, this Court can assume that Aptibyte had no actual knowledge of the BSAFE Marks until March 2020 – when Mr. Johnson received the first cease-and-desist letter from Safety Star. (See Billick Decl. Ex. B [Aptibyte Interrogatory Responses at No. 11]). From that date forward, Aptibyte possessed actual knowledge that Aptibyte did not have permission to use the BSAFE Marks on its site, or to encourage others to do the same. This factor weighs in favor of a likelihood of confusion.

Mr. Johnson knowingly continued his conduct with impunity. For instance, Mr. Johnson sent Mr. Culbertson a letter threatening to disseminate "unflattering" information about him as well as insinuating that Mr. Culbertson is a "troll" who is "litigious," "spiteful," and "hostile."

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

17

Case No. 2:23-CV-01399

Practus LLP
11300 Tomahawk Creek
Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

(See Billick Decl. Ex. H [Johnson Letter, BSAFE000189-190]). He could filter out BSAFE cards from search results on his site – preventing users from seeing the mark – but he chooses not to because he believes he is "under no obligation to censor my website nor the content on my website on behalf of any trademark owner." (Johnson Dep. Tr. p. 21:17-22). His attitude extends to other trademark owners who have sent him cease-and-desist letters as well. Despite having received several demands from third-parties, he has taken no action to respect the trademark rights of others. (Id. at p. 51:13 – p. 56.7). He also attempted to coordinate with other bingo card generator sites to fight back against what he perceives as "troll" behavior. (Id. at p. 39:4 – p. 41:12). During this litigation, Safety Star had to issue more takedown requests for more infringing cards. (See, Billick Ex.

In short, Aptibyte's intentional, ***continued display*** of the BSAFE Marks on bingo cards to both public-facing and paid accounts is what triggers direct infringement. *See, e.g., SunFrog, supra,* at 1030 ("Using a mark involves placing it "in any manner" on the goods in question or displays associated with them, 15 U.S.C. § 1127, and undoubtedly Harley-Davidson's marks were not maintained in the All Art database without SunFrog's effort.")

## VI.   CONTRIBUTORY INFRINGEMENT

Contributory trademark infringement occurs when the defendant "intentionally induces another to infringe a trademark, or if it continues to supply its [infringing] product to one whom it knows or has reason to know is engaging in trademark infringement." *Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 855 (1982)). The defendant meets the "knows or has reason to know" standard if they are "willfully blind to infringement," meaning they have "knowledge of specific infringers or instances of infringement" but "ignored that fact." *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1002-003 (9th Cir. 2023) (internal quotation marks omitted). When the infringer sells

Practus LLP
11300 Tomahawk Creek
Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

services, rather than a good, the infringer must also have "'[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark.'" *Perfect 10, Inc. v. Visa Intern. Service Ass'n,* 494 F.3d 788, 807 (9th Cir. 2007) (*quoting Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 984 (9th Cir. 1999)). A finding of contributory infringement thus requires a finding of direct infringement. As noted above, direct infringement is a strict liability offense and occurs when a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services." 15 U.S.C. § 1114(a).

### A. Aptibyte Encourages The Creation Infringing Bingo Cards

Aptibyte assists in the infringement of the BSAFE Marks. Moreover, Aptibyte knew or had reason to know that its users were using the Bingo Baker site to infringe the BSAFE Marks; and it has direct control over the tool used to make the accused bingo cards. As noted above, users input a range of content and parameters for a given bingo card and then may print as many as they like. "Upon saving, the data is sent to Bingo Baker's server and stored in a database. When a user requests a card to be generated, Bing Baker retrieves the stored information, and randomly populates a grid using the content provided by the original creator of the card." (Billick Ex. B at Defendant's Response to Interrogatory No. 5).

