1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

HONORABLE DAVID W. CHRISTEL

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SAFETY STAR, LLC, a Missouri limited
liability company,

      Plaintiff,

v.

APTIBYTE, LLC, a Washington limited
liability company,

      Defendant.

Case No. 2:23-cv-01399-DWC

DEFENDANT APTIBYTE, LLC'S MOTION
FOR SUMMARY JUDGMENT ON
PLAINTIFF SAFETY STAR, LLC'S
CLAIMS

NOTE ON MOTION CALENDAR:
March 27, 2026

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Case No. 2:23-cv-01399-DWC)

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

**TABLE OF CONTENTS**

FACTUAL BACKGROUND .................................................................................................. 1

I.    Safety Star and the "B-SAFE Marks" ..................................................................... 1

II.   Aptibyte and the Bingo Baker Website .................................................................. 1

III.  Aptibyte's Prompt Removal of Allegedly Infringing User-Created Content ................... 6

IV.   Procedural Background .......................................................................................... 7

DISCUSSION .................................................................................................................. 8

I.    Summary Judgment Should Be Granted to Aptibyte on All of Safety Star's Claims ........ 8

II.   Safety Star's Direct Infringement Claims Cannot Survive Summary Judgment ................ 9

      A.    Website Users, Not Aptibyte, Created the Bingo Cards .................................... 10

      B.    Safety Star Cannot Prove That Aptibyte "Used" the Marks in Advertising ......... 11

      C.    Sale of a Membership to the Bingo Baker Website Does Not Prove "Use" ......... 12

III.  Safety Star Cannot Prove Essential Elements of its Contributory Infringement Claim ... 13

      A.    Safety Star Cannot Prove the Necessary Direct Infringement by the
            Website Users Who Created the Bingo Cards ...................................... 13

      B.    Safety Star Cannot Prove That Aptibyte Intentionally Induced
            Infringement or Had the Knowledge Required for the Contributory
            Infringement Claim ............................................................................ 18

            1.    Safety Star Cannot Prove Any Affirmative Acts By Aptibyte That
                  Intentionally Induced Infringement by Others ............................. 18

            2.    Safety Star Cannot Prove That Aptibyte Knew of Specific
                  Instances of Alleged Infringement That it Did Not Address ............. 19

IV.   Safety Star's Claim for Damages is Based Only on Speculation and Assumptions ......... 21

CONCLUSION .............................................................................................................. 25

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

**TABLE OF AUTHORITIES**

**<u>Cases</u>**

*1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400 (2d Cir. 2005) ..................................... 17

*AAA of N. Cal. v. GM LLC*, 367 F. Supp. 3d 1072 (N.D. Cal. 2019) ..................................... 21, 24

*Adams, Nash & Haskell, Inc. v. United States*, No. 20-1916 (RC),

    2021 U.S. Dist. LEXIS 69037 (D.D.C. Apr. 9, 2021) ................................................. 15, 17

*Advanced Hair Restoration LLC v. Bosley Inc.*, No. C23-1031-KKE,

    2025 U.S. Dist. LEXIS 32727 (W.D. Wash. Feb. 24, 2025) ........................................ 9, 10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................... 8

*Atari Interactive, Inc. v. Redbubble, Inc.*, No. 21-17062,

    2023 U.S. App. LEXIS 18805 (9th Cir. July 24, 2023) .................................................... 21

*Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672 (9th Cir. 2005) ................................ 9, 10, 12, 13

*Coachella Music Festival, LLC v. Live Nation Entm't, Inc.*, No. 2:21-cv-09631-RGK-

    GJS, 2021 U.S. Dist. LEXIS 242606 (C.D. Cal. Dec. 20, 2021) ..................................... 13

*Epic Games, Inc. v. Mendes*, No. 17-cv-06223-LB,

    2018 U.S. Dist. LEXIS 98719 (N.D. Cal. June 12, 2018) ............................................... 16

*Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975 (N.D. Cal. 2015) .............................. 20

*Gas Drawls, LLC v. Whaleco, Inc.*, No. 2:25-cv-07425-SB-BFM,

    2025 U.S. Dist. LEXIS 254999 (C.D. Cal. Dec. 5, 2025) ............................................... 20

*Gibson Guitar Corp. v. Viacom Int'l, Inc.*, No. CV 12-10870 DDP (AJWx),

    2013 U.S. Dist. LEXIS 70538 (C.D. Cal. May 17, 2013) ............................................... 18

*Glob. Apogee v. Sugarfina Inc.*, No. 2:18-cv-05162-HDV-E,

    2025 U.S. Dist. LEXIS 171775 (C.D. Cal. Sept. 3, 2025) ................................................ 24

*Johnson v. Meta Platforms, Inc.*, No. 22-cv-05691-BLF,

    2023 U.S. Dist. LEXIS 136027 (N.D. Cal. Aug. 4, 2023) ............................................... 10

*Ligeri v. Amazon.com Servs. LLC*, No. 2:25-cv-00764-JHC,

    2025 U.S. Dist. LEXIS 146352 (W.D. Wash. July 30, 2025) ..................................... 18, 20

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

*Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400 (9th Cir. 1993) ............................................ 22, 23

*Lockheed Martin Corp. v. Network Solutions, Inc.*,

    985 F. Supp. 949 (C.D. Cal. 1997) ....................................................................... 9, 14, 21

*Lopez v. Bonanza.com, Inc.*, No. 17 Civ. 8493 (LAP),

    2019 U.S. Dist. LEXIS 170715 (S.D.N.Y. Sept. 30, 2019)........................................ 10, 19

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936 (9th Cir. 2011)............... 18

*Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117 (9th Cir. 1968).................... 22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).................................... 8

*Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002) ................................................ 14

*McClaran v. Plastic Indus., Inc.*, 97 F.3d 347 (9th Cir. 1996) ..................................................... 25

*MDT Corp. v. N.Y. Stock Exch., Inc.*, 858 F. Supp. 1028, 1032 (C.D. Cal. 1994) ........................ 9

*Micro/sys, Inc. v. DRS Techs., Inc.*, No. CV 14-3441 DMG (AJWx),

    2015 U.S. Dist. LEXIS 193891 (C.D. Cal. Feb. 13, 2015)...................................... 16, 17

*New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302 (9th Cir. 1992) ........................ 14

*Nguyen v. Mercer Island Boys Basketball Booster Club*, No. 2:24-cv-01990-RSL,

    2025 U.S. Dist. LEXIS 101289 (W.D. Wash. May 28, 2025)........................................... 8

*Owens v. CACI Int'l Inc.*, No. 3:21-cv-05570-DGE,

    2023 U.S. Dist. LEXIS 92871 (W.D. Wash. May 26, 2023)............................................. 8

*Perfect 10, Inc. v. Giganews, Inc.*, No. CV11-07098 AHM (SHx),

    2013 U.S. Dist. LEXIS 71349 (C.D. Cal. Mar. 8, 2013)..................................... 10, 12, 17

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007) ...................................... 18

*Prestonettes, Inc. v. Coty*, 264 U.S. 359 (1924)........................................................................... 14

*Ripple Labs Inc. v. YouTube LLC*, No. 20-cv-02747-LB,

    2020 U.S. Dist. LEXIS 218207 (N.D. Cal. Nov. 20, 2020).............................................. 20

*Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704 (9th Cir. 1999) ...................................... 25

