UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SAFETY STAR, LLC,

Plaintiff,

v.

APTIBYTE, LLC,

Defendant.

CASE NO. 2:23-CV-1399-DWC

ORDER ON MOTIONS FOR
SUMMARY JUDGMENT

This matter is before the Court on Plaintiff Safety Star LLC's Motion for Summary Judgment and Defendant Aptibyte LLC's Motion for Summary Judgment. Dkts. 49, 50.[1] After considering the relevant record, the Court finds there is a genuine issue of material fact regarding whether Aptibyte used the B-SAFE Trademarks in commerce and whether a reasonably prudent consumer is likely to be confused by Aptibyte's use of the B-SAFE Trademarks. Therefore, questions of fact remain related to the direct infringement and damages claims. However, Aptibyte has shown there is no genuine issue of material fact related to the contributory trademark infringement claim. Therefore, Safety Star's Motion for Summary Judgment (Dkt. 49)

---

[1] The parties have consented to this matter being decided by a U.S. Magistrate Judge. *See* Dkts. 39, 41.

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT - 1

is denied and Aptibyte's Motion for Summary Judgment (Dkt. 50) is granted-in-part and denied-in-part. Safety Star's contributory trademark infringement claim is dismissed.

## I.    Background

Plaintiff Safety Star ("Safety Star") manufactures, markets, and sells a propriety safety bingo program under the trademarks B-SAFE and BSAFE BINGO. Dkt. 35-1, ¶ 10. Safety Star owns U.S. Trademark Registrations for B-SAFE and BSAFE BINGO ("B-SAFE Trademarks"). *Id*. at ¶ 17. Safety Star alleges Defendant Aptibyte LLC ("Aptibyte") is engaged in the business of operating an online bingo card system on its website www.bingobaker.com ("Bingo Baker website") and created and distributed bingo cards bearing the B-SAFE Trademarks to consumers through the Bingo Baker website. *Id*. at ¶¶ 23-31. Safety Star alleges Aptibyte is liable for violations of the Lanham Act for infringing on Safety Star's B-SAFE Trademarks and falsely using similar marks to imitate B-SAFE Trademarks. *Id*. at ¶¶ 47-60. Safety Star also alleges Aptibyte is liable for contributory trademark infringement. *Id*. at ¶¶ 61-72. Safety Star seeks monetary and injunctive relief.

On February 27, 2026, the parties filed the pending Motions for Summary Judgment and supporting evidence. Dkts. 49, 50, 51 & 53 (Aptibyte's supporting evidence), 52 (Safety Star's supporting evidence). The parties filed their responses and additional supporting evidence. Dkts. 58, 59 (Aptibyte's supporting evidence), 60, 61-62 (Safety Star's supporting evidence). On March 27, 2026, the parties filed their replies. Dkts. 63, 64; *see also* Dkt. 65. The parties did not request oral argument and the undersigned has determined, after consideration of the entire record, oral argument is not necessary to decide this matter.

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT - 2

## II.    Standard of Review

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

## III.    Discussion

In its Motion for Summary Judgment, Safety Star asserts Aptibyte is liable for direct and contributory infringement. Dkt, 49. Safety Star contends it is entitled to summary judgment and an award of damages. Dkt. 49. Aptibyte argues Safety Star's direct infringement and contributory infringement claims cannot survive summary judgment and Safety Star's damages are speculative. Dkt. 50. Aptibyte asserts summary judgment in Aptibyte's favor is appropriate.

A. *Evidence*

Albert Culbertson is the owner and managing member of Safety Star. Dkt. 51-1, Culbertson Depo., p. 10.[2] In 1992, Culbertson created the B-SAFE bingo card, which was a credit-card-sized bingo card to be used for playing safety bingo. *Id*. at p. 14. In 1996, the B-SAFE bingo card evolved into the B-SAFE Bingo Program. *Id*. at p. 15. The B-SAFE Bingo Program consisted of a guide that told the consumer how to play the game, a ball turner with 75 B-SAFE balls, a board to play the 75 balls as they were drawn, a dry-erase poster to track the game for employees, and B-SAFE bingo cards. *Id*. at pp. 15-16. In 2002, Culbertson formed Safety Star. *Id*. at p. 16. Safety Star sells products, including the B-SAFE bingo products, through a website. Dkt. 51-1, Culbertson Depo., p. 31. Safety Star does not sell B-SAFE bingo products anywhere other than its website and does not sell digital versions of the B-SAFE bingo card. *Id*. Safety Star advertises through Google Ads. *Id*. at pp. 31-32.