Aptibyte *actively encourages* its users to make bingo cards for workplaces as well, as shown on the www.safetybingo.com/safety-bingo URL. (Billick Decl. Ex. A). Aptibyte encourages users to make bingo cards as "a great addition to your occupational safety incentive program. You can be OSHA compliant…and promote a safe and positive workplace. […] "save your company thousands of dollars." (Id.) "There's no need to buy an expensive safety bingo program or purchase stacks of paper bingo cards." (Id.) At least from March 2020, Aptibyte had

Practus LLP
11300 Tomahawk Creek
Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

actual knowledge that the Bingo Baker website was used to infringe, yet declined to address the issue. The knowledge requirement for contributory infringement is therefore met.

### B.  Users of The Bingo Baker Site Infringe The BSAFE Marks

Throughout this litigation, Bingo Baker has been harboring infringing bingo cards bearing the BSAFE Marks that it helped create. As shown in the text boxes of the cards themselves, they were undoubtedly used for commercial purposes.  (See Billick Decl. Ex. F and Ex. G [collections of Aptibyte cards containing BSAFE Marks]). For example. it strains credulity that a person would use a bingo card with terms like "B-Safe BINGO," "Insulated Tools," or "Safety glasses" for home, personal use. (See, Ex. G at APTIBYTE014736).

Also, Defendant produced a list of email addresses tied to accounts that created bingo cards using one or both of the BSAFE Marks.  (Billick Decl. Ex. K [Aptibyte Customer List filed under seal]). As can be shown in this redacted list, many of the email addresses themselves suggest commercial use as well.  Yet to confirm the obvious commercial use by subscribers, Plaintiff issued subpoenas via email to all of the email addresses on this list. Several businesses responded that they made commercial use of the BSAFE bingo cards they created and included documents and statements showing the same. (Billick Decl. Ex. L [collection of redacted business email responses]). Because these businesses provided proof of using bingo cards bearing the BSAFE Marks in commercial settings, this satisfies the "direct infringement" element for contributory infringement. No reasonable juror would find that Aptibyte did not commit contributory trademark infringement.

### VII.  PLAINTIFF SEEKS ACTUAL DAMAGES

"Damages are typically measured by any direct injury which a plaintiff can prove, as well as any lost profits which the plaintiff would have earned but for the infringement." *Lindy Pen Co.,*

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

Case No. 2:23-CV-01399

20

Practus LLP
11300 Tomahawk Creek
Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

*Inc. v. BIC Pen Corp.,* 982 F.2d 1400, 1407 (9th Cir. 1993). "The purpose of section 1117 is to 'take all the economic incentive out of trademark infringement.'" *Polo Fashions, Inc. v. Dick Bruhn, Inc.,* 793 F.2d 1132, 1135 (9th Cir. 1986) (quoting *Playboy Enters. v. Baccarat Clothing Co.,* 692 F.2d 1272, 1275 (9th Cir. 1982)); *see also Skydive Ariz., Inc. v. Quattrocchi,* 673 F.3d 1105 (2012). The Ninth Circuit allows for "crude" measures of damages based on reasonable inferences, provided they are not fanciful. *Id.* "We emphasize that section 1117 "confers  a wide scope of discretion upon the district judge in fashioning a remedy." Section 1117 demands neither empirical quantification nor expert testimony to support a monetary award of actual damages; many sources can provide the requisite information upon which a reasonable jury may calculate damages." *Id.* at 1113.

As discussed above, based on disclosed information, 68 email addresses were used to create a bingo card that contained the Marks B-SAFE or BSAFE BINGO.  Also, as noted above, the BSAFE mark was displayed at least 1,058 times on the BingoBaker.com site from April 2012 to August 2025 (See Billick Ex. D).  Mr. Culbertson testified that Safety Star has lost sales by roughly 19% year-over-year, and that decline is partially attributable to Aptibyte's infringement. (Culbertson Dep. Tr. attached as Billick Ex. M, p. 69:2 – 70:4; and p. 89:4-7) ("…They wanted my brand, and I've worked 35 years, spent close to a million dollars trying to promote that brand. People know it, they understand it, and I've lost sales as a result of his allowing other people to use it at will. It's an existential threat to my business."). Because Aptibyte does not have a limit on the number of cards a user can download, and is instead based on a subscription model, Safety Star's loss sales are impossible to precisely quantify: "…If these people wanted a B-SAFE card, then I've lost 10,000 cards." (Culbertson Dep. Tr. p. 72:1-19). Mr. Culbertson also testified that if

Practus LLP
11300 Tomahawk Creek
Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

Aptibyte's infringement is allowed to continue, the BSAFE brand will become so diluted that it will "end up as nothing."  (Culbertson Dep. Tr. p. 87:14 – p.88:12).