*Sansi N. Am., LLC v. LG Elecs. U.S., Inc.*, No. CV 18-3541 PSG (SKx),

    2019 U.S. Dist. LEXIS 229157 (C.D. Cal. Nov. 14, 2019)............................................. 22

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

*Spy Phone Labs LLC v. Google Inc.*, No. 15-cv-03756-PSG,

    2016 U.S. Dist. LEXIS 36444 (N.D. Cal. Mar. 21, 2016) ................................................ 20

*St. Louis Univ. v. Meyer*, 625 F. Supp. 2d 827 (E.D. Mo. 2008) .................................................. 17

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,

    808 F. App'x 459 (9th Cir. Apr. 20, 2020) ........................................................................ 22

*The Agave Project LLC v. Host Master 1337 Servs. LLC*, No. 2:23-cv-1984,

    2025 U.S. Dist. LEXIS 7278 (W.D. Wash. Jan. 14, 2025) ................................................. 10

*Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010) ........................................................ 19

*Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995 (9th Cir. 2023) ............................................. 19, 20

## Rules and Statutes

15 U.S.C. § 1114 ....................................................................................................................... 9

15 U.S.C. § 1117(a) ................................................................................................................. 22

15 U.S.C. § 1125(a) ................................................................................................................... 9

Fed. R. Civ. P. 56(a) ................................................................................................................. 8

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

Plaintiff Safety Star, LLC has filed two lawsuits and four complaints against Defendant Aptibyte, LLC and has now had full opportunity to conduct discovery on its trademark claims. Yet nearly three years later, Safety Star's claims continue to be based only upon speculation and assumptions, neither of which are sufficient to create a triable issue of material fact. As a result, because Safety Star cannot prove essential elements of its direct and contributory trademark infringement claims, Aptibyte respectfully requests that it be granted summary judgment on Safety Star's claims.

## FACTUAL BACKGROUND

### I.    Safety Star and the "B-SAFE Marks"

Safety Star sells a "safety bingo program" under the marks B-SAFE and BSAFE BINGO (the "B-SAFE Marks"). (Dkt. 35-1 at ¶ 10.) The B-SAFE marks are used on printed bingo cards and related products such as bingo balls, a dry-erase poster, and a guidebook. (Declaration of Stacia N. Lay ¶ 2, Ex. 1 (15:2-16:19).) Albert Culbertson, Safety Star's managing member, selected the B-SAFE mark in 1992. The mark was used exclusively on print (*i.e.*, hard copy) bingo cards. (*Id.* (10:6-7, 14:11-15, 15:2-7).)

From 1992 to 2002, Culbertson formed a succession of business entities through which he offered the printed bingo cards under the B-SAFE mark, ultimately forming Safety Star in 2002. (*Id.* (17:2-18:16).) He assigned rights in the B-SAFE Marks to Safety Star in (1) a purported June 2018 assignment (*see* Dkt. 17-4), and (2) two "nunc pro tunc" assignments signed in August 2023 (*see* Dkt. 17-7).

Safety Star only sells its bingo cards and related bingo products under the B-SAFE Marks on its website, <safetystar.com>. It does not offer digital versions of its bingo cards. Safety Star advertises its bingo cards under the B-SAFE Marks via Google Shopping, Google Text Ads, and organic search engine optimization. (Lay Decl. ¶ 2, Ex. 1 (31:5-20).)

### II.    Aptibyte and the Bingo Baker Website

Aptibyte is a small business that owns and operates the Bingo Baker website, <bingobaker.com>, which allows users to "[w]hip up a batch of bingo cards" with the bingo card

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

generator available on the site. (Declaration of Matt Johnson ¶¶ 6-7.) The only branding used on the website is the Bingo Baker name and logo, pictured below:



(*Id.* ¶ 7.)

Matt Johnson, Aptibyte's sole member, was inspired to create the Bingo Baker website because his mother worked at a school and teachers wanted an easy way to create bingo cards they could use in their classrooms. Bingo Baker continues to be used mostly by teachers. (*Id.* ¶ 5, Ex. 4 (9:3-7, 21:7), ¶ 8.) Website users have created millions of bingo cards, only a statistically insignificant number of which are at issue in this litigation. (*Id.* ¶¶ 17, 28.)

As shown in the following image from the Bingo Baker home page, users choose the card's size and title and the content for the card's columns and squares (*e.g.*, letters, words numbers, or images) and then click "Generate" to create their digital bingo card:

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Case No. 2:23-cv-01399-DWC) – 2

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

18  (*Id.* ¶ 10, Ex. 5; *see also id.* ¶ 2, Ex. 1 (Interrogatory No. 5).) Under "Privacy Options," card

19  creators also decide whether their cards are "public" (viewable by anyone and indexed by search

20  engines), "hidden" (only accessible by people who have the specific card URL and *not* indexed

21  by search engines), or "private" (only accessible by the card creator). (*Id.* ¶ 11.)

22      After the users choose the content for their bingo cards and click "Generate," they are

23  shown a "preview" of their card based on the content that they input. (*Id.* ¶ 12; *see also id.* ¶ 5,

24  Ex. 4 (47:15-18, 48:21-49:10).) The generator also automatically generates a list of the contents

25  of the user's card below the card preview. Following is an example of this "preview" page

26  displayed to users after they input the content of their bingo card and click "Generate":

27

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Case No. 2:23-cv-01399-DWC) – 3

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

(*Id.* ¶ 12, Ex. 6.) After creating their digital bingo card, users can play online or download and print hard copies of their card. (*Id.* ¶ 13.)

Users may also purchase a membership to the Bingo Baker website, which gives access to certain premium features, such as privacy control for their bingo cards and enhanced gameplay features for playing online. The price of a lifetime membership has changed over the years, from $9.95 in 2012 to the current price of $24.95. (*Id.* ¶ 14.) Any user of the Bingo Baker website may use the bingo card generator to create cards with their own content—users *do not* have to purchase a membership to create their bingo cards. Similarly, any user of the website also has access to bingo cards created by other users (provided that those other users have elected to make their cards public, *i.e.*, viewable by anyone and indexed by search engines). In other

1    words, purchasing a Bingo Baker website membership does ***not*** give a user special or additional

2    access to bingo cards hosted on the website. (*Id.*)

3          As shown in the following screen capture of the membership sign up page, only the

4    Bingo Baker mark and logo are and have been used in promoting the website membership:



16   (*Id.* ¶ 15, Ex. 7.)

17         For user-created bingo cards that the creator chooses to make public (*i.e.*, indexable by

18   search engines), the user's card may show up in organic (*i.e.*, unpaid, natural results that the

19   search engine determines are relevant to a user's query) online search results based on the

20   content the creator input into their bingo card. For example, if someone searched "holiday bingo"

21   in Google, an image of a bingo card that uses "holiday" in the card created by a Bingo Baker

22   website user may show up in the organic (unpaid) search results. Like all of the other search

23   results, the search engine identifies the Bingo Baker website under the image. Following is a

24   screen capture showing an excerpt of such organic search results:

25

26

27

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Case No. 2:23-cv-01399-DWC) – 5

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

(*Id.* ¶ 16.)