Matt Johnson is the managing member and sole employee of Aptibyte. Dkt. 53, Johnson Dec., ¶ 1. Aptibyte owns and operates the Bingo Baker website, which allows users to create bingo cards. *Id*. at ¶ 7. "The bingo card generator on the Bingo Baker website allows users to create their own bingo cards with content of their own choosing." *Id*. at ¶ 9. To create a bingo card on the Bingo Baker website, a person: (1) goes to the website; (2) fills in the bingo card title; (3) selects the size of the bingo card, column headings, and content to be included in the bingo card squares; and (4) hits save. Dkt. 52-3, Johnson Depo., p. 10. The bingo card is then created. *Id*. Once the card is created, users can play online or download and print copies of the bingo card. Dkt. 53, Johnson Dec., ¶ 13.

---

[2] The depositions submitted in support of the motions for summary judgment are minimized to fit four deposition pages on each page of the exhibits. The Court will reference the deposition page number, not the Docket Entry (Dkt.) page number.

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT - 4

Johnson states bingo card creators decide whether the bingo cards they create are public, hidden, or private. Dkt. 53, Johnson Dec., ¶ 11. A "public" card is viewable by anyone and indexed by search engines. *Id*. A "hidden" card is accessible by people who have the specific card URL and not indexed by search engines. *Id*. Finally, a "private" card is only accessible by the card creator. *Id*.

Users may purchase memberships to the Bingo Baker website. Dkt. 53, Johnson Dec., ¶ 14. The membership gives users premium features, including privacy control for their bingo cards and enhanced online gameplay features. *Id*. However, "purchasing a Bingo Baker website membership does not give a user special or additional access to bingo cards hosted on the website." *Id*. Further, a consumer does not need a paid account to create a bingo card. Dkt. 52-3, Johnson Depo., p. 10. Both account holders and free users can download a bingo card that contains "BSAFE" or "B-SAFE" through the Bingo Baker website, even if users do not create the bingo card. *Id*. at p. 13. Cards that a creator chooses to make public "may show up in organic (*i.e.*, unpaid, natural results that the search engine determines are relevant to the user's query) online search results based on the content the creator used in creating their bingo card." Dkt. 53, Johnson Dec., ¶ 16.

Johnson states the only branding used on the website is the following:



Dkt. 53, Johnson Dec., ¶ 7. Johnson states "Aptibyte has never used any of the marks Safety Star claims to own . . . in connection with Aptibyte's promotion or memberships to the Bingo Baker website." *Id*. at ¶ 15. Aptibyte does not use any advertising for the Bingo Baker website, nor does Aptibyte allow any advertising on the Bingo Baker website. *Id*. at ¶ 18.

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT - 5

Around 2019 or 2020, Culbertson did a search for safety bingo and discovered the Bingo Baker website. Dkt. 51-1, Culbertson Depo., p. 33. When completing Google searches, Culbertson would see Safety Star's B-SAFE bingo card and Aptibyte's B-SAFE bingo card next to each other in the search results. *Id*. On March 23, 2020, counsel for Safety Star sent a cease and desist letter to Johnson at Bingo Baker. Dkt. 51-2.

When notified by Safety Star of allegedly infringing bingo cards, Johnson states he either removed the cards or replaced the term "bsafe" with "safety" or "bingo" in the identified cards. Dkt. 53, Johnson Dec., ¶¶ 24-25. According to Johnson, a search produced to Safety Star in January of 2026 showed that, from 2012 to 2026, a total of 1,071 user-created cards included "bsafe" in the card content. *Id*. at ¶ 28. Johnson conducted an additional search related to users with a membership and found, "over the approximate 13 years since Aptibyte offered memberships to the Bingo Baker website, only 69 persons both purchased a membership to the Bingo Baker website and, at some point in time, created a bingo card that included "bsafe" (or a variant thereof) in the card content." *Id*. at ¶ 29. Johnson believes he is "under no obligation to censor [his] website nor the content on [his] website on behalf of any trademark owner" and, therefore, does not plan to include "bsafe" on any "bad word" list. Dkt. 53-4, Johnson Depo., p. 21.