Safety Star estimates its "actual damages" to be represented as follows: (the average number of cards printed by a Safety Star customer from 2020 to present) X (number of people we have reason to believe used Safety Star cards from Aptibyte from 2020 to present, according to APTIBYTE000056-014689) x (the average price of a BSAFE card). Safety Star sold approximately 5,600,000 cards to 1,642 customers from 2020 through 2025, creating an average of 3,410 cards per customer at an average price of $ 0.115. Sales related damages would amount to 3,410 X 68 email accounts identified by Aptibyte minus one account confirmed to have not downloaded any cards X .$.115 = $2,352.90. This is an underestimation, for it does not include those who have downloaded BSAFE cards *without* creating a paid account, as discussed above. For underlying data, see Billick Declaration Ex. K [Aptibyte Customer List filed under seal], Ex. N [Safety Star Sales Records 2020 to 2025], and Ex. O [Safety Star Customer List filed under seal].

Safety Star's reputational damages are estimated to be represented as follows: (the average dollar amount spent by a BSAFE customer from 2020 to present) X (the number of BSAFE cards displayed on BingoBaker.com from 2020 to present, according to APTIBYTE015032). Reputational damages have therefore been estimated to be $384 X 1,071 times = $411, 264. This estimate is quite conservative, for it does not account for "expenditures in building its reputation in order to estimate the harm to its reputation after a defendant's bad acts." *Skydive Ariz.,* 673 F.3d at 1112.

## VIII.   REQUEST FOR SUPPLEMENTAL BRIEFING

Practus LLP
11300 Tomahawk Creek
Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

If this Court rules in Safety Star's favor, Safety Star requests the opportunity to submit evidence to support injunctive relief prohibiting Aptibyte from displaying the BSAFE Marks publicly on its website. "The recently enacted Trademark Modernization Act of 2020 modified 15 U.S.C. § 1116(a) to state that a plaintiff seeking an injunction against trademark infringement 'shall be entitled to a rebuttable presumption of irreparable harm ... upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order.'" *Cisco Sys. v. Wuhan Wolon Commun. Tech. Co.,* No. 5:21-cv-04272-EJD, 2021 U.S. Dist. LEXIS 137845, at *16-17 (N.D. Cal. July 23, 2021) (quoting Pub. L. 116-260)(additional citations omitted). "Even before the recent change in the law to presume irreparable harm, the Ninth Circuit recognized that 'intangible injuries,' including loss of goodwill, can constitute irreparable harm."

## IX.    CONCLUSION

Safety Star respectfully requests a finding direct and indirect trademark infringement; injunctive relief, as well as an award of $413,616.

DATED February 27, 2026.

By

Tim J. Billick, WSBA No. 46690
Practus LLP
E-mail:  tim.billick@practus.com
600 First Ave, Ste.102
Seattle, WA  98104
Ph. 206-844-6539
Attorneys for Plaintiff

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

Case No. 2:23-CV-01399

Practus LLP
11300 Tomahawk Creek
Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

**WORD COUNT CERTIFICATION**

I affirm that the above brief contains 4,784 words, excluding the title page and tables.

By

Tim J. Billick, WSBA No. 46690
Practus LLP
E-mail:  tim.billick@practus.com
600 First Ave, Ste.102
Seattle, WA  98104
Ph. 206-844-6539
Attorneys for Plaintiff

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

Case No. 2:23-CV-01399

24

Practus LLP
11300 Tomahawk Creek
Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014