Users of the Bingo Baker website have created nearly *5.5 million* bingo cards since 2012 using a wide variety of content (*e.g.*, words, images, themes) in their bingo card creations. Since 2020, users have created on average 1,600+ bingo cards *per day*. (*Id.* ¶ 17.)

Apart from linking to Bingo Baker on its other websites, Aptibyte does not use any advertising for the Bingo Baker website, nor does it allow any advertising on the website. (*Id.* ¶ 18.) Aptibyte has never used Safety Star's B-SAFE Marks in any advertisements (or in any other context). Nor has Aptibyte used those marks in advertising the Bingo Baker website membership. (*Id.* ¶ 19 and Ex. 1 (Interrogatory Nos. 2-4).)

### III.    Aptibyte's Prompt Removal of Allegedly Infringing User-Created Content

Aptibyte first learned of Safety Star and its B-SAFE Marks in March 2020, when Safety Star sent a demand letter alleging that users had created bingo cards on the Bingo Baker website that included "bsafe," or a variation thereof, in the content of their cards. (*Id.* ¶ 2, Ex. 1 (Interrogatory No. 11), ¶ 20; *see also* Lay Decl. ¶ 3, Ex. 2.) The demand letter attached a screen shot of one bingo card that included "bsafe" in the title of the card and to designate the five columns of the card. (Lay Decl. Ex. 2 (Dkt. 34-7 at 8); *see also* Johnson Decl. ¶ 20.)

In follow up communications on March 31, 2020, and more than three years later on April 12, 2023, Safety Star provided a list of URLs for user-created bingo cards on the Bingo Baker website that it alleged infringed its B-SAFE Marks. (Johnson Decl. ¶ 21, Ex. 8.) In

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

response, Aptibyte promptly removed those cards or the allegedly infringing content from the cards, and notified Safety Star that it had completed that removal and would continue to address allegedly infringing material when notified of its existence. (*Id.* ¶¶ 22-24.) For those bingo cards that it removed, Aptibyte produced evidence in discovery confirming that removal. (*Id.* ¶ 23, Ex. 9.) With respect to the cards identified in Safety Star's April 12, 2023 notice, Aptibyte replaced the term "bsafe" with "Safety" or "BINGO" in the identified cards, terms Safety Star cannot claim exclusive rights to. (*Id.* ¶ 3, Ex. 2 (Interrogatory No. 19), ¶ 24; *see also* Lay Decl. ¶ 4, Ex. 3 (RFA Nos. 6-9).)

Further, in notices sent by Safety Star's counsel to Aptibyte's counsel during this litigation, Safety Star provided URLs for allegedly infringing user-created bingo cards on the Bingo Baker website. (Lay Decl. ¶ 5, Ex. 4.) Aptibyte promptly removed those cards and its counsel notified Safety Star's counsel of the removal. Aptibyte also produced evidence confirming the removal. (Johnson Decl. ¶ 25, Ex. 10; Lay Decl. ¶ 5.) Moreover, in two instances, in interrogatory responses and in documents it produced in discovery, Safety Star identified other allegedly infringing user-created bingo cards. Aptibyte compiled a list of URLs from those discovery materials and removed those cards from the Bingo Baker website. Aptibyte again produced evidence confirming that removal. (Johnson Decl. ¶ 26, Ex. 11.)

Safety Star also admitted that Aptibyte removed or disabled access to each bingo card that it alleged infringed its marks upon notice that provided specific URLs for the cards. (Lay Decl. ¶ 4, Ex. 3 (RFA Nos. 3-5); *see also id.* ¶ 2, Ex. 1 (39:18-21; 41:10-19; 71:15-21).)

## IV.    Procedural Background

Safety Star filed its first complaint against Aptibyte on May 15, 2023, including the same claims alleged in this second lawsuit. (Dkt. 23, ¶¶ 2-3.) After Aptibyte filed two motions to dismiss, Safety Star dismissed its first lawsuit without prejudice. (*See* Dkt. 16 at 6-7.) Less than a month later, it filed this second lawsuit. (*Id.* at 7.)

The expert disclosure deadline passed in this action on December 1, 2025, with neither party disclosing experts. Discovery closed on January 30, 2026. (*See* Dkt. 40.) Neither party filed

any discovery related motions. On February 23, 2026, the parties filed a stipulation in which they stipulated to the authenticity of business records produced by the parties in this action without the need for testimony from a party or a certification from a party's custodian. (Dkt. 46.) All other objections to the documents were reserved and the stipulation did not include any materials produced in response to subpoenas. (*Id.*)

## DISCUSSION

## I.    Summary Judgment Should Be Granted to Aptibyte on All of Safety Star's Claims

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Because Aptibyte meets that initial burden, "it is entitled to summary judgment if [Safety Star] fails to designate specific facts showing that there is a genuine issue for trial." *Nguyen v. Mercer Island Boys Basketball Booster Club*, No. 2:24-cv-01990-RSL, 2025 U.S. Dist. LEXIS 101289, *2 (W.D. Wash. May 28, 2025) (internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for [Safety Star], there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

Although facts and legitimate inferences to be drawn therefrom should be construed in Safety Star's favor, "the mere existence of a scintilla of evidence in support of [Safety Star's] position will be insufficient to avoid judgment." *Nguyen*, 2025 U.S. Dist. LEXIS 101289 at *2 (internal quotation marks omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (evidence that is "merely colorable" or "not significantly probative" is insufficient to defeat summary judgment). Moreover, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. "[I]rrelevant or inconsequential [factual] disputes will not preclude summary judgment." *Owens v. CACI Int'l Inc.*, No. 3:21-cv-05570-DGE, 2023 U.S. Dist. LEXIS 92871, *12 (W.D. Wash. May 26, 2023).

Although courts have been cautious in granting summary judgment in trademark cases,

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

that principle is cautionary not prohibitory. As in any other case, where there are no triable issues of material fact and the moving party has met its burden of showing an entitlement to judgment on plaintiff's trademark claims, summary judgment is proper. That is particularly true here, as the Court need not undertake the likelihood of confusion analysis to grant summary judgment to Aptibyte. *See, e.g., Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676-80, 682 (9th Cir. 2005) (affirming grant of summary judgment to defendant on trademark claims based on failure to prove the necessary commercial use element); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949, 967 (C.D. Cal. 1997) (granting summary judgment to defendant on direct and contributory infringement claims because plaintiff could not establish that defendant used the mark in connection with goods or services or that defendant had the knowledge necessary for contributory infringement claim), *aff'd on other grounds*, 194 F.3d 980 (9th Cir. 1999); *MDT Corp. v. N.Y. Stock Exch., Inc.*, 858 F. Supp. 1028, 1032, 1034 (C.D. Cal. 1994) (summary judgment appropriate in trademark cases if non-moving party fails to demonstrate triable issues of fact and "an inquiry into the likelihood of confusion" was not required).

        As discussed below, Aptibyte has met its burden of showing that there are no genuine disputes as to any material facts and that it is entitled to judgment as a matter of law on each of Safety Star's claims.

## II.    Safety Star's Direct Infringement Claims Cannot Survive Summary Judgment

        Safety Star alleges two direct infringement claims against Aptibyte—infringement under Section 1114 and false designation of origin under Section 1125(a). (Dkt. 35-1 at 8-10.) However, there is an absence of proof for essential elements of both claims, namely, that Aptibyte itself "used" Safety Star's marks and that the (unproven) "use" occurred in connection with the sale of goods or services. Because there are no triable issues of fact with respect to those issues, summary judgment should be granted to Aptibyte on the direct infringement claims.