Culbertson claims that Aptibyte posts BSAFE bingo cards to the Bingo Baker website and uses the BSAFE bingo cards to acquire more subscribers. Dkt. 51-1, Culbertson Depo., p. 68. Culbertson states he has worked for 35 years and spent close to $1,000,000 trying to promote his brand, Aptibyte wanted his brand, and Culbertson has lost business and sales because of Aptibyte's conduct. *Id.* at p. 69.

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT - 6

B. *Direct Infringement*

The purpose of trademark protections under the Lanham Act, 15 U.S.C. § 1051 is to "avoid confusion in the marketplace" by allowing a trademark owner to "prevent[ ] others from duping consumers into buying a product they mistakenly believe is sponsored by the trademark owner." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 900 (9th Cir. 2002). Successful claims for trademark infringement and false designation of origin under 15 U.S.C. §§ 1114, 1125 require the plaintiff to show it holds a "protectable mark, and that the alleged infringer's imitating mark is similar enough to 'cause confusion, or to cause mistake, or to deceive.'" *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005) (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118 (2004)). "Likelihood of confusion" exists when a "'reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks.'" *Surfvivor Media, Inc.*, 406 F.3d at 630 (quoting *Dreamwerks Prod. Grp, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998)). The infringer must use the trademark in commerce, "in connection with a sale of goods or services," in a way that competes with the plaintiff. *Bosley Med. Inst. v. Kremer*, 403 F.3d 672, 677, 679 (9th Cir. 2005); 15 U.S.C. § 1114(1)(a) (a defendant's "use" of the mark must be in connection with the sale, offering for sale, distribution, or advertising). "[T]he alleged infringer must directly use the trademarks; a party that merely facilitates or assists others' use cannot be liable for direct infringement." *Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F. Supp. 3d 1089, 1101 (N.D. Cal. 2021), *aff'd in part*, 2023 WL 4704891 (9th Cir. July 24, 2023).

First, the parties do not dispute Safety Star has a valid, protectable trademark. *See* Dkts. 31-6, 49, 50.

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT - 7

Second, Safety Star must show the infringing marks were used by Aptibyte in commerce. The undisputed evidence shows the Bingo Baker website is commercial in nature. The Bingo Baker website sells memberships to allow users access to premium features related to the creation and use of bingo cards. The evidence also shows that when a person conducts a Google search for safety bingo cards, the B-SAFE Trademarks appear affiliated with Aptibyte's Bingo Baker website. Dkt. 51-1, Culbertson Depo., p. 33; *see also* Dkt. 52-6 at 23; 52-7. Bingo Baker website users are required to make bingo cards created on the Bingo Baker website public and searchable if they do not purchase a membership. Thus, while Aptibyte did not explicitly advertise the B-SAFE Trademarks on the Bingo Baker website, Aptibyte required non-paying customers to publicize bingo cards that used the B-SAFE Trademarks and linked bingo cards that contained the B-SAFE Trademarks to the Bingo Baker website.

A reasonable jury could find Aptibyte's publication of the B-SAFE Trademarks on the Bingo Baker website and decision to allow those infringing bingo cards to be searchable on the internet shows Aptibyte used the B-SAFE Trademarks in connection with the sale, offering for sale, distribution, or advertising of goods or services. However, there is evidence that Aptibyte did not sell the B-SAFE Trademarks for advertising and did not advertise the B-SAFE Trademarks on the Baker Bingo website. Therefore, the Court finds there is a question of fact regarding whether Aptibyte's use of the B-SAFE Trademarks meets the "use in commerce" requirement. *See Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (finding "the use of a trademark as a search engine keyword that triggers the display of a competitor's advertisement is a 'use in commerce' under the Lanham Act"); *Int'l Med. Devices, Inc. v. Cornell*, 2022 WL 17080130, at *4 (C.D. Cal. Sept. 26, 2022) (finding defendants met the "use in commerce" requirement when the mark was on the defendants'

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT - 8

website and noting "there is no exception for cases in which no goods or services are actually sold").