        For both direct infringement claims, Safety Star must prove that Aptibyte "directly use[d] the trademarks" because "a party that [allegedly] merely facilitates or assists others' use cannot be liable for direct infringement." *Advanced Hair Restoration LLC v. Bosley Inc.*, No. C23-1031-

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

KKE, 2025 U.S. Dist. LEXIS 32727, *5 (W.D. Wash. Feb. 24, 2025) (internal quotation marks omitted). Moreover, the Lanham Act only "prohibits uses of trademarks . . . that are likely to cause confusion about the source of a product or service." *Bosley*, 403 F.3d at 676-77 ("[T]rademark infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers."). Thus, Safety Star's direct infringement claims "are subject to a commercial use requirement." *Id.*; *see also The Agave Project LLC v. Host Master 1337 Servs. LLC*, No. 2:23-cv-1984, 2025 U.S. Dist. LEXIS 7278, *11-12 (W.D. Wash. Jan. 14, 2025) (because the "purpose of a trademark is to designate the source of a product," a defendant's "'use' of the mark must be in connection with a sale of goods or services") (internal quotation marks omitted).

Safety Star cannot prove that Aptibyte itself "used" any of Safety Star's marks in connection with the sale of goods or services.

## A. Website Users, Not Aptibyte, Created the Bingo Cards

There is no dispute that the users of the Bingo Baker website – not Aptibyte – created the allegedly infringing bingo cards. (*See, e.g.*, Dkt. 35-1 at ¶¶ 30-31; Lay Decl. ¶ 2, Ex. 1 (67:21-23, 68:11-15, 71:25-72:4, 76:24-77:14, 94:18-20, 96:8-10 108:14-110:3, 116:22-117:1), ¶ 6, Ex. 5 (Interrogatory Nos. 1, 5-6), ¶ 7, Ex. 6 (Interrogatory No. 13).) But the alleged use of Safety Star's marks **by the website users** cannot prove that **Aptibyte** "used" the marks. *See, e.g.*, *Johnson v. Meta Platforms, Inc.*, No. 22-cv-05691-BLF, 2023 U.S. Dist. LEXIS 136027, *14 (N.D. Cal. Aug. 4, 2023) (finding that direct infringement claim against Meta failed because plaintiff didn't allege that Meta used the mark in connection with the sale or advertising of goods or services, only that third parties allegedly did); *Lopez v. Bonanza.com, Inc.*, No. 17 Civ. 8493 (LAP), 2019 U.S. Dist. LEXIS 170715, *19-21 (S.D.N.Y. Sept. 30, 2019) (rejecting direct infringement claim against online platforms where it was the users of the platforms that placed the marks on products).

Therefore, Safety Star cannot establish a direct infringement claim against Aptibyte with respect to the creation of the bingo cards. *See Perfect 10, Inc. v. Giganews, Inc.*, No. CV11-

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

07098 AHM (SHx), 2013 U.S. Dist. LEXIS 71349, *42 (C.D. Cal. Mar. 8, 2013) ("Direct infringement requires that the defendant itself 'use' the mark; it is insufficient for direct infringement purposes to allege that a defendant allows third parties to use the mark.").

**B.    Safety Star Cannot Prove That Aptibyte "Used" the Marks in Advertising**

Nor can Safety Star prove that Aptibyte "used" the B-SAFE Marks in connection with advertising Aptibyte's goods or services.

Although Safety Star alleged in its complaint that Aptibyte used its marks in "GoogleAds campaigns to rank higher on Google," (Dkt. 35-1 at ¶ 36), it admits that it has "no evidence supporting [the] allegation that Aptibyte used any of the B-SAFE Trademarks in Google Ads," (Lay Decl. ¶ 4, Ex. 3 (RFA No. 2); *see id.* ¶ 2, Ex. 1 (76:2-15)). Instead, Safety Star equates "organic" (unpaid) search results with advertising but cannot offer evidence supporting the allegation that Aptibyte "used" its marks in connection with such organic search results. (*See id.* (64:19-65:3, 76:2-15).)

Safety Star's assertion that both Safety Star's bingo cards and user-created bingo cards show up in "organic" search results (*i.e.*, unpaid, natural listings on a search engine results page that appear because they are relevant to a user's search query) does not prove that this occurs because Aptibyte itself "used" any of Safety Star's marks in connection with the advertising of Aptibyte's service. (*Id.* (64:19-65:3).) To the contrary, to the extent both Safety Star's bingo cards and Bingo Baker website users' cards appear in these organic search results in response to search queries, (1) that occurs only because of the content the **card creators** (*i.e.*, website users) chose to include when creating their card, and (2) ultimately, the search engine controls what and how results appear. (*See* Johnson Decl. ¶ 16.) There is also no dispute that the bingo card creators choose whether the cards they create are public – and therefore indexed by search engines and shown in organic search results – or are hidden/private. (*Id.* ¶ 11.)

Safety Star relies heavily on the "preview" icon that is shown on bingo cards created by website users, asserting – without evidentiary support – that this icon is intended "to promote" the cards. (Lay Decl. ¶ 2, Ex. 1 (65:19-66:10, 117:2-5)).) But the "preview" icon is simply an

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

automated part of the bingo card dashboard page that a user sees after they generate their card, showing them what it would look like (*i.e.*, a "preview" of the card). (Johnson Decl. ¶ 5, Ex. 4 (47:15-49:6), ¶ 12, Ex. 6.) Offering a preview is not advertising and, even if it were, the automated application of a "preview" icon on all user-created cards does not prove "use" of Safety Star's marks by Aptibyte.

In short, none of Safety Star's (unsupported) allegations demonstrate "use" of Safety Star's marks **by Aptibyte** in advertising Aptibyte's service.

### C.    Sale of a Membership to the Bingo Baker Website Does Not Prove "Use"

Sale of memberships to the Bingo Baker website also does not prove that Aptibyte itself "used" Safety Star's marks in connection with the sale of goods or services. Bingo Baker is the only mark used in connection with those sales. (*Id.* ¶ 15, Ex. 7.) Moreover, users who purchase a Bingo Baker website membership – which only gives them access to certain premium features such as enhanced online gameplay – have the same access to the user-created bingo cards on the website as users who have *not* purchased a membership. (*Id.* ¶ 14.) And in any event, the fact that all users may have access to **user-created** bingo cards that include "bsafe" in the card content – along with millions of other cards that include all kinds of terms, images, and themes – does not prove that Aptibyte "used" Safety Star's marks. *See, e.g.*, *Perfect 10*, 2013 U.S. Dist. LEXIS 71349 at *41 (rejecting argument that "providing access to a forum where content bearing a trademark may be obtained constitutes 'use' of that mark" by the forum provider). To conclude otherwise would lead to unjust results for social media platforms and other websites like Aptibyte's that allow users to create and post their content, rendering the platforms liable for *direct* infringement because some users may post content including another party's trademark.