Last, Safety Star must show Aptibyte's use was likely to cause confusion. "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Dreamwerks*, 142 F.3d at 1129. When assessing the question of likelihood of confusion, the Court looks to the *Sleekcraft* factors: similarity of the conflicting designations; relatedness or proximity of the two companies' products or services; strength of the mark; marketing channels used; degree of care likely to be exercised by purchasers in selecting goods; the defendant's intent in selecting its mark; evidence of actual confusion; and likelihood of expansion in product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), abrogated on other grounds by *Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003); *see also Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1053–54 (9th Cir. 1999). "[A]s we apply the *Sleekcraft* test, we consider what each factor, and—more importantly—what the analysis as a whole, reveals about the ultimate question before us: the likelihood of consumer confusion as to the origin of the product or service bearing the allegedly infringing mark." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002) ("*EMI*").

Safety Star asserts the undisputed evidence shows there is a likelihood of confusion. *See* Dkt. 49. Aptibyte disagrees. *See* Dkt. 58. The evidence shows Safety Star's and Aptibyte's products are both safety bingo cards that are available online. Both products can be found through a Google search and appear next to each other in search results. The marks used are nearly identical and there appears to be no dispute about the similarity of the products in which the marks are affixed. Finally, the bingo cards are of low value ($0.11 per card) and there is no

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT - 9

evidence a reasonably prudent consumer would take time to distinguish between the two different safety bingo cards.

However, there is disputed evidence regarding whether Aptibyte was knowingly using the B-SAFE Trademarks to in an attempt to confuse. Aptibyte's intent is a factor the jury may find weighs in favor of finding there was no likelihood of confusion.[3] Further, the evidence related to marketing channels is limited – Aptibyte states it does not advertise and the evidence shows that a search for "safety bingo cards" and "safety bingo" can lead consumers to both Safety Star's and Aptibyte's products. *See* Dkts. 52-6 at 23, 52-8. However, these are generic searches and "a consumer searching for a generic term is more likely to be searching for a product category," not a specific product, and is less susceptible to confusion. *Network Automation, Inc.*, 638 F.3d at 1149. Also, "*[s]ome* use of the Internet for marketing . . . does not alone as a matter of law constitute overlapping marketing channels." *EMI*, 279 F.3d at 1151 (emphasis in original). Moreover, there is no evidence before the court of actual consumer confusion. For example, Safety Star has not provided a declaration from a customer who was confused regarding whether the Bingo Baker website was affiliated with Safety Star.

Finally, the evidence presented, Culbertson's deposition and screenshots of Google searches and the Bingo Baker website, requires the Court to step, however slight, into a role of determining facts that should be decided by a jury. For example, while the Court can view the screenshots provided, the trier of fact should weigh whether those searches are sufficient to show

---

[3] To the extent Aptibyte is asserting it did not affix the B-SAFE Trademarks to the bingo cards and was not "aware" the B-SAFE Trademarks were being used, Aptibyte "remains strictly liable for actions done without scienter." *Atari Interactive, Inc. v. Redbubble, Inc.,* 515 F. Supp. 3d 1089, 1106 (N.D. Cal. 2021). There is no affixation requirement in the Lanham Act: "any party that uses a trademark is liable even if it did not itself affix the mark to the display." *Id*. Therefore, Aptibyte's knowledge, or lack thereof, that it was publishing and using the B-SAFE Trademark is not determinative of direct infringement. However, this could be a factor in finding there was no likelihood of confusion.

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT - 10

overlapping of marketing channels and the relatedness and proximity of the products. In sum, Safety Star's evidence that Bingo Baker's use of the B-SAFE Trademarks is likely to cause confusion to a consumer is not sufficient to warrant a finding of direct infringement at summary judgment. *See Network Automation, Inc.*, 638 F.3d at 1149 ("when we examine initial interest confusion, the owner of the mark must demonstrate likely confusion, not mere diversion").

While the undisputed evidence shows Safety Star has a valid mark, questions of fact remain regarding whether Aptibyte used the B-SAFE Trademarks in commerce and if such use created a likelihood of confusion. Therefore, the Motions for Summary Judgment are denied as to the direct infringement claim.

C. *Contributory Infringement*

To state a claim for contributory trademark infringement, a plaintiff must allege that a defendant "(1) intentionally induce[d] another to infringe on a trademark or (2) continue[d] to supply a product knowing that the recipient [wa]s using the product to engage in trademark infringement." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996); *see also Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 855 (1982). "All theories of secondary liability for . . . trademark infringement require some underlying direct infringement by a third party." *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 591 F. Supp. 2d 1098, 1104 (N.D. Cal. 2008) (citing *Perfect 10 v. Visa Int'l. Serv. Assoc.,* 494 F.3d 788, 795, 807 (9th Cir.2007)).