The Lanham Act "is designed to protect consumers who have formed particular associations with a mark from buying a competing product using the same or substantially similar mark[.]" *Bosley*, 403 F.3d at 676. That purpose simply is not implicated here, where Aptibyte does not use Safety Star's marks in connection with the sale of its website membership. Safety Star appears to rely on the inference (or assumption) that some purchasers of the Bingo

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

1    Baker website membership may be aware that, among the millions of bingo cards hosted on the

2    website, there exists a tiny fraction of cards that include the term "bsafe". (*See, e.g.*, Lay Decl.

3    ¶ 2, Ex. 1 (51:16-24, 71:25-72:19).) But not only is that inference attenuated and unsupported

4    and therefore unreasonable, it does not demonstrate that Aptibyte has "used" the marks in

5    connection with the sale of its website membership as a membership does not give users special

6    or additional access to the user-created bingo cards. (*See* Johnson Decl. ¶ 14.)

7        Safety Star, therefore, cannot prove that Aptibyte itself "used" the B-SAFE Marks in

8    connection with the sale of goods or services. Therefore, Safety Star cannot establish an essential

9    element of its direct infringement claims and summary judgment should be granted to Aptibyte.

10   **III.    Safety Star Cannot Prove Essential Elements of its Contributory Infringement Claim**

11       Safety Star's contributory trademark infringement claim is unsustainable for at least two

12   reasons. First, Safety Star cannot prove that the Bingo Baker website users who created the bingo

13   cards directly infringed its marks, a necessary predicate to its contributory infringement claim.

14   Second, Safety Star cannot prove that Aptibyte had the necessary specific and contemporaneous

15   knowledge of instances of alleged infringement by the website users that Aptibyte did not

16   address. For either or both of these reasons, summary judgment in favor of Aptibyte on the

17   contributory infringement claim is appropriate.

18       **A.    Safety Star Cannot Prove the Necessary Direct Infringement by the Website**
19       **Users Who Created the Bingo Cards**

20       "To prevail on [a] contributory infringement claim[], Plaintiff[] must first establish direct

21   infringement by a third party." *Coachella Music Festival, LLC v. Live Nation Entm't, Inc.*,

22   No. 2:21-cv-09631-RGK-GJS, 2021 U.S. Dist. LEXIS 242606, *10 (C.D. Cal. Dec. 20, 2021).

23   Additionally, as discussed above, direct infringement claims require proof that the alleged

24   infringer (here, the website users) "used" the plaintiff's mark in a source-identifying manner "in

25   connection with a commercial transaction in which the trademark is being used to confuse

26   potential consumers." *Bosley*, 403 F.3d at 676-77. Safety Star cannot prove that the Bingo Baker

27   website users who created the bingo cards "used" "bsafe" in a source-identifying capacity (*i.e.*,

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Case No. 2:23-cv-01399-DWC) – 13

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

as a trademark), much less that they used it in connection with a commercial transaction in a manner likely to cause consumer confusion. Therefore, because Safety Star cannot prove the necessary direct infringement by the website users, summary judgment should be granted to Aptibyte on the contributory infringement claim.

Safety Star cannot prove that the creators of the bingo cards used "bsafe" in a source-identifying capacity. Safety Star simply assumes that every use of "bsafe" on a bingo card is intended to be use of its marks. But even if assumptions were evidence, Safety Star's marks are not sufficiently unique to support such an assumption, particularly when "bsafe" is used on a card that has other words or images relating to safety. In other words, it is equally, if not more, likely that use of "bsafe" in that context merely refers to the safety theme of the card and is a common play on the words "be safe" (abbreviated to "bsafe" in recognition of the fact that bingo cards traditionally have only five columns).

Moreover, Safety Star's unsupported assumption improperly expands the limited property rights afforded trademarks. "A trademark is a limited property right in a particular word, phrase or symbol." *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 306 (9th Cir. 1992). A trademark "does not confer a right to prohibit the use of the word or words." *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924); *see also Lockheed*, 985 F. Supp. at 965 ("Trademark law . . . tolerates a broad range of non-infringing uses of words that are identical or similar to trademarks."). Thus, where use of a term "does not implicate the source-identification function that is the purpose of trademark, it does not constitute unfair competition[.]" *New Kids on the Block*, 971 F.2d at 307-08. And where, as here, the alleged use of the mark "is part of a communicative message and not a source identifier, the First Amendment is implicated in opposition to the trademark right." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 900 (9th Cir. 2002) (internal quotation marks omitted). The fact that bingo cards may not be *War and Peace* does not remove First Amendment concerns from the equation when Safety Star challenges the use of a term in the content that website users choose to include in their bingo card creations. Although Safety Star disavows any exclusive right to a safety-themed bingo card,

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

because it assumes *any* use of "bsafe" on a card is for a "safety application" that infringes its marks, its claim far exceeds the limited scope of its trademark rights. (*See* Lay Decl. ¶ 2, Ex. 1 (52:24-53:7, 53:25-54:14, 55:11-21, 78:24-79:7, 83:21-24, 86:12-25, 96:17-25).)

Moreover, as discussed above, to prove direct infringement, Safety Star must, but cannot, prove that the alleged infringer – the website users who created the cards – used its marks in connection with the sale of goods or services. Safety Star readily admits that it does not contend that the website users sold, or offered for sale, the bingo cards they created. When asked if they did, Culbertson responded definitively: "Absolutely not, and, frankly, I doubt that they did." (*Id.* ¶ 2, Ex. 1 (87:6-10); *see also id.* (118:8 ("They're not selling the card, I don't think.")).) Instead, Safety Star's argument for commercial use relies entirely on the assertion that the bingo card creators are using their cards *internally* for their own workplace safety programs. (*See id.* (53:25-54:14, 55:11-21, 116:22-25).)

First, Safety Star's assertion rests upon mere speculation—Safety Star admitted that it *assumed* that the bingo card creators were using them in workplace safety programs based solely on the creators' use of "bsafe" on the cards. For example, Safety Star opined that "it is highly likely that these persons used the . . . bingo cards in commercial settings" because, in Safety Star's opinion, "[i]t is not realistic to think that a person would create, download, and print bingo cards using the words 'BSAFE' or 'B-SAFE' for personal, in-home use." (*Id.* ¶ 7, Ex. 6 (Interrogatory No. 13); *see also id.* ¶ 2, Ex. 1 (54:10-14 (testifying that the bingo card was used commercially based only on "the header 'BSAFE' and the title, 'Safety'").) But Safety Star's unsupported opinion is not evidence and cannot defeat summary judgment.

Second, even assuming Safety Star's opinion is correct and the bingo card creators used the cards in their own workplace safety programs, such use is not commercial for purposes of the Lanham Act. Courts have repeatedly held that a company's internal use of a trademark is not "commercial" absent the company's use of the mark in offering competing goods or services to the public. *See, e.g.*, *Adams, Nash & Haskell, Inc. v. United States*, No. 20-1916 (RC), 2021 U.S. Dist. LEXIS 69037, *14-17 (D.D.C. Apr. 9, 2021) (dismissing false designation of origin claim

because plaintiff failed to allege that the government used plaintiff's VIEWPOINT mark in commerce where the government only used "viewpoint" in the name of a federal employee survey); *Epic Games, Inc. v. Mendes*, No. 17-cv-06223-LB, 2018 U.S. Dist. LEXIS 98719, *23-25 (N.D. Cal. June 12, 2018) (finding that plaintiff failed to support infringement claims where it did not plead that defendant "proposed any commercial transaction or offered anything for sale, much less that consumers would be misled into buying something from him or any other third party under the mistaken belief that it was coming from [plaintiff]").