"[T]rademark infringement law prevents only unauthorized uses of a trademark *in connection with a commercial transaction* in which the trademark is being used to confuse potential consumers." *Bosley Med. Inst.,* 403 F.3d at 676 (emphasis added). Here, Safety Star has submitted evidence that a third-party bingo card creator used Bingo Baker to make a bingo card that included "bsafe" for an internal workplace training. *See* Dkt. 52-12. There is no evidence the

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 11

third-party infringers were using the infringing bingo cards in connection with commercial transactions. At most, a third-party infringer was allowing an infringing bingo card to be searchable on the internet; however, unlike Aptibyte, a reasonable juror could not conclude the third-party infringer was attempting to publish the infringing card for sales, distribution, or advertising. Therefore, the record does not reflect third-party infringers used the infringing bingo cards in commerce. Because Safety Star's evidence fails to show a third-party user used a B-SAFE Trademark in connection with a commercial transaction, Safety Star has failed to show underlying direct infringement by a third-party. Aptibyte is, therefore, entitled to summary judgment on the contributory infringement claim. *See Perfect 10, Inc. v. Giganews, Inc.*, 2013 WL 2109963, at *14 (C.D. Cal. Mar. 8, 2013), *aff'd*, 847 F.3d 657 (9th Cir. 2017) (finding the plaintiff failed to allege that any third-party user used a trademark in connection with a commercial transaction and thus a secondary trademark infringement claim failed).

   D.  *Damages*

"Under the Lanham Act, a plaintiff is "entitled,...subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." *Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1298 (S.D. Cal. 2018). A plaintiff may recover an infringing defendant's profits as a measure of the plaintiff's own damages or on a theory of disgorgement of the defendant's unjustly obtained profits. 15 U.S.C. § 1117(a). A plaintiff must prove both the fact and the amount of damage. 2 J. Thomas McCarthy, Trademarks and Unfair Competition § 30:27, at 511 (2d ed. 1984). "Damages are typically measured by any direct injury which a plaintiff can prove, as well as any lost profits which the plaintiff would have earned but for the infringement." *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993).

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT - 12

Further, "because proof of actual damages often is difficult, a plaintiff may seek compensation based on other measures, such as the cost of advertising needed to correct public confusion caused by the infringement." *Quia Corp.*, 2011 WL 2749576, at *5 (citing *Adray v. Adry–Mart, Inc.,* 76 F.3d 984, 988 (9th Cir. 1995) ). Such "compensatory damages are appropriate only where a plaintiff has shown that in fact it has been injured; it still must present non-speculative evidence that goodwill and reputation—that is, the value of its mark—was damaged in some way." *Id.*

Here, Aptibyte asserts that Safety Star's damages are too speculative. Dkt. 50. Safety Star has presented evidence of lost profits since the B-SAFE Trademarks have been used on Aptibyte's Bingo Baker website. Further, Safety Star provided the calculations used to reach the damages amount. To determine actual damages, Safety Star calculated the average number of bingo cards printed by a Safety Star customer from 2020 to the present multiplied by the number of people who used Safety Star cards from Aptibyte from 2020 to the present multiplied by the average price of a BSAFE bingo card. *See* Dkt. 49 at 22. While there is some speculation, Safety Star has provided more than speculative evidence to support its damages theory at this stage. Therefore, the Court finds damages is an issue that must be decided by the trier of fact and the Motions for Summary Judgment are denied as to damages.

**IV.    Conclusion**

After consideration of the relevant record, there is a genuine issue of material fact regarding whether Aptibyte used the B-SAFE Trademarks in commerce and whether a reasonably prudent consumer is likely to be confused by Aptibyte's use of the B-SAFE Trademarks and is, thus, liable for direct trademark infringement. Further, questions of fact remain related to damages. However, the undisputed evidence shows Aptibyte is not liable for

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT - 13

contributory trademark infringement. Therefore, Safety Star's Motion for Summary Judgment (Dkt. 49) is denied and Aptibyte's Motion for Summary Judgment (Dkt. 50) is granted-in-part and denied-in-part.

Dated this 4th day of May, 2026.

David W. Christel
United States Magistrate Judge

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT - 14