This case is similar to *Micro/sys, Inc. v. DRS Techs., Inc.*, where the court found that plaintiff failed to establish the necessary commercial use by the alleged infringer to support a Section 1125(a) claim. No. CV 14-3441 DMG (AJWx), 2015 U.S. Dist. LEXIS 193891, *18 (C.D. Cal. Feb. 13, 2015). In that case, the plaintiff sued the U.S. Postal Service over two alleged uses of plaintiff's marks in connection with plaintiff's computer board: (1) use of the marks to identify knock-off boards that the USPS used in its own sorting machines; and (2) use of the marks in soliciting bids for knock-off boards. *Id.* at *3-4, 15-16. But the court found that neither type of use was "commercial" under the Lanham Act.

The first type was not "commercial" as there was no allegation that the "USPS sold the misleadingly identified boards." *Id.* at *15. Because the USPS used the computer boards "exclusively as a component in its sorting machines," the "interests of the Lanham Act [were] not implicated, as the mark was not being used to confuse potential consumers." *Id.* at *15-16 (internal quotation marks omitted).

> Indeed, it would be nonsensical to hold a buyer liable under the Lanham Act for simply putting a trademarked label on a good when the buyer purchased the good for its own exclusive use. McDonald's certainly could not bring a Lanham Act claim against a patron who slapped a Whopper label on a Big Mac container right before eating the hamburger within it.

*Id.* at *16. Nor was the use of the plaintiff's marks in soliciting bids "commercial": "Although USPS's use may have had a commercial purpose – i.e., the marks used in a commercial transaction – USPS's use was not 'commercial' in the Lanham Act sense because USPS did not

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

use the marks in connection with the *sale* of knock-off boards, but in the purchase of knock-off boards." *Id.*

Thus, in both instances, "the dangers that the Lanham Act was designed to address [were] simply not at issue" because "no customer could mistakenly purchase the board or software from USPS [as] USPS [did not] *sell* technologies bearing marks confusingly similar to [plaintiff's] marks." *Id.* at *16-17 (internal quotation marks omitted). *See also St. Louis Univ. v. Meyer*, 625 F. Supp. 2d 827, 829-31 (E.D. Mo. 2008) (granting summary judgment to defendant where there was "no evidence that defendant used the accused marks in public" and defendant's actions "amount[ed] to no more than internal utilization" of the marks, not use in connection with any goods or services produced by defendant) (internal quotation marks omitted).

The result is the same here. Safety Star's only argument for "commercial use" by the bingo card creators is their use of the cards in their own workplace programs. But a

> company's internal utilization of a trademark in a way that does not communicate it to the public is analogous to a[n] individual's private thoughts about a trademark. Such conduct simply does not violate the Lanham Act, which is concerned with the use of trademarks in connection with the sale of goods or services in a manner likely to lead to consumer confusion as to the source of such goods or services.

*1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 408-09 (2d Cir. 2005) (finding that defendant's inclusion of plaintiff's website address – which included plaintiff's mark – in defendant's directory was not "use" under the Lanham Act as the directory was not accessible or visible to the public); *see also Adams*, 2021 U.S. Dist. LEXIS 69037 at *17 ("In-house, private use where the trademark is not seen publicly is not sufficient to constitute infringement.") (internal quotation marks omitted).

Therefore, because Safety Star cannot prove that the bingo card creators used its marks in connection with the sale of goods or services, it cannot prove the underlying direct infringement necessary for its contributory infringement claim against Aptibyte. *See Perfect 10*, 2013 U.S. Dist. LEXIS 71349 at *42-43 (finding that plaintiff's contributory infringement claim failed because plaintiff "failed to allege an underlying act of direct trademark infringement by a third

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

party" as third-party users did not use plaintiff's mark "in connection with a commercial transaction"). Summary judgment, therefore, should be granted to Aptibyte on that claim.

### B. Safety Star Cannot Prove That Aptibyte Intentionally Induced Infringement or Had the Knowledge Required for the Contributory Infringement Claim

As a separate ground for summary judgment, Safety Star cannot prove that Aptibyte intentionally induced infringement or had the knowledge necessary for the contributory infringement claim. To support a verdict in its favor on its contributory infringement claim, Safety Star must prove that Aptibyte either (1) engaged in "affirmative acts" that "intentionally induced the primary infringer" to infringe Safety Star's marks or (2) continued to supply its service to one whom it knows or has reason to know is engaging in trademark infringement. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007); *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 942 (9th Cir. 2011). Safety Star cannot prove either theory of liability for contributory infringement.

### 1. Safety Star Cannot Prove Any Affirmative Acts By Aptibyte That Intentionally Induced Infringement by Others

"The standard for intentional inducement is fairly high. It requires that the contributory infringer do more than be able to reasonably anticipate the direct infringement." *Ligeri v. Amazon.com Servs. LLC*, No. 2:25-cv-00764-JHC, 2025 U.S. Dist. LEXIS 146352, *22 (W.D. Wash. July 30, 2025) (internal quotation marks omitted). Plaintiff must prove "affirmative acts" by the defendant that were intended to induce the third party to infringe plaintiff's marks. *See Perfect 10*, 494 F.3d at 807; *Gibson Guitar Corp. v. Viacom Int'l, Inc.*, No. CV 12-10870 DDP (AJWx), 2013 U.S. Dist. LEXIS 70538, *7-8 (C.D. Cal. May 17, 2013).

Safety Star has not alleged, much less proven, any such "affirmative acts" by Aptibyte that intentionally induced any users of the Bingo Baker website to infringe its marks. At most, Safety Star alleges that Aptibyte assisted the users' alleged (but unproven) infringement by hosting the user-created bingo cards. But that allegation does not establish the type of "affirmative acts" required to prove the *intentional* inducement theory of contributory

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

infringement. *See Lopez*, 2019 U.S. Dist. LEXIS 170715 at *32-33 (finding that plaintiff failed to allege any specific acts by the platforms "to encourage the alleged infringement" in alleging that the platforms continued to provide hosting services or online store services to those they allegedly knew were engaged in infringing activities).

### 2. Safety Star Cannot Prove That Aptibyte Knew of Specific Instances of Alleged Infringement That it Did Not Address

Safety Star has focused on the second theory of contributory infringement, asserting that Aptibyte continued "to supply its product [or service] to one whom it knows or has reason to know is engaging in trademark infringement." *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1000 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 824 (2024) (internal quotation marks omitted). But it cannot prove that Aptibyte had the knowledge necessary to support this theory.

The Ninth Circuit confirmed that contributory infringement claims require knowledge of specific instances of infringement, agreeing with the Second Circuit in *Tiffany (NJ) Inc. v. eBay, Inc. See id.* at 1001-02. In *Tiffany*, the court held that eBay could not be liable for website users' use of Tiffany's marks in connection with counterfeit goods sold on eBay because:

> [f]or contributory trademark infringement liability to lie, a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary.

*Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 107 (2d Cir. 2010). Tiffany's generalized allegations regarding counterfeiting on the website failed to give eBay the particularized knowledge required for a contributory infringement claim. *Id.* at 109. Although eBay received complaints about certain sellers selling counterfeits, "those sellers' listings were removed and repeat offenders were suspended from the eBay site." *Id*. The Second Circuit thus held that "Tiffany failed to demonstrate that eBay was supplying its service to individuals who it knew or had reason to know were selling counterfeit Tiffany goods." *Id*.

In *Y.Y.G.M.*, the Ninth Circuit agreed with this reasoning, holding that the "knows or has reason to know" standard based on willful blindness "requires the defendant to be aware of

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

specific instances of infringement or specific infringers." 75 F.4th at 1002. "General knowledge of infringement on the defendant's platform – even of the plaintiff's trademarks – is not enough to show willful blindness." *Id.* It also recognized that platforms do not have a duty to preemptively search for and remove alleged infringements. *Id.* at 1002-03 ("There is no inherent duty to look for infringement by others on one's property.") (internal quotation marks omitted); *see also Spy Phone Labs LLC v. Google Inc.*, No. 15-cv-03756-PSG, 2016 U.S. Dist. LEXIS 36444, *9-10 (N.D. Cal. Mar. 21, 2016) (Google could not "be liable for contributory infringement merely for failing to remove infringing apps preemptively"). To the extent any duty can be said to exist, it is limited to "specific instances of infringement the defendant knows or has reason to know about." *Y.Y.G.M.*, 75 F.4th at 1003.

Courts have repeatedly applied this knowledge standard and rejected contributory infringement claims where plaintiff could not show that a service provider had particularized knowledge of specific instances of infringement that it did not address. *See, e.g., Ripple Labs Inc. v. YouTube LLC*, No. 20-cv-02747-LB, 2020 U.S. Dist. LEXIS 218207, *7-10 (N.D. Cal. Nov. 20, 2020) (applying particularized knowledge requirement and finding that plaintiff failed to plead contributory infringement claim where alleged delay alone in responding to infringement notice was insufficient to state a claim); *see also Ligeri*, 2025 U.S. Dist. LEXIS 146352 at *23-24 (contributory infringement claim failed as plaintiff did not allege that "Amazon knew of any specific instances of infringement and chose not to act").

Similarly, here, Safety Star cannot prove that Aptibyte had the necessary "contemporary knowledge of which particular [user content] are infringing or will infringe" that Aptibyte did not address in response to Safety Star's notices. *See Gas Drawls, LLC v. Whaleco, Inc.*, No. 2:25-cv-07425-SB-BFM, 2025 U.S. Dist. LEXIS 254999, *9 and n.7 (C.D. Cal. Dec. 5, 2025) (finding that plaintiff did not allege that platform knew or had reason to know that any seller was infringing plaintiff's marks and noting that the platform removed all allegedly infringing listings upon notice from plaintiff); *Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 982-83 (N.D. Cal. 2015) (rejecting contributory infringement claim as plaintiff alleged no facts

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

"showing that Amazon or Google intentionally induced the third-party developers to infringe plaintiff's mark, or that they knew that the third-party developers' apps/games were infringing plaintiff's mark but continued to allow the infringing apps/games to remain available").

In response to each notice from Safety Star in which it identified specific instances of alleged infringement, Aptibyte promptly removed the user-created bingo cards or replaced the allegedly infringing content on the cards. (Johnson Decl. ¶¶ 21-25, Exs. 8-10.) Even when Safety Star failed to provide separate notice but instead produced discovery materials that identified allegedly infringing bingo cards, Aptibyte extracted URLs from those materials and removed those cards as well. (*Id.* ¶ 26, Ex. 11.) And Safety Star has admitted that, in response to its notices, Aptibyte removed each bingo card that it alleged infringed its marks. (*See, e.g.*, Lay Decl. ¶ 4, Ex. 3 (RFA Nos. 3-5); *see also id.* ¶ 2, Ex. 1 (39:18-21, 41:10-19, 71:15-21, 102:1-4).)

Therefore, because Safety Star cannot prove that Aptibyte knew or had reason to know about specific instances of infringement that Aptibyte failed to address, the contributory infringement claim cannot survive summary judgment. *See, e.g.*, *Atari Interactive, Inc. v. Redbubble, Inc.*, No. 21-17062, 2023 U.S. App. LEXIS 18805, *3 (9th Cir. July 24, 2023) (finding Redbubble's removal of "specific infringing listings" upon Atari's notification "was reasonable" and affirming district court's summary judgment holding that Redbubble was not willfully blind for purposes of contributory infringement claim); *Lockheed*, 985 F. Supp. at 967 (granting summary judgment to defendant on contributory infringement claim finding that plaintiff's evidence didn't show that defendant "was involved in infringing activity or that it knew or had reason to know that its services were being used to infringe" plaintiff's mark).

## IV.   Safety Star's Claim for Damages is Based Only on Speculation and Assumptions

The Court need not reach the issue of Safety Star's claim for damages because Aptibyte has demonstrated that Safety Star cannot meet its burden of proving Aptibyte's liability on its claims. But even if that were not the case, Safety Star's claim for damages should be dismissed as a matter of law as it rests only on speculation and unsupported assumptions. *See AAA of N. Cal. v. GM LLC*, 367 F. Supp. 3d 1072, 1105 (N.D. Cal. 2019) (noting that "claims for damages

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Case No. 2:23-cv-01399-DWC) – 21

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

under the Lanham Act may be properly disposed of on summary judgment"); *Sansi N. Am., LLC v. LG Elecs. U.S., Inc.*, No. CV 18-3541 PSG (SKx), 2019 U.S. Dist. LEXIS 229157, *29, 32 (C.D. Cal. Nov. 14, 2019) (granting summary judgment to defendant on plaintiff's claim for damages under the Lanham Act).

A trademark plaintiff may be awarded defendant's profits and plaintiff's actual damages. 15 U.S.C. § 1117(a). The "plaintiff must prove both the fact and the amount of damage." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993). "Damages are typically measured by any ***direct injury*** which a plaintiff can prove, as well as any lost profits which the plaintiff would have earned ***but for the infringement***." *Id.* at 1407 (emphasis added). "To establish the fact of damages, a plaintiff must be able to point to a measurable loss ***incurred as a result of the infringement***." *Sansi*, 2019 U.S. Dist. LEXIS 229157 at *21 (internal quotation marks omitted and emphasis added). Similarly, an award of defendant's profits must be attributable to the infringement. *See Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 124 (9th Cir. 1968) ("The plaintiff . . . is not entitled to profits demonstrably not attributable to the unlawful use of his mark.") (internal quotation marks omitted); *see also Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 808 F. App'x 459, 460-61 (9th Cir. Apr. 20, 2020) (affirming denial of award of profits where trial court found that defendant's sale of the goods branded with the mark were not attributable to the infringement).

Moreover, damages resulting from infringement "must be established with reasonable certainty." *Lindy*, 982 F.2d at 1407. Although an inability to calculate damages "with absolute exactness" doesn't render damages uncertain, "a reasonable basis for computation must exist." *Id.* at 1407-08 (internal quotation marks omitted). And courts deny monetary awards "when damages are remote and speculative." *Id.* at 1408 (citing cases).

Safety Star claims "sales-related" and "reputational" damages. (Lay Decl. ¶ 6, Ex. 5 (Interrogatory No. 8).) It "estimate[s]" the "sales-related" damages as "the average number of cards printed by a Safety Star customer from 2020 to present" multiplied by the "number of people we have reason to believe used Safety Star cards from Aptibyte from 2020 to present,

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

according to [a list of user contact information produced by Aptibyte]" multiplied by "the average price of a BSAFE card". (*Id.*) Using this estimate, Safety Star asserts that it sold "approximately 5,600,000 cards to 1,642 customers from 2020 through 2025, creating an average of 3,410 cards per customer at an average price of $0.115." (*Id.*) Based on these estimates and approximations, Safety Star calculates its "sales-related" damages to be $2,352.90 ("3,410 X 68 email accounts identified by Aptibyte minus one account confirmed to have not downloaded any cards x $.115 = $2352.90"). (*Id.*) With respect to the "reputational" damages, it "estimate[s]" these to be "the average dollar amount spent by a BSAFE customer from 2020 to present" multiplied by "the number of BSAFE cards displayed on BingoBaker.com from 2020 to present, according to [a list produced by Aptibyte]". (*Id.*) Safety Star "estimate[s]" these "reputational damages" to be "$384 X 1,071 times = $411,264".[1] (*Id.*)

Absent from these calculations is any evidence demonstrating that they reflect sales or "reputational" damages attributable to Aptibyte's alleged infringement. Safety Star simply assumes – without evidence – that every card created by a user that included "bsafe" somewhere on the card represents damage to Safety Star. But it does not proffer evidence of the bingo cards to demonstrate how "bsafe" was used on the cards or how (or if) the cards were used. Nor does Safety Star offer any expert report in support of its calculation of alleged damages.

The speculative nature of Safety Star's claim for damages is further demonstrated in the testimony of Safety Star's designee, Culbertson. He testified that Safety Star is seeking its "actual losses" and opined that "every B-SAFE card he [Aptibyte] prints is a ***possible*** lost sale for me."[2] (Lay Decl. ¶ 2, Ex. 1 (87:14-18) (emphasis added).) Culbertson also testified that Safety Star's bingo card sales are down 19% "year over year, meaning '24 over '25", but could not say what amount of that decrease, if any, was purportedly due to Aptibyte's alleged infringement; nonetheless, he "believe[d] at least part of it is due to" Aptibyte. (*Id.* (89:1-7,

---

[1] Safety Star's "sales-related" and "reputational" damages appear to both estimate alleged lost sales, just calculated in different ways.

[2] There is no dispute that Aptibyte neither creates nor prints any bingo cards.

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

89:11-90:10).) Yet he admitted that the availability of digital bingo cards in general and the fact that Safety Star only offers printed bingo cards has also impacted its business. (*Id.* (90:11-23).) He also admitted that other bingo card websites offered allegedly infringing bingo cards with "bsafe" in the card content. (*Id.* (34:22-35:7, 46:21-47:8, 60:17-22, 61:14-62:14, 69:22-70-15, 89:11-90:10).) He testified that "there were a lot of [digital Bingo card creators] out there" and in about 2023 they were "picking up steam and using the B-SAFE Mark." (*Id.* (106:9-107:13).) Nonetheless, Culbertson assumed that, even if he could not attribute "every bit of [the downturn] to Aptibyte, . . . it goes to say that if they're using the card, they're not going to buy it from me." (*Id.* (69:22-70:3).) *See Glob. Apogee v. Sugarfina Inc.*, No. 2:18-cv-05162-HDV-E, 2025 U.S. Dist. LEXIS 171775, *36-37 (C.D. Cal. Sept. 3, 2025) (finding plaintiff's expert's "back-of-the-envelope calculation" not supported by the record and that it "beggars belief to attribute all of [defendant's] online sales to the program [at issue], when that program was only one of several different sales avenues on [defendant's] website").

Safety Star's damages calculations assume that every user who created a bingo card with "bsafe" somewhere on it and every such user-created card hosted at some point on the Bingo Baker website constituted a lost sale to Safety Star. But it has no admissible evidence of how those bingo cards were used, if in fact they were ever used. Safety Star admits that it does not contend that any of the card creators sold the cards or offered them for sale. (Lay Decl. ¶ 2, Ex. 1 (87:6-10, 118:8).) Moreover, it has no evidence that each of those cards represents a sale that it lost to Aptibyte. To the contrary, Bingo Baker only sells memberships to its website, which includes a wide variety of bingo cards created by users. Safety Star simply (and self-servingly) assumes that a user who created a bingo card with "bsafe" on it would have otherwise purchased a print version of that card from Safety Star. *See AAA*, 367 F. Supp. 3d at 1107 (finding that "anecdotal examples" from plaintiff's officer regarding his "belief" that plaintiff had been damaged was not "supported by detailed facts or evidentiary support" and "conclusory, self-serving affidavit" could not create genuine issue of material fact) (internal quotation marks omitted). But Safety Star admits that it is not aware of any actual confusion; rather, it alleges that

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Case No. 2:23-cv-01399-DWC) – 24

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

users create the cards on the Bingo Baker website not because they are confused but because they don't want to pay for B-SAFE bingo cards from Safety Star. (*See, e.g.*, Lay Decl. ¶ 2, Ex. 1 (69:24-70:4, 108:16-109:5), ¶ 4, Ex. 3 (RFA No. 1), ¶ 6, Ex. 5 (Interrogatory No. 3).) Even assuming Safety Star could prove that allegation, that alleged injury is not attributable to any alleged infringement **by Aptibyte** and therefore cannot support an award of damages. *See, e.g.*, *Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 711-12 (9th Cir. 1999) (affirming denial of an award of profits where plaintiff's percentage estimate did not sufficiently distinguish between profits attributable to the infringement and those related to other types of sales and therefore plaintiff failed to calculate profits with reasonable certainty); *McClaran v. Plastic Indus., Inc.*, 97 F.3d 347, 361-62 (9th Cir. 1996) (reversing jury's damages award where plaintiff "failed to prove with reasonable certainty that he suffered any damage as a result of the infringement" and finding jury's award of lost profits "based on speculation").

Safety Star's claim for damages rests only on belief, speculation, and assumption, none of which is sufficient to demonstrate any triable issue with respect to that claim.

## CONCLUSION

For the foregoing reasons, there are no triable issues of material fact on Safety Star's claims and Aptibyte is entitled to judgment as a matter of law. Aptibyte therefore respectfully requests that summary judgment be granted to it on each of Safety Star's claims.

Dated this 27th day of February, 2026.

Respectfully submitted,

FOCAL PLLC

By:  *s/ Stacia N. Lay*
　　 *s/ Randall H. Moeller*
Stacia N. Lay, WSBA #30594
Randall H. Moeller, WSBA #21094
900 1st Avenue S., Suite 201
Seattle, Washington 98134
Tel: (206) 529-4827
Fax: (206) 260-3966
Email: stacia@focallaw.com
Email: randall@focallaw.com

Attorneys for Defendant Aptibyte, LLC

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Case No. 2:23-cv-01399-DWC) – 25

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1

## **<u>WORD LIMIT CERTIFICATION</u>**

2    I certify that this memorandum contains 8,376 words, in compliance with the Local Civil

3 Rules.

4            By: *s/ Stacia N. Lay*

5              Stacia N. Lay, WSBA #30594

